Justin M. Baxter, Oregon State Bar ID Number 992178
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone: (503) 297-9031
Facsimile: (503) 291-9172
justin@baxterlaw.com

Ari Brown *(Pro Hac Vice)*
RHODES LEGAL GROUP
918 South Horton St., Suite 901
Seattle, WA 98134
Telephone: (206) 412-9320
abrownesq@gmail.com

John Heenan *(Pro Hac Vice)*
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@lawmontana.com

*Attorneys for Plaintiff*

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

**RICHARD SMITH**, on behalf of himself
and all others similarly situated,

              Plaintiff,

    v.

**KAYE-SMITH ENTERPRISES, INC.,**

              Defendant.

Case No.: 3:22-CV-01499-AR

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND BRIEF IN
SUPPORT

## MOTION

Plaintiff Richard Smith, through the undersigned Interim Class Counsel, moves the Court for the following rulings:

1. Preliminary approval of a proposed class action settlement, the terms of which are set forth in the Settlement Agreement attached hereto as Exhibit A, as fair, reasonable, and adequate;

2. Certification of the proposed settlement classes for settlement purposes pursuant to Rule 23(b) and (e) of the Federal Rules of Civil Procedure;

3. Approval of notice to the classes that informs the members of each class of the proposed settlement;

4. Appointment of John Heenan, Ari Brown and Justin Baxter as Class Counsel;

5. Appointment of Plaintiff Richard Smith as Class Representative; and

6. Setting a Final Approval Hearing and consideration of applications for Service Payments, attorneys' fees, and reimbursement of litigation costs and expenses.

A proposed order is filed contemporaneously with this Motion. Plaintiff's Motion is supported by the below Brief in Support.

## MEMORANDUM IN SUPPORT OF MOTION

### I. INTRODUCTION

Plaintiff asks that the Court preliminarily approve a nationwide class settlement with named Defendant Kaye-Smith Enterprises, Inc., (hereinafter referred to as "Defendant" or "Kaye-Smith") that would resolve all class claims against Defendant and its Business Affiliates arising out of the June 2022 data breach at issue in this case.

The Settlement should be approved because it is fair, reasonable, and adequate. The Settlement would establish a non-reversionary cash fund of at least $2 million[1] to pay for valid claims by consumers and businesses affected by the data breach, notice and administration costs, and attorneys' fees and costs awarded by the Court. All Class Members may submit claims for benefits. Consumer claimants may elect to receive: (1) one year of Credit Monitoring and Insurance Services ("CMIS"); (2) a payment for reimbursement of Documented Losses of up to $2,500; or (3) a cash payment, calculated in accordance with the terms of the Settlement Agreement.

The Settlement requires Defendant's insurers to pay the remaining limits under Defendant's "defense within limits" insurance policy, which is the only significant asset that Defendant possesses. The settlement is the product of litigation that spanned over a year, included significant motions practice, and was reached after arm's-length negotiations between experienced counsel. The parties ultimately reached a settlement following comprehensive investigation and exchange of information, two mediations, with the second, successful mediation conducted by Honorable Wayne Anderson (Ret.) of JAMS, and numerous hours of conferring after the mediation to finalize the settlement details. The parties are now in the process of conducting substantial confirmatory discovery.

If approved, the Settlement will resolve all against Kaye-Smith and its business affiliates claims by individuals whose personal information was compromised. It will also resolve claims by business affiliates against Kaye-Smith—a resolution that is necessary for any recovery to

---

[1] As explained below, the settlement fund is comprised of the remaining amount of insurance available to Kaye-Smith, less amounts to pay its own legal costs through final approval. Kaye-Smith is reserving $300,000 for such legal costs. Any amounts of that reserve that remain unused will revert to the Settlement Fund.

individuals to be feasible given Kaye-Smith's current financial position and remaining insurance coverage. The Settlement delivers tangible and immediate benefits that address the potential harms of the data breach Data Breach Class Members suffered without further protracted litigation and its attendant risks. The Settlement compares favorably to previous settlements and delivers a fair, adequate, and reasonable resolution for the Class. Fed. R. Civ. P. 23(e)(2). The Court should preliminarily approve the Settlement.

## II.  BACKGROUND

Kaye-Smith is a vendor that generates monthly account statements for various institutional clients including Boeing Employees' Credit Union ("BECU"). On or before June 6, 2022, Kaye-Smith informed BECU and other of its business associates that an unauthorized actor breached Kaye-Smith's computer network, thereby gaining access to the personally identifiable information ("PII") of Plaintiff and hundreds of thousands of putative class members.

Plaintiff Richard Smith initially filed a putative class action against BECU in August 2022. A second-filed action styled as *Woodard v. Boeing Employees' Credit Union*, was filed shortly after. BECU provided evidence that the data breach incident exclusively affected data stored by its vendor, Kaye-Smith and that all access had been to Kaye-Smith networks. After determining that Kaye-Smith, rather than BECU, was the at-fault party, counsel for both Plaintiff Smith and Plaintiff Woodard conferred, and both determined to voluntarily dismissed their actions pending against BECU without prejudice. See, Declaration of Ari Brown ("Brown Decl.") ¶¶ 4-6.

Richard Smith brought this putative class action on October 6, 2022, against Kaye-Smith relative to the June 6, 2022 data breach. Plaintiff Woodard subsequently filed a duplicative case, this time naming both BECU and Kaye-Smith in Washington state court, which BECU subsequently removed to the Western District of Washington.

Through early exchange of discovery, Plaintiff learned that Defendant is insured under a "cannibalizing" insurance policy in which costs of defense reduce dollar for dollar from the available insurance limits. The Court appointed the undersigned as Interim Class Counsel on January 6, 2023. (Dkt. #28.) Approximately six weeks later, and with the attorney's knowledge of this Courts Order appointing Interim Class Counsel, another duplicative class action styled as *Krefting v. BECU* was filed in U.S. District Court for the Western District of Washington. Brown Decl. ¶ 7.

Following further exchanges of information, the parties conducted a mediation with Lou Peterson in March 2023. The parties invited BECU to participate in the mediation in light of presumed indemnification rights it has against Kaye-Smith arising from the Data Breach. BECU did not attend the mediation. While the parties narrowed the issues in dispute through that mediation, they were unable to reach a settlement. Two of the chief obstacles to reaching a settlement at the time, were (1) the duplicative actions in the Western District of Washington where BECU had pending motions to dismiss some, but not all claims; and (2) the unknown amount of indemnification BECU may claim against Kaye-Smith. *Id*. ¶¶ 8-9.

Following the first mediation, the parties continued to litigate—the parties fully briefed a motion to dismiss and motion to bifurcate discovery, and the Court denied a motion to stay discovery. The parties engaging in substantive discovery that required numerous discovery conferences to narrow the issues and eventually a motion to compel on those that remained unresolved. *Id*. ¶12. Interim Class Counsel was also required to first ask the Court to clarify that its order appointing interim class counsel, and then had to move to intervene in each of the duplicative Washington actions to have them transferred to this Court. *Id*. ¶ 11.

With Kaye-Smith's insurance assets continuing to deplete, and the presumed amount BECU would claim against it continuing to rise, the parties agreed to conduct a second mediation with the Honorable Wayne Anderson, a retired United States District Court Judge and current JAMS mediator. On October 17, 2023, with Judge Anderson's assistance, the parties were able to reach a settlement that required Kaye-Smith's insurers to tender all the remaining insurance limits and to create a Consumer Class Fund and a Business Fund. Under this structure, both consumers affected by the data breach, and businesses who have claims against Kaye-Smith arising from the data breach will be able to recover significant portions of their losses under the limited available, and rapidly depleting proceeds. All negotiations were conducted at arm's length, in good faith, free of any collusion, and under the supervision of Judge Anderson. After comprehensive negotiations and diligent efforts, both within the two mediation sessions and continued negotiations outside mediation, the Parties finalized the terms of the Settlement they now ask the Court to preliminarily approve. *Id*. ¶¶ 13-14.

### III. TERMS OF THE SETTLEMENT

**A. The Class Definitions**

The "Consumer Settlement Class" consists of all individuals who were notified by BECU or Kaye-Smith that their personal information was or may have been compromised in the data security incident initially disclosed by BECU in July 2022.

The "Business Settlement Class" consists of all businesses or entities that had a business relationship with Kaye-Smith, including Kaye-Smith's clients, and whether such relationship was by contract or not, and that were affected by the Data Security Incident, excluding those who have resolved their claims against Kaye-Smith prior to October 19, 2023.

**B. The Release**

In exchange for the benefits provided under the Settlement Agreement, Class Members will release any claims against Kaye-Smith and against its Business Affiliates that are related to

or arising out of the June 2022 data breach.

## C. The Settlement Benefits

The Settlement provides for a non-reversionary Settlement Fund that will be used to provide participating Consumer Class members with the following benefits:

### 1. Credit Monitoring

Each class member who submits a claim may receive an extra year of credit monitoring, which has a retail value of $240.

### 2. Documented Loss Payment

In addition to credit monitoring, Consumer Class Members may seek up to $2,500 of documented out of pocket losses, that may include reimbursement of up to five hours of reimbursement for attested time devoted to addressing the risks or effects of the data breach at a rate of $25 per hour. To receive a documented loss payment, a class member must submit a valid claim form with attestation of the loss supported by reasonable documentary proof.

### 3. Cash Fund Payments

In the alternative to a documented loss payment, Participating Class Members may submit a claim to receive a cash settlement payment. The amount of the cash settlement payment will be calculated in accordance with the terms of the Settlement Agreement on a pro rata share of the net settlement fund remaining after payments based on documented losses.

### 4. Business Loss Payments

Participating Businesses who suffered traceable business losses are entitled to reimbursement for losses associated with the data breach that have not already been paid. Such business claimants may submit claims for indemnification from Kaye-Smith with documentation as stated in the Settlement Agreement to recover a pro rata share of the Business Settlement

Fund.

### 5.    Settlement Value to Class Members

The cash fund value of the Settlement is the full remaining amount of insurance proceeds that remain available to Kaye-Smith, less amounts it needs to pay legal fees through final approval of this settlement. The amount will be not less than $2,000,000. Kaye-Smith is holding $300,000 to pay legal fees through final approval. Any unused amount will be added to the Settlement Fund.

### D.    Plan of Distribution

Subject to the Court's approval, the Settlement Administrator ("Administrator") will apply the Net Settlement Fund to make all distributions necessary for the credit monitoring claimed, Documented Loss Payments, Cash Fund Payments, and Business Loss Payments. After payment of fees and expenses, the Net Settlement Fund will be apportioned equally between the Consumer Fund used to pay Consumer Class members who submit valid claims, and the Business Fund used to pay Businesses who submit valid claims.

### E.    Notice to Class

Pursuant to Rule 23(e), the Administrator will provide Class Members with the Summary Notice via email for any Class Member for whom an email address is available, and via U.S. mail in postcard form for all other Class Members for whom a physical mailing address is available. Undeliverable email notices will result in supplemental email attempts and then a postcard Summary Notice being sent.

For recipients of notice via email who have not submitted Claim Forms, the Administrator will periodically transmit reminder emails of the opportunity to submit a Claim Form prior to the Claims Deadline. The Administrator will also create and maintain a Settlement

Website that contains all relevant information and documents regarding the Settlement through which Class Members can submit electronic Claims Forms and Requests for Exclusion. The Settlement Website will also contain a toll-free telephone number and mailing address through which Class Members can contact the Administrator. The language of all Notice Forms is easily understandable and accounts for the education level or language needs of the proposed Class Members. Proposed Notice Forms are attached as Exhibit B.

**F.      Proposed Class Representative Service Payments**

Plaintiff has been a dedicated and active participant on behalf of the Class, putting his name and reputation on the line for the sake of the Class and actively providing information at various stages in the litigation. The recovery would not have been possible without his efforts. Brown Decl. ¶¶ 17. In view of these efforts, counsel will separately petition the Court for approval of Service Payments in the amount of up to $5,000. The Settlement is not conditioned upon the Court's award of any Service Payments.

**G.      Attorneys' Fees and Expenses**

Plaintiff's counsel will separately file a motion for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses. There is no "free sailing" clause in the Settlement and any amount sought for payment of attorneys' fees will be consistent with the Ninth Circuit's 25% "benchmark" percentage for such awards. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). In no event will proposed Class Counsel seek more than 25% of the Settlement Fund in attorneys' fees. Proposed Class Counsel also intend to seek reimbursement of all expenses incurred. Any approved Fee Award and Costs will be paid out of the Settlement Fund. The Settlement is not conditioned upon an award of any attorneys' fees or expenses.

**H.      The Settlement Administrator**

The Parties propose that Epiq Class Action Administration serve as Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the Settlement. The costs of the Administrator will be paid out of the Settlement Fund. Epiq was selected following a competitive bidding process jointly conducted by proposed Class Counsel and defense counsel to identify the most efficient and lowest cost administration option. Proposed Class Counsel—who has litigated numerous class actions to settlement —has previously worked with Epiq on different matters. The estimated cost for settlement administration is competitive and reasonable. Brown Decl. ¶ 15.

## V.  PRELIMINARY APPROVAL IS APPROPRIATE

**A.      The Rule 23 Requirements for Class Certification Are Met**

At the preliminary approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)

**1.      Rule 23(a) Is Satisfied**

**i.      *The Class Is Sufficiently Numerous***

There are several hundred thousand Settlement Class Members. The Rule 23(a)(1) numerosity requirement is readily satisfied.

**ii.      *There Are Common Questions of Law and Fact***

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, numerous common issues of law and fact affect the

Class uniformly, including: the nature of Kaye-Smith's data security practices, whether Kaye-Smith owed duties of care to Class Members to safeguard their PII, and whether Kaye-Smith breached those duties. These inquiries will turn on common evidence. Commonality is satisfied.

### iii. *The Class Representatives' Claims Are Typical*

Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the Class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). Here, the claims of the named Plaintiff are typical of the claims of the Settlement Class. Plaintiff was notified by BECU that his PII was impacted because of Kaye-Smith's data breach incident and the Class Members are also individuals who were notified that their PII was impacted by the breach. Plaintiff's and Class Members' claims arise from the same nucleus of facts relating to the data breach, pertain to a common defendant, and are based on the same legal theories. Plaintiff thus satisfy the Rule 23(a)(3) typicality requirement.

### iv. *Class Representatives and Proposed Class Counsel Adequately Represent Class Members*

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class," which requires that the named plaintiffs (1) not have conflicts of interest with the proposed Class; and (2) be represented by qualified and competent counsel. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). Plaintiff and proposed Class Counsel are adequate. First, the proposed Class Representative has demonstrated that he is well-suited to represent the Settlement Class, has actively participated in the litigation, and will continue to do so. Brown Decl. ¶¶ 17. He does not have any conflicts of interest with the absent Class Members, as his claims are coextensive with those of the Class Members. *Id.*

Second, proposed Class Counsel are qualified and experienced in class action and complex litigation, with expertise and experience in consumer and data privacy class actions. *See* Declarations of John Heenan [Dkt. No. 22], Ari Brown [Dkt. No. 23], and Justin Baxter [Dkt. No. 24]. Proposed Class Counsel have been dedicated to the prosecution of this action and will remain so through final approval. Brown Decl. ¶ 3.

       **2.**       **Rule 23(b)(3) Is Satisfied**

Rule 23(b)(3) requires that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class," and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

       **i.**       *Common Issues of Law and Fact Predominate Over Any Potential Individual Questions*

The Rule 23(b)(3) predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, Plaintiff's claims depend on whether Kaye-Smith had reasonable data security measures in place to protect Plaintiff's and Class Members' PII, and whether Kaye-Smith could have prevented unauthorized exposure or compromise of Plaintiff's PII or mitigated its effects with more adequate third-party risk management practices. These questions can be resolved using the same evidence for all Class Members, including Kaye-Smith's internal documents, testimony of its employees, and expert analysis. *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied because the overarching common question . . . can be resolved using the same evidence for all class members and is exactly the kind of . . . common issue that makes certification appropriate.").

Indeed, Plaintiff alleges that the data breach affected all Class Members in a uniform fashion, compromising the similar types of PII for Plaintiffs and Class Members. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("Plaintiffs' case for liability

depends, first and foremost, on whether Anthem used reasonable data security to protect Plaintiffs' personal information . . . . That question can be resolved using the same evidence for all Class Members . . . .").

The issues presented are susceptible to common proof because they focus on Kaye-Smith's class-wide data security policies and practices, and thus are the type of predominant questions that make a class-wide adjudication worthwhile. *Id.*; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" (citation omitted)). Predominance is satisfied.

### ii.    *A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter*

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Where, as here, a court is deciding the certification question in the proposed class action settlement context, it need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Health Net. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution of the predominant

issues of fact and law through individual actions is impracticable: the individual amounts in dispute are too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

The class device is the superior method of adjudicating claims against Kaye-Smith that arise from the data breach because it promotes efficiency, and in fact, no realistic alternative exists. Kaye-Smith is a company with limited financial resources. Its primary, and near exclusive resource to resolve both business and consumer claims arising from its breach is its wasting insurance policy. Litigation has already eroded the amount available. Continued litigation will only lessen the amounts available—possibly to the point that no resources will remain to compensate any injured parties or claimants. Courts recognize this in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (N.D. Cal. May 10, 2019).

**B.      The Proposed Settlement Is Eminently Fair, an Excellent Result for the Class Members, and Should Be Preliminarily Approved**

The 2018 revisions to Rule 23 confirm the need for the Court's analysis regarding the fairness of a proposed class settlement. "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Accordingly, a district court may approve a settlement agreement "after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).

In making this decision, Rule 23(e)(2) clarifies that district courts must consider whether:

(A)     the class representatives and class counsel have adequately represented the class;
(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into account the:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Rule 23(e) now reflects the factors that this Circuit already considered for settlement approval: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Anthem,* 327 F.R.D. at 317 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

"Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing approval. *In re Bluetooth Headset*, 654 F.3d at 946.

At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). Ultimately, "[s]trong judicial policy favors settlements." *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)

## 1.   The Strength of Plaintiffs' Case and Possible Monetary Remedies

Plaintiff believes he has a strong case for liability based on the alleged shortcomings in Kaye-Smith's data security measures. Plaintiffs also believe they would be able to recover damages on behalf of the Class. The range of potential outcomes, however, is considerable. The

damages available will depend on the scope of class certification, whether various theories of damages would be accepted by the Court (i.e., benefit of the bargain, and loss of value of PII), and which causes of action survive. Plaintiff's and the Class Members' claims are subject to numerous risks (*see infra*, Sec. V.B.2.).

### 2.    The Risk, Expense, Complexity, and Potential Class Recovery

This factor overwhelmingly weighs in favor of preliminary approval. As stated above, while Plaintiff believes his case is a strong one, there is substantial risk. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex, and this case is no exception.

There are numerous substantial hurdles that Plaintiff would have to overcome before the Court might find a trial appropriate. First, given the early stage of the litigation, the legal sufficiency of Plaintiff's claims has not been tested by a motion to dismiss, including Article III standing. Establishing a cognizable injury tied to Defendant's conduct (as opposed to, for instance, another data breach or some other cause) can present challenges.

Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage and are among the most risky and uncertain of all class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Kaye-Smith would also likely argue that there are no damages because the class members' data was never made available on the dark web or other illegal sites.

Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

Finally, and most importantly, Interim Class Counsel verified through discovery that Kaye-Smith's sole collectable asset is its insurance policies which are cannabilizing/wasting

policies that are depleted by costs of defense. Thus, to take this case through class certification and trial would harm the Class Members as there would likely be no way to collect a judgment.

Plainly, the Settlement avoids the risk of non-recovery and is a prudent course in view of these high risks. Given that all Class Members will be eligible to elect CMIS or cash payments, the Settlement provides benefits that address all potential harms of a data breach without the substantial risk of continued litigation, which includes the risk of dismissal or judgment against Plaintiffs.

### 3.    The Risk of Maintaining Class Status Through Trial

Plaintiffs' case is still in the pleadings stage, and the Parties have not briefed class certification. Class certification proceedings are far off in the distance in this litigation, and prior to those proceedings there is risk of dismissal. Class certification, if and when it arrives, will present substantial risk, particularly given that different types of information were affected for different Class Members, and in light of the fact that class-wide data breach damage models remain largely untested at litigation. Data breach law is developing, so even if Plaintiffs obtained class certification, there is no guarantee that the class action status would be maintained. Health Net would likely seek a Rule 23(f) appeal of any decision by the Court granting class certification, resulting in additional delay to Class Members. The significant risk of obtaining and maintaining class certification in this case supports preliminary approval.

### 4.    The Amount Offered in Settlement Is Fair

The $2 million non-reversionary Settlement Fund is an excellent result for the Class. With this fund, all Class Members will be eligible for a Settlement Payment in the form of distribution for credit monitoring, a Documented Loss Payment, a Cash Fund Payment, and/or a Business Loss Payment. The Settlement Fund will be applied to pay all Administrative Expenses, Notice Expenses, the taxes to the Settlement Fund, any Service Payments, and any payment of a Fee Award and Costs. Any funds remaining in the Net Settlement Fund after distribution(s) to Class Members will be distributed in a subsequent Settlement Payment to Class Members.

The Settlement presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements on a per capita basis. *See* Appendix A attached hereto, Data Breach Settlement Comparison Chart; Wolfson Decl. ¶ 36. The Settlement is in the upper range of settlements on a per-capita basis.

## 5.    The Proposed Method of Distribution Is Effective

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory Comm. Note to 2018 amendment.

To file a claim, Class Members need only complete a straightforward Claim Form and, if necessary, submit it along with any documents supporting claimed losses, either through the Settlement Website or by mail. Ex. A (claim form). Epiq, the settlement administrator, will process all Claims. The methods of distributing relief to Class Members include both digital and physical check avenues.

## 6.    The Extent of Discovery Completed and the Stage of the Proceedings

Plaintiff's counsel have diligently developed the facts and legal claims in this case. Plaintiffs conducted significant discovery during the litigation regarding Kaye-Smth's data security systems. Plaintiff's counsel has engaged, and continues to conduct, confirmatory discovery to establish, *inter alia*, facts relevant to the breach and Kaye-Smith's liability and its reaction to and actions after the breach, class size, and Kaye-Smith's financial condition. Sec. III.C, *supra*.

The Parties engaged in informal discovery to confirm the Settlement as fair, reasonable, and adequate. As part of the negotiations and Settlement, the Parties engaged in confirmatory discovery to not only verify the relevant facts, but also the fairness of the Settlement. Brown Decl.

¶¶ 8, 9, 12, 15. Proposed Class Counsel's knowledge of facts of this case and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses of the case, the decision to twice go to mediation with Kaye-Smith, and the decision to recommend that the Court grant preliminary approval to the Settlement.

### 7.    The Experience and Views of Counsel

Interim Class Counsel include attorneys who have substantial experience in complex class action litigation, including in data breach and data privacy cases. Summaries of their relevant experience and qualifications were previously submitted to the Court. See Dkt. Nos. 22-24. Interim Class Counsel fully endorse the Settlement as fair, reasonable, and adequate to the Class, and do so without reservation, especially in view of the "wasting" insurance policies at issue.

### 8.    The Presence of a Governmental Participant

No governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State have been or will be notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections.

### 9.    The Reaction of Class Members to the Proposed Settlement

The Class has yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. Prior to final approval, the Court will be able to review all objections or other comments received from Class Members, along with a full accounting of all opt-out requests.

### 10.    The Settlement Is the Product of Arm's-Length Negotiations That Were Free of Collusion

The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d at 946-47 (internal quotation marks, ellipses and citation omitted). Plaintiffs achieved the Settlement in contested litigation and through arm's-length negotiations that involved two mediation sessions before two highly respected

mediators. Plaintiffs undertook substantial investigation of the underlying facts, causes of action, and potential defenses. Brown Decl. ¶¶ 6, 8, 9, 12, 15. The Parties engaged in extensive arm's length negotiations, including two mediation sessions before mutually agreed upon mediators, Lou Peterson and the Hon. Wayne Anderson (Ret.).

Both Mr. Peterson and Judge Anderson, are highly respected and experienced mediators who have extensive experience in class action litigation, including multiple data breach cases where a settlement was reached and subsequently approved. See, Brown Decl. ¶¶ 9, 13 (with links to their biographies). Their respective involvement here further confirms the absence of collusion. *G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

*In re Bluetooth* identified three "signs" of possible collusion: (1) "'when counsel receive[s] a disproportionate distribution of the settlement'"; (2) "when the parties negotiate a 'clear sailing' arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *In re Bluetooth,* 654 F.3d at 947 (internal citations omitted).

None of the *In re Bluetooth* signs are present here. There is no "clear sailing provision" and Class Counsel will not seek fees that exceed the 25% of the Fund benchmark set by *In re Bluetooth*. *Id.* at 942; SA § 11.3; *see, supra,* Sec. IV.H. There is no reversion of the Settlement Fund (SA § 4.11), but rather the Settlement makes every effort to distribute any Residual to the Class (*see id*. §§ 4.9, 4.11). Proposed Class Counsel will apply for fees from this non-reversionary Settlement Fund, so that there was every incentive to secure the largest fund possible. There is no indication or existence of collusion or fraud in the settlement negotiations and the Settlement that is being presented to the Court. Interim Class Counsel in *In re Accellion* reached the same conclusion. *Id*, ECF No. 158, at 5:11-12 ("the proposed settlement . . . does not bear any of the 'red flags' described in *Bluetooth*").

11.     **The Proposed Notice Plan Is Appropriate**

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005). The best notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The notice should provide sufficient information to allow Class Members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251-52. "[N]otice is adequate if it may be understood by the average class member." *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171, 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:53, at p. 167 (4th ed. 2013)). The Long Form Notices (Ex. B) here are clear, precise, informative, and meets all the necessary standards, allowing Class Members to make informed decisions with respect to whether to remain in, opt out of, or object to the Settlement.

The Notice Plan includes direct notice by emailing or mailing the Summary Notice to all Class Members, and reminder emails to those for whom email addresses are available. The Administrator will also establish a Settlement Website. The proposed Notice Plan represents the best notice practicable. Copies of all the notice documents are attached as exhibits to the Settlement Agreement; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan is consistent with, and exceeds the requirements of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines for adequate notice.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the proposed Notice plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

### 12.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, proposed Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data breach and data privacy cases. See, Dkt Nos. 22-24. As described above and in Class Counsel's Motion for Interim Class Counsel Appointment, Proposed Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint John Heenan, Ari Brown, and Justin Baxter as Class Counsel.

### C.    Settlement Deadlines and Schedule for Final Approval

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the following schedule, which the parties believe will provide ample opportunity for Class Members to decide whether to request exclusion or object:

| EVENT | DATE |
|---|---|
| Notice Date (U.S. Mail and email) | Within **30 Days** from Preliminary Approval Order |
| Deadline to Submit Claim Forms | **90 Days** from Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Payments | **35 Days** Before Objection Deadline |

| EVENT | DATE |
|---|---|
| Deadline to Object and/or Comment on the Settlement | **75 Days** from Notice Date |
| Deadline to Submit Request for Exclusion | **75 Days** from Notice Date |
| Final Approval Hearing | To be Determined |

## VI.    CONCLUSION

Plaintiff Smith respectfully requests that this motion be granted and that the Court enter an order: (1) certifying the proposed class for settlement; (2) preliminarily approving the proposed class action Settlement; (3) appointing Plaintiff as Class Representatives and John Heenan, Ari Brown and Justin Baxter as Class Counsel; (4) appointing Epiq as the Settlement Administrator; (5) approving the proposed Class Notice Plan; and (6) approving the proposed class settlement administrative deadlines and procedures, including setting a Final Approval Hearing date.

Dated this 9th day of November, 2023.

BAXTER & BAXTER, LLP
RHODES LEGAL GROUP
HEENAN & COOK, PLLC

*/s/ John Heenan*
John Heenan (Pro Hac Vice)
Attorneys for Plaintiff and Interim Class Counsel

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between Richard Smith ("Plaintiff"), individually and on behalf of Participating Settlement Class Members (as defined in Paragraph 31 (together "Plaintiffs"), and (2) Kaye-Smith Enterprises, Inc. ("Defendant" or "Kaye-Smith") (collectively the "Parties"), in the action *Smith et al. v. Kaye-Smith Enterprises, Inc.*, Cause No. 22-01499-AR (Dist. Oregon).

## RECITALS

WHEREAS Kaye-Smith is a family-owned marketing execution and supply chain company that contracts to provide statement processing, billing services and data management to businesses including Boeing Employees Credit Union ("BECU").

WHEREAS in the course of providing business services, Kaye-Smith is provided and stores sensitive customer information which it then masks and stores in "print files."

WHEREAS between May 18, 2022, and June 2, 2022, a malicious actor gained access to certain Kaye-Smith print files (the "Data Security Incident").

WHEREAS Kaye-Smith retained a computer forensics firm on June 2, 2022, that determined which files and which data had been potentially accessed and concluded that no social security numbers or credit scores had been accessed.

WHEREAS Kaye-Smith notified its customers, including BECU of the Data Security Incident including the nature and extent of the information that was potentially accessed.

WHEREAS on or about July 25, 2022, BECU sent notice to customers informing them of the Data Security Incident that incorrectly stated that social security numbers and credit scores were among the data potentially involved in the Data Security Incident.

WHEREAS Plaintiff, filed a proposed class action lawsuit in the U.S. District Court for the District of Oregon on behalf of himself and a proposed class of similarly situated individuals on October 6, 2022, against Kaye-Smith relating to the Data Security Incident, entitled *Smith v. Kaye-Smith Enterprises,* 3:22 cv-01499-AR.

WHEREAS Kaye-Smith has incurred and continues to incur losses resulting from the Data Security Incident that threaten its viability to continue as a going concern.

WHEREAS Kaye-Smith was insured for this incident under a single, aggregate insurance policy that diminishes/wastes with incurred defense costs and fees.

WHEREAS Kaye-Smith has received and anticipates continuing to receive clams from its clients which are covered under the single, aggregate insurance policy.

**Ex. A**

WHEREAS continued litigation regarding liability that may arise from the Data Security Incident threatens Kaye-Smith's viability to continue as a going concern.

WHEREAS Kaye-Smith continues to deny a) the allegations and all liability with respect to any and all facts and claims alleged in the Litigation; b) that the class representatives in the Litigation and the classes they purport to represent have suffered any damage; and c) that the Litigation satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23.

WHEREAS Kaye-Smith provided, and commits to provide, certain information requested by counsel for Plaintiffs as confirmatory discovery, which confirms this Settlement as fair, reasonable, and adequate.

WHEREAS, this Agreement resulted from good faith, arm's-length settlement negotiations over the course of several months, including a full-day mediation session facilitated by Louis D. Peterson on March 20, 2023 and a second full-day mediation session facilitated by Judge Wayne Andersen on October 19, 2023.

WHEREAS, the Parties agree that dividing the Settlement Class into a Consumer Settlement Class and a Business Settlement Class is the most fair and equitable settlement for the entire Settlement Class;

WHEREAS, the Business Class consists of business clients of Kaye-Smith who sustained losses as a result of the Data Security Incident,

WHEREAS, the Consumer Class consists of individuals who are customers or clients of the Business Class,

WHEREAS, in light of the financial condition of Kaye-Smith and the amount of insurance funds that remain available, a member of the Business Class opting out of this settlement or otherwise triggering a termination of this Agreement, would reduce the funds available to return to the Consumer Class and would be inconsistent with the interests of their members or customers which comprise the Consumer Class;

NOW, THEREFORE, in exchange for the mutual promises and valuable consideration provided for in this Agreement, and without any admission or concession by either Party, the Parties agree to a full, complete, and final settlement and resolution of the Litigation, subject to Court approval, on the following terms and conditions:

## I.    **DEFINITIONS**

In addition to terms defined at various points within this Agreement, the following defined terms shall have the meanings set forth below:

1.    "Approved Consumer Claim" means the timely submitted Consumer Claim Form by a Participating Settlement Member that has been approved by the Settlement Administrator.

2.      "Approved Business Claim" means the timely submitted Business Claim Form for Business Losses submitted by a Participating Settlement Member that has been approved by the Settlement Administrator.

3.      "Attested Time" means time spent remedying issues related to the Data Security Incident, as provided in Section III of this Agreement.

4.      "Business Claim Form" or "Business Claim" means the form(s) Participating Settlement Class Members must submit to be eligible for reimbursement for Business Losses, which is attached hereto as **Exhibit 1**.

5.      "Business Losses" means: (a) necessary and documented out-of-pocket costs or expenditures pertaining to the operation of a business that a Settlement Class Member actually incurred that are fairly traceable to the Data Security Incident, that have not already been reimbursed by a third party, and that were not avoidable but for the Settlement Class Member's unnecessary conduct; or (b) without limitation, unreimbursed costs associated with fraud or identity theft, losses due to business interruption, costs incurred in securing alternative services, professional fees including attorneys' fees, accountants' fees, and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, that were incurred on or between May 22, 2022 and the Notice Deadline; or (c) any and all damages arising from claims for reimbursement and/or indemnity, of any kind or nature that may be asserted against, or recoverable from Kaye-Smith, based on any legal or equitable theory or principal, whether such claim is accruing now or in the future. To resolve any doubt, Business Losses includes any and all losses or damages of any kind or nature whatsoever that a Settlement Class Member incurred, or may hypothetically incur, as a result of the Data Security Incident.

6.      "Business Settlement Class" means any and all businesses or entities that had a business relationship with Kaye-Smith, including Kaye-Smith's clients, and whether such relationship was by contract or not, and that were affected by the Data Security Incident, excluding those who have resolved their claims against Kaye-Smith prior to October 19, 2023.

7.      "Claims Deadline" means the last day to submit a timely Claim Form(s), which will occur ninety (90) days after the Notice Deadline.

8.      "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement benefits, which will end on the Claims Deadline.

9.      "Class Counsel" means

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, Montana 59102

Ari Brown
RHODES LEGAL GROUP, PLLC

918 South Horton Street, Suite 901
Seattle, Washington 98134; and

Justin Baxter
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225.

10.    "Consumer Claim Form" or "Consumer Claim" means the form(s) Participating Settlement Class Members must submit to be eligible for reimbursement of Out-of-Pocket Losses, Attested Time, and/or to claim Credit Monitoring Services or an Alternative Cash Payment under the terms of the Settlement, which is attached hereto as **Exhibit 2**.

11.    "Consumer Settlement Class" means the individuals identified on the Settlement Class List, including all individuals who were notified by BECU or Kaye-Smith that their personal information was or may have been compromised in the data security incident initially disclosed by BECU in July 2022. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

12.    "Court" means the Honorable Jeffrey Armistead, or such other judge to whom the Litigation may hereafter be assigned.

13.    "Credit Monitoring Services" means the Financial Shield identity theft protection services provided by CyEx that provides a number of   services designed to protect consumers from identity theft to Participating Settlement Class Members under the Settlement. These services include daily three-bureau credit monitoring with Equifax, Experian, and TransUnion; monthly credit score, high risk transaction monitoring, identity and authentication alerts, dark web monitoring, lost wallet protection, security freeze capability, customer support, and victim assistance; and $1 million in identity theft insurance, among other features.

14.    "Data Security Incident" means the incident that occurred between May 18, 2022, and June 2, 2022 in which a malicious actor gained access to certain Kaye-Smith computer files, and includes all acts or omissions, alleged or otherwise, to have caused, contributed, arising from, or related to the incident.

15.    "Effective Date" means one business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order and Judgment; or (ii) if any appeal, petition, request for rehearing, or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired.

16.    "Fee Application" means any motion for an award of attorneys' fees, Litigation Costs and Expenses, and Service Award Payments to be paid from the Settlement Fund, as set forth in Paragraphs 104 through 107

17.    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

18.    "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Litigation with prejudice, entering judgment in accord with the terms of this Settlement Agreement, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23, and is consistent with all material provisions of this Settlement Agreement. The Parties agree to the Court entering a Final Approval Order and Judgment consistent with the proposed Final Approval Order and Judgment attached hereto as Exhibit 3.

19.    "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

20.    "Identity Restoration Services" means identity restoration services provided by CyEx to all Participating Settlement Class Members under the Settlement. These services provide for professional fraud resolution and identity recovery assistance by U.S.-based agents to Participating Settlement Class Members who experience identity theft or fraud.

21.    "Litigation Costs and Expenses" means costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Litigation.

22.    "Minor Claim Form" means the form(s) a legal guardian may submit on behalf of a Participating Settlement Class Member who is under the age of eighteen (18) at the time of claim submission seeking reimbursement of Out-of-Pocket Losses and/or Attested Time, which is attached hereto as **Exhibit 3**

23.    Minor Monitoring Services" means Credit Monitoring Services described earlier.

22.    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from, or allocated for payment from the Settlement Fund for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Identity Restoration Services; (iv) Minor Monitoring Services; (v) Credit Monitoring Services; (vi) Service Awards Payments approved by the Court, and (vii) Fee Award and Costs approved by the Court.

24.    "Non-Profit Residual Recipient" means a non-profit organization approved by the Court following distribution of Settlement payments for Approved Claims.

25.    "Notice" means notice of the proposed class action Settlement to be provided to Settlement Class Members pursuant to the Preliminary Approval Order, substantially in the form attached hereto as **Exhibit 4**.

26.    "Notice Deadline" means the last day by which Notice must issue to the Settlement Class Members and will occur within thirty (30) days after entry of the Preliminary Approval Order.

27.    "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, locating Settlement Class Members, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

28.    "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement or Fee Application, which will be forty-five (45) days after the Notice Deadline.

29.    "Opt-Out Deadline" is the last day of the Opt-Out Period.

30.    "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed or emailed, and that ends 45 days later.

31.    "Out-of-Pocket Losses" means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Security Incident, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation, unreimbursed costs associated with fraud or identity theft including professional fees including attorneys' fees, accountants' fees, and fees for credit repair services and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring or other mitigative services that were incurred on or between May 22, 2022, and the Notice Deadline.

32.    "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

33.    "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment, that is consistent with all material provisions of this Settlement Agreement.

34.    "Released Claims" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including,

but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, statutory damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have or may claim now or in the future to have (including, but not limited to, negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, breach of confidence, breach of contract, business interruption damages, invasion of privacy, assigned claims and any and all "Unknown Claims" as defined below) that were or could have been asserted or alleged against Kaye-Smith, its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, vendees, including but not limited to BECU, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing. arising out of the Data Breach, including but not limited to those concerning: 1) the disclosure of the Settlement Class Members' personal information in the Data Security Incident; 2) Kaye-Smith's maintenance of Settlement Class Members' personal information as it relates to the Data Security Incident; 3) Kaye-Smith's security policies and practices as it relates to the Data Security Incident; 4) Kaye-Smith's investigation and response to the Data Security Incident; 5) Kaye-Smith's provision of notice to Settlement Class Members following the Data Security Incident; 6) Kaye-Smith's inability to provide services to Settlement Class Members as a result of the Data Breach; 7) Kaye-Smith's contractual or business obligations to vendees or clients; 8) Reimbursement for costs and expenses, including but not limited to legal costs; and (9) any and all claims for damages, reimbursement or indemnity, arising under any legal or equitable theory, including whether in tort or contract, that may be made against Kaye-Smith now or at any time in the future.

35.    "Releasing Parties" means all members of the Consumer Settlement Class and the Business Settlement Class who are subject to this Agreement.

36.    "Request for Exclusion" is the timely written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

37.    "Service Award Payment" means compensation awarded by the Court and paid to the Settlement Class Representatives in recognition of their role in this litigation.

38.    "Settlement" means the settlement of the Litigation by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

39.    "Settlement Administrator" means the administrator chosen by Class Counsel. Class Counsel and Defendant's Counsel may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

40.    "Settlement Class List" means the list generated by Kaye-Smith and/or BECU containing the full names, current or last known addresses where known, and personal email addresses where known, for all persons who fall under the definition of the Settlement Class, which Kaye-Smith shall provide to the Settlement Administrator within seven (7) days of the Preliminary

Approval Order. The Settlement Class List will also indicate which individuals on the Settlement Class List are minors, but shall not include their respective birthdates.

41.    "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

42.    "Settlement Class Representative" means Richard Smith.

43.    "Settlement Fund" means the remaining amount of insurance coverage available to Kaye-Smith to reimburse it for losses arising from the Data Security Incident as of the date of this Agreement, less the amount required to pay Kaye-Smith's reasonable attorney's fees and costs to the date of final approval, resulting in an amount that is not less than $2,000,000. The Settlement Fund is to be paid by Kaye-Smith or its insurance carrier, including any interest accrued thereon after payment, plus the cash value of Credit Monitoring and Minor Credit Monitoring described in Section 48.

44.    "Settlement Payment" or "Settlement Check" mean the payment to be made via mailed check and/or electronic payment to a Participating Settlement Class Member pursuant to Paragraphs 47 through 75.

45.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, this Agreement, Plaintiffs' motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiffs' Fee Application, and the operative complaints in the Litigation. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days after all Settlement Payments have been distributed.

46.    "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Kaye-Smith with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

## II.    **CONFIRMATORY DISCOVERY**

47.    **Materials to be Provided:** Within thirty (30) days of the execution of this Settlement Agreement, and subject to the Stipulated Protective Order entered on July 24, 203 (Dkt. # 59), Kaye-Smith will provide Class Counsel with the documents and information set forth below, sufficient to adequately confirm the following to Class Counsel's reasonable satisfaction:

a. The itemization of all computer files potentially accessed in the course of the Data Breach Incident and detailed descriptions of the Personal Information as to each Consumer Class Member contained in each computer file.

b. An affidavit from Kaye-Smith's insurer confirming the available remaining insurance limits, and that all remining limits of insurance are being used to fund to the Settlement Fund, as more fully set forth in this Agreement.

c. 2022 Audited Financial Statements and year unaudited Financial Statements to August 31, 2023, internal financial statements confirming there are no sources other than insurance policies that would potentially be available to pay any liabilities arising from the Data Breach Incident and that show the current state of Kaye-Smith's current financial position.

## III.  SETTLEMENT FUND

48.  **Establishment of Settlement Fund**. Kaye-Smith agrees to fund a Settlement Fund with all insurance funds that remain available after payment of its legal defense costs as stated in this section. Within seven (7) days of the Effective Date, Kaye-Smith will pay to the Claims Administrator to fund the relief provided under the Settlement Agreement the Settlement Fund ($2,000,000.00) minus the amounts advanced for notice and claims administration cost as described in the next sentence. Within seven (7) days of the entry of the order preliminarily approving the Settlement and approving the Claims Administrator, Kaye-Smith will pay 1) $300,000 from the Settlement Fund to the Claims Administrator for the actual expenses of notice and claims administration, and 2) $150,000 to CyEx for the 1 year credit-monitoring available to the Consumer Settlement Class. Any unused amounts of the advanced payment to the Claims Administrator shall be returned to the Consumer Settlement Fund. To the extent this Settlement Agreement is not finally approved, Kaye-Smith will be entitled to the return of any amounts not already incurred by the Claims Administrator in connection with Settlement Administration. Kaye Smith shall have the right to retain insurance funds that remain after the initial funding of $2,000,000 to the Settlement Fund in an amount up to $300,000 for payment of its own legal defense costs up to the date of final approval. Within seven (7) days of a final approval order, Kaye-Smith shall provide Class Counsel and the Claims Administrator an accounting of all legal defense costs incurred from preliminary approval through final approval. Any amounts in excess of legal costs incurred shall be added to the Consumer Settlement Fund to be paid to the Claims Administrator as provided herein.

49.  **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Kaye-Smith in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Section IX .

50.  **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-

2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

51.    **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraphs 82, 83, 85 and/or 97

52.    **Use of the Settlement Fund**. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Awards Payments approved by the Court; (iv) Fee Award and Costs; (v) Credit Monitoring Services; (vii) Minor Monitoring Services; (viii) reimbursement for Approved Consumer Claims; (ix) Alternative Cash Payments; and (x) Approved Business Claims. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

53.    **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Settlement Class Representative and Participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

## IV.    **PLAN OF ALLOCATION**

54.    **Apportionment of Funds:** The Net Settlement Amount shall be allocated between two funds wherein fifty percent (50%) shall be allocated to a fund for reimbursement of Approved Consumer Claims and for Credit Monitoring; and fifty percent (50%) shall be allocated to a fund for the reimbursement of Approved Business Claims.

## A. REIMBURSEMENT OF CONSUMER CLAIMS

55.    **Reimbursement for Out-of-Pocket Losses**. All Consumer Settlement Class Members may submit a claim for up to $2,500.00 for reimbursement of Out-of-Pocket Losses. To receive reimbursement for Out-of-Pocket Losses, Consumer Settlement Class Members must submit a valid Claim Form that includes the following: (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Consumer Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. A legal guardian for a Consumer Settlement Class Member who is under the age of eighteen (18) at the time of claim submission may submit a Minor Claim Form seeking reimbursement of Out-of-Pocket Losses on the minor's behalf.

56.    **Assessing Claims for Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Consumer Claim Form is a Consumer Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Out-of-Pocket Losses reflects valid Out-of-Pocket Losses actually incurred that are fairly traceable to the Data Security Incident but may consult with Class Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider (i) whether the timing of the loss occurred on or after May 22, 2022; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the type of Personal Information identified in Kaye-Smith's notices of the Data Security Incident. Costs expended for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after May 22, 2022 shall be presumed "reasonably incurred." The Settlement Administrator is authorized to contact any Consumer Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

57.    **Reimbursement for Attested Time**. All Consumer Settlement Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at twenty-five dollars ($25) per hour. Settlement Class Members can receive reimbursement of Attested Time with a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. Claims for Attested Time are capped at $125 per individual. A claim for Attested Time may be combined with reimbursement for Out-of-Pocket Losses but in no circumstance will a Settlement Class Member be eligible to receive more than the $2,500.00 individual cap. A legal guardian for a Settlement Class Member who is under the age of eighteen (18) at the time of claim submission may submit a Minor Claim Form seeking reimbursement of Attested Time on the minor's behalf.

58.    **Assessing Claims for Attested Time**. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Attested Time, but may consult with Class Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class

Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

59.    **Disputes**. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Attested Time is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel in making such determinations.

60.    **Alternative Fixed Cash Payments**. In lieu of submitting claims for reimbursement for out-of-pocket losses and for attested time as described above, participating Settlement Class Members may elect to receive a cash payment in an amount equal to a pro rata distribution of the Net Settlement Fund remaining after payment of claims made pursuant to paragraphs 55-58 above ("Alternative Fixed Cash Payments"). Each Alternative Fixed Cash Payments shall be an amount that is not less than $1.00 per participating Consumer Settlement Class Member ("Minimum Fixed Cash Payment"). In the event the total required to pay the Minimum Fixed Cash Payment exceeds the amount remaining in the Net Settlement Fund, the amounts paid based on Out-Of-Pocket Losses and based on Attested Time shall be reduced pro-rata.

## B. CREDIT MONITORING AND MINOR MONITORING

61.    **Credit Monitoring Services**. In addition to recoveries from the Settlement Fund described in Section III above, all Participating Consumer Settlement Class Members who are not automatically eligible for Minor Monitoring Services are eligible to enroll in One (1) year of Credit Monitoring Services provided by CyEx, regardless of whether the Consumer Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses or Attested Time. The Settlement Administrator shall send an activation code to each Participating Consumer Settlement Class Member who is eligible for Crediting Monitoring Services within thirty (30) days of the Effective Date which can be used to activate Credit Monitoring Services via an enrollment website maintained by CyEx. Such enrollment codes shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such codes shall be sent via U.S. mail. Credit Monitoring Services claimants may activate Credit Monitoring Services for a period of at least sixty (60) days from the date the Settlement Administrator sends the activation code. CyEx shall provide Credit Monitoring Services to all valid claimants who timely activate those services for a period of 1 year from the date of activation.

62.    **Minor Monitoring Services**. All Participating Consumer Settlement Class Members under the age of eighteen (18) on or before the Claims Deadline are automatically eligible to enroll in Minor Monitoring Services provided by CyEx for a period of One (1) year from the Effective Date, regardless of whether they submit a claim under the Settlement.

Enrollment codes shall be mailed or emailed to all eligible Consumer Settlement Class Members within thirty (30) days of the Effective Date.

### C. REIMBURSEMENTS OF BUSINESS CLAIMS

63.    **Reimbursement for Business Losses**. Business Settlement Class Members who had a business relationship with Kaye-Smith prior to the Data Security Incident, whether by contract or not, including those who may have a contractual claim for indemnification, may submit a claim for reimbursement of Business Losses incurred as a proximate result of the Data Security Incident which shall include actual or alleged Business Losses arising from, but not limited to: reputational harm; business interruption, actual, compensatory or consequential damages; rights of indemnity pursuant to any contract or equitable theory of recovery; attorneys fees; and any expense, fee, judgment loss or damage incurred arising from or related to the Data Security Incident, including any loss, fee, cost or damage incurred as a result of any claim or lawsuit. To receive reimbursement for Business Losses, Business Settlement Class Members must submit a valid Claim Form that includes the following: (i) third party documentation supporting the loss; (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone; (iii) a statement showing how the loss was proximately caused by the Data Security Incident; and (iv) a detailed description of efforts taken to mitigate the scope and size of the loss. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

64.    **Assessing Claims for Business Losses**. The Settlement Administrator shall verify that each person who submits a Business Claim Form is a Business Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Business Losses reflects valid Business Losses actually incurred that are reasonable and fairly traceable to the Data Security Incident but may consult with Class Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider (i) whether the timing of the loss occurred on or after May 22, 2022; (ii) whether the loss was proximately caused by the Data Security Incident; (iii) whether the amount claimed is reasonable; and (iv) whether there were reasonable efforts to mitigate the loss claimed. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

65.    **Disputes**. To the extent the Settlement Administrator determines a claim for Business Losses is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Business Settlement Class Member of the deficiencies and give the Business Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Business Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Business

Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel in making such determinations.

## V.    PAYMENTS TO PARTICIPATING SETTLEMENT CLASS MEMBERS

66.    **Payment Timing**. Payments for Approved Consumer Claims for reimbursement for Out-of-Pocket Losses, Attested Time, and/or Alternative Fixed Cash Payments and Approved Business Claims shall be issued in the form of a check mailed and/or an electronic payment as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

67.    **Timing**. Settlement Checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement Check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Participating Consumer Settlement Class Member reminding him/her of the deadline to cash such check.

68.    **Uncashed Checks**. To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Participating Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Participating Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Participating Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

69.    **Unclaimed Property**. No portion of the Settlement Fund shall revert or be repaid to Kaye-Smith after the Effective Date. Any undistributed funds shall be distributed pro rata to Consumer Settlement Class Members who file claims, unless such funds cannot be distributed due to the administrative costs and burden in distributing such residual funds to class members who filed claims, in which case such funds, any remaining monies or funds from uncashed checks shall be distributed to the Classroom Law Project (Portland, OR).

70.    **Deceased Class Members**. If the Settlement Administrator is notified that a Participating Settlement Class Member is deceased, the Administrator is authorized to reissue the Settlement Check to the Participating Settlement Class Member's estate upon receiving proof the Participating Settlement Class Member is deceased and after consultation with Class Counsel.

## VI.    CLAIMS, CAPS, AND DISTRIBUTION OF SETTLEMENT FUNDS

71.    **Submission of Electronic and Hard Copy Claims**. Participating Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline.

Kaye-Smith shall not be entitled to access information regarding which Settlement Class Members submitted a Claim Form or otherwise participated in the Settlement. Kaye-Smith's Counsel may obtain this information on a showing of good cause, including but not limited to any disputes arising out of the claims process.

72.    **Individual Caps**. Participating Consumer Settlement Class Members are subject to an individual aggregate cap of $2,500.00 for payments made under the Settlement for reimbursement of Consumer Claims. Participating Consumer Settlement Class Members may submit Consumer Claims for reimbursement of Attested Time and for Out-of-Pocket Losses, but the Participating Consumer Settlement Class Member's combined claims will be subject to the individual aggregate cap of $2,500.00.

73.    **Categorical Caps**. The aggregate amount of all payments for reimbursement of Approved Business Claims shall not exceed 50% of the Net Settlement Fund. The aggregate amount of all payments for reimbursement of Approved Consumer Claims and for Credit Monitoring and Minor Monitoring shall not exceed 50% of the Net Settlement Fund. In the event Approved Claims exceed the respective amounts available under these caps, the amounts paid to Participating Settlement Class Members will be reduced pro-rata as provided in paragraph 75 below.

74.    **Order of Distribution of Funds to Reimburse Consumer Claims**. The Settlement Administrator must first use the portion of the Net Settlement Fund designated for payment of Approved Consumer Claims to make payments for Approved Claims for Out-of-Pocket Losses, followed by Approved Claims for Attested Time. The Settlement Administrator shall then utilize the remaining funds in the Net Settlement Fund to calculate and to make distributions for Alternative Fixed Cash Payments.

75.    **Pro-Rata Contingencies**.

       a.    **Reimbursement of Approved Consumer Claims**: In the event that the aggregate amount of all payments for reimbursement of Approved Consumer Out-of-Pocket Losses and/or Minimum Fixed Cash Payments exceed 50% of the amount of the Net Settlement Fund, then the value of payments to reimburse Out-of-Pocket Losses shall be reduced on a pro rata basis, such that the aggregate value of all payments for Out-of-Pocket Losses and Minimum Fixed Cash Payments do not exceed 50% of the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed for Approved Claims of Attested Time. In the event that: (i) the aggregate amount of Approved Claims for Out-of-Pocket Losses and Minimum Fixed Cash Payments do not exceed the Net Settlement Fund; and (ii) the aggregate amount of all Approved Claims for Attested Time is greater than the Net Settlement Fund, less the aggregate amount of Approved Claims for Out-of-Pocket Losses and Minimum Fixed Cash Payments, then the value of each Participating Settlement Consumer Class Members' payment for Attested Time shall be reduced on a pro rata basis such that the

aggregate value of all Approved Claims for Out-of-Pocket Losses and Attested Time do not exceed the Net Settlement Fund. All pro rata determinations required by this Paragraph shall be performed by the Settlement Administrator.

b. **Reimbursement of Business Losses:** In the event that the aggregate amount of all payments for reimbursement of Approved Business Claims exceeds 50% of the Net Settlement Fund, then the value of all payments for Approved Business Losses shall be reduced on a pro rata basis such that the aggregate value of all payments for reimbursement of Approved Business Claims does not exceed 50% of the Net Settlement Fund.

c. **Satisfaction of All Approved Consumer Claims and Business Claims Prior to Reversion:** In the event Approved Consumer Claims constitute less than 50% of the Net Settlement Fund, and Approved Business Claims exceed 50% of the Net Settlement Fund, then any remaining funds in the Net Settlement Fund shall be distributed on a pro rata basis to satisfy all Approved Business Claims. Similarly, in the event Approved Business Claims constitute less than 50% of the Net Settlement Fund, and Approved Consumer Claims exceed 50% of the Net Settlement Fund, then any remaining funds in the Net Settlement Fund shall be distributed on a pro rata basis to satisfy all Approved Consumer Claims.

76.     **Administrative Reports.** After the Notice Date, the Settlement Administrator shall provide a weekly report to Class Counsel and to Kaye-Smith's Counsel, setting forth the number of and claimed value of valid Claim Forms that were submitted each week. Within seven (7) days of the Objection/Opt-Out Deadline, the Settlement Administrator shall provide Class Counsel and Kaye-Smith's Counsel a Final Report certifying jointly to both parties which Claim Forms were valid and timely submitted.

## VII.    <u>NON MONETARY RELIEF</u>

77.     **Business Practice Changes**. Kaye-Smith agrees to provide Class Counsel information concerning the remedial actions that it has taken, began or planned since the Data Security Incident as part of its ongoing efforts, to enhance, improve, and strengthen its cybersecurity training and awareness programs, data security policies, security measures, restrictions to accessing Personal Information, and its monitoring and response capabilities. Such changes shall include, at minimum:

(a)     Additional SOCs to allow for 24/7 logging and monitoring of our infrastructure,

(b)     Implementing a more robust vulnerability management system with continuous scanning,

(c)    Periodically Performing internal and external penetration tests at least __ times each calendar year, and

(d)    Actively reviewing additional security controls from other frameworks, beyond ISO27001, that Kaye-Smith will apply to its environment.

## VIII.    **SETTLEMENT CLASS NOTICE**

78.    **Identification of Settlement Class Members**. Within five (5) days after the date of the Preliminary Approval Order, Kaye-Smith shall provide the Settlement Class List to the Settlement Administrator that shall specifically identify all Consumer Settlement Class Members and all Business Settlement Class Members who had a direct business relationship with Kaye-Smith that preceded the Data Breach Incident. The Settlement Administrator shall execute a Business Associate Agreement including an agreement to maintain the confidentiality of the Class List and to use the Class List strictly for business purposes of administering the Settlement with any entity involved in providing notice. The Settlement Administrator shall not provide the Class List to Class Counsel.

79.    **Class Notice**. Within fourteen (14) days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. The court-approved Notice of Proposed Class Action Settlement ("Class Notice") shall be in the form attached as **Exhibit 3**, a Business Claim Form in the form attached as **Exhibit 1** (which shall be sent only to Business Settlement Class Members that Kaye Smith identified as having a direct business relationship with Kaye-Smith that preceded the Data Breach Incident), and a Consumer Claim Form in the form attached as Exhibit 2 which shall be sent to all Consumer Settlement Class Members.  Notice shall be disseminated via email where available and U.S. mail where no email is available to all Settlement Class members. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time prior to the Claims Deadline.

80.    **Toll Free Telephone Number**. The Settlement Administrator shall establish and administer a toll-free telephone number through which Settlement Class members may contact the Settlement Administrator directly.

81.    **Settlement Website**.  The Settlement Administrator shall establish and administer a settlement website with links to key documents including but not limited to the Notice, this Settlement Agreement, Plaintiffs' motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiffs' Fee Application, the operative complaint in the Litigation, the Business Claim Form, and the Consumer Claim Form. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.

## IX.    **OPT-OUTS AND OBJECTIONS**

82.    **Consumer Settlement Class Opt-Outs**. The Notice shall explain the procedure for all Consumer Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

83.    **Business Settlement Class Opt-Outs**. The Notice shall explain the procedure for all Business Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Business Request for Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline.  The Business Request for Exclusion shall specifically set forth:

      a.    The name and address of the purported Business Class Member, and identify the individual within the Business Class Member with authority to bind the Business Class Member to a settlement and/or the authority to withdraw from Settlement Class;

      b.    Identify all Business Losses and provide copies of all documents evidencing all losses for which the Business Class Member seeks reimbursement;

      c.    A statement of whether, prior to the Opt-Out date, the purported Business Class Member ever asserted a claim to Kaye-Smith, provided notice of a claim and/or was compensated for any claim it may have had against Kaye-Smith arising from the Data Security Incident, and if so identify when such claim(s) were made, how and to whom the claim(s) where communicated and provide copies of all documents evidencing the same;

      d.    The specific legal and equitable basis for any claims intended to be brought against Kaye-Smith, and the amount of any such claim;

      e.    Specific efforts taken, with supporting documents, by the Business Class Member to mitigate Business Losses; and

      f.    Detailed explanation, with supporting documents, for the reason for Opt-Out.

84.    **Opt-Out Termination**. Kaye-Smith shall have the right to terminate the Settlement Agreement if two (2) percent of the total number of Consumer Settlement Class Members submit valid requests to opt out. In no event will Class Counsel, the Settlement Class Representatives, Kaye-Smith's corporate officers, or Kaye-Smith's counsel encourage Settlement Class Members to opt-out.

85.    **Agreement Termination by Business Settlement Class Member Opt-Out**. Kaye-Smith shall have the right to terminate the Settlement Agreement if a Business Settlement Class Member with identified and validated Business Losses exceeding $250,000 opts out.

However, prior to the Agreement being terminated, the Business Settlement Class Member who triggers termination of the Settlement Agreement pursuant to paragraph 83 above must submit a verified affidavit to the Court with evidentiary proof by an employee or officer of the Business Settlement Class Member with authority to opt-out explaining how termination of the Settlement Agreement is in the best interests of the Settlement Class and how termination of the Agreement does not violate the Business Settlement Class Member's duties, including but not limited to its fiduciary duties, to its members or customers who are included in the Consumer Settlement Class. This same affiant, as well as counsel for the Business Settlement Class Member, must appear in-person in Oregon Federal District Court for a hearing in front of Judge Armistead or any other Judge or Magistrate assigned to this matter, to explain how termination of the Agreement is in the best interests of the Settlement Class and how such opt out does not violate their fiduciary duties to their members. In the event such Business Request for Exclusion submitted by a Business Class Member is not fully accepted by the Court, said Business Class Members shall be responsible for all attorney fees and costs incurred by Kaye-Smith and by Class Counsel incurred as a result of, or related to, said Opt-Out.

86. **Class Objections**. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Settlement Administrator postmarked no later than the Opt-Out Deadline. The written objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (iv) a statement of all specific grounds for the objection, as well as any documents supporting the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of all attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last five (5) years; (viii) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last five (5) years; and (ix) the signature of the Settlement Class Member objecting to the settlement (an attorney's signature is not sufficient). The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement. Any objecting Business Class Member must appear in-person in Oregon Federal District Court in front of Judge Armistead to adjudicate its objection. In the event any objection by a Business Class Member is not fully accepted by the Court, said Objector shall be responsible for all attorney fees and costs incurred by Kaye-Smith and Class Counsel related to said objection.

87. **Effect of Opt-Out**. For any Business Settlement Class Member who elects to Opt-Out of the Settlement, said Class Member waives any right to any portion of the Settlement Fund, and said Class Member shall not be entitled to a Release from the Consumer Class as set forth herein. All claims in law or in equity shall be available to the Consumer Class as against an Opt-Out Business Class Member.

## X.    DUTIES OF THE SETTLEMENT ADMINISTRATOR

88.    **Duties of Settlement Administrator**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

a.    Creating, administering, apportioning, and overseeing the Settlement Fund;

b.    Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

c.    Providing Notice to Settlement Class Members via U.S. mail and e-mail;

d.    Establishing and maintaining the Settlement Website;

e.    Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

f.    Responding to any mailed or emailed Settlement Class Member inquiries;

g.    Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

h.    Receiving Requests for Exclusion and objections from Settlement Class Members and providing Class Counsel and Kaye-Smith's Counsel a copy thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and to Kaye-Smith's Counsel;

i.    Working with the provider of Credit Monitoring Services and Minor Monitoring Services to receive and send activation codes within thirty (30) days of the Effective Date;

j.    After the Effective Date, processing and transmitting Settlement Payments to Settlement Cass Members;

k.    Providing weekly or other periodic reports to Class Counsel and Kaye-Smith's Counsel that include information regarding the number of Settlement Checks mailed and delivered, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments. The Settlement Administrator shall also, as requested by Class Counsel or Kaye-Smith's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

l.  In advance of the Final Approval Hearing, preparing a sworn declaration to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; and

m.  Performing any function related to Settlement administration at the agreed-upon instruction of Class Counsel or Kaye-Smith's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

89.    **Limitation of Liability**. The Parties, Class Counsel, and Defense Counsel shall not have any liability whatsoever with respect to: (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

90.    **Indemnification**. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defense Counsel for: (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

## XI.    PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION

91.    **Certification of the Settlement Class**. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date.

92.    **Preliminary Approval**. Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval of the settlement within ten (10) days.

93.    **Final Approval**. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing; within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline.

94.    **Jurisdiction**. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by the Parties. The Court shall retain jurisdiction with

respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

## XII.    MODIFICATION AND TERMINATION

95.    **Modification**. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

96.    **Decertification of the Settlement Class if Settlement Not Approved**. If: (1) the Court does not issue the Preliminary Approval Order or Final Approval Order and Judgment; or (2) the Effective Date does not occur, the certification of the Settlement Class shall be void. Kaye-Smith reserves the right to contest class certification for all other purposes and its lack of opposition to certification of a settlement class is limited to the purposes of this Agreement. Any orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion. In addition, the fact that Kaye-Smith did not oppose certification of a class under the Settlement shall not be used or cited thereafter by any person or entity, including in a contested proceeding relating to class certification.

97.    **Termination**. Settlement Class Representatives and Kaye-Smith shall have the right to terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") within seven (7) days of: (1) the Court's refusal to issue the Preliminary Approval Order; or (2) within fourteen (14) days of any of the following: (i) the Court's refusal to enter the Final Approval Order and Judgment, or (ii) the date upon which the Final Approval Order and Judgment is modified or reversed in any material respect by any appellate or other court. The Court's reduction of the Fee Award of Costs, as requested by Plaintiffs and their counsel shall not be grounds for termination of this Agreement.

98.    **Effect of Termination**. In the event of a termination as provided in Paragraphs 82, 83, 85 or 97, this Agreement and the Settlement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Litigation as if the Parties had not entered into this Agreement or the Settlement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIII.  **RELEASES**

99.    **The Release**. Upon the Effective Date, and in consideration of the Settlement benefits described herein, the Settlement Class Representative and Participating Business and Consumer Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Kaye-Smith, its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, vendees, including but not limited to BECU, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing. This release expressly includes Kaye-Smith's insurer from all obligations under any part of the insurance policy applicable to the Released Claims, and from any and all claims arising out of the investigation, handling, adjusting, defense or settlement of the claim including, without limitation, any claims for breach of contract, in tort, violation of the covenant of good faith and fair dealing.

100.    **Unknown Claims**. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Litigation and that any of the Settlement Class Representatives or Participating Business or Consumer Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns does not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release Kaye-Smith and their present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, each of the Settlement Class Representatives and Participating Business and Consumer Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns s shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States. The Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

101.    **Release of Class Representative and Class Counsel**. Upon the Effective Date, Kaye-Smith and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys shall be deemed to have released, acquitted, and forever discharged the Settlement Class Representatives and Class Counsel from any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including,

but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses), whether known or unknown, that arise out of, are based upon, or relate to prosecution of the Litigation, the Settlement Agreement, or the Settlement claims process (provided, however, that this release and discharge shall not include claims relating to the enforcement of the terms of the Settlement or this Agreement).

102.    **Bar to Future Suits**. Upon entry of the Final Approval Order and Judgment, the Settlement Class Representative and other Business and Consumer Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order and Judgment. Likewise, Kaye-Smith and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against Settlement Class Representatives and Class Counsel or based on any actions taken by Settlement Class Representatives and Class Counsel that are authorized or required by this Agreement or by the Final Approval Order and Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

103.    **Satisfaction of Judgment**. Once all obligations in this Settlement Agreement have been satisfied, the Parties agree to file a satisfaction of judgment with the Court.

## XIV.   SERVICE AWARD PAYMENTS

104.    **Service Award Payments**. No earlier than thirty (30) days after the entry of the Preliminary Approval Order, Class Counsel will file a Fee Application that will include a request for Service Award Payment for the Settlement Class Representatives not to exceed $5,000.00 in recognition for their contributions to this Litigation. The Settlement Administrator shall make the Service Award Payments to the Settlement Class Representatives from the Settlement Fund. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than thirty (30) days after the Effective Date

105.    No Effect on Agreement. In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## XV.   ATTORNEYS' FEES, COSTS, EXPENSES

106.    **Attorneys' Fees and Costs and Expenses**. Prior to the Final Fairness Hearing, and No earlier than thirty (30) days after the entry of the Preliminary Approval Order, Class Counsel will file a properly documented Fee Application for an award of attorneys' fees and Litigation

Costs and Expenses not to exceed twenty-five percent (25%) of the Settlement Fund to be paid from the Settlement Fund, along with reimbursement of litigation costs and expenses. Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to Kaye-Smith and the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than three (3) days after the Effective Date.

107.    **Allocation**. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiffs. Kaye-Smith shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

## XVI.  NO ADMISSION OF LIABILITY

108.    **No Admission of Liability**. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

109.    **No Use of Agreement**. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by Kaye-Smith in the Litigation or in any proceeding in any court, administrative agency or other tribunal.

## XVII.  MISCELLANEOUS

110.    **Integration of** Exhibits. The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement

111.    **Entire Agreement**. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

112.    **Deadlines**. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

113.    **Construction**. For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

114.    **Cooperation of Parties**. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

115.    **Obligation to Meet and Confer**. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other in good faith prior to seeking Court intervention.

116.    **Governing Law**. The Agreement shall be construed in accordance with, and be governed by, the laws of the state of Oregon, without regard to the principles thereof regarding choice of law.

117.    **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted electronically through e-mail of an Adobe PDF shall be deemed an original.

118.    **Notices**. All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

John Heenan
**HEENAN & COOK**
1631 Zimmerman Trail
Billings, Montana 59102
john@lawmontana.com

Notices to Kaye-Smith provided for herein shall be sent by overnight mail and email to:

Christopher Seusing
Tim Shea
Wood Smith Henning & Berman, LLP
801 Kirkland Avenue, Suite 100
Kirkland, WA 98033
cseusing@wshblaw.com
tshea@wshblaw.com

The notice recipients and addresses designated above may be changed by written notice.

119.   **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

By: _____          Date: _____

Printed Name: Alex Smith
On behalf of Kaye-Smith
Its: CEO

By: _____          Date: _____

*Counsel for Defendant*

By: _____          Date: _____
John Heenan
HEENAN & COOK

By: _____          Date: _____
Ari Brown
RHODES LEGAL GROUP

By: _____          Date: _____
Justin Baxter
BAXTER & BAXTER

*Counsel for Plaintiffs and the Settlement Class*

# Exhibit B

**This Notice Was Authorized by the United States District Court for the District of Oregon.
This is not a solicitation from a lawyer.**

**Notice of Proposed Class Action Settlement and Fairness Hearing**

*Smith v. Kaye-Smith Enterprises, Inc.*
**United States District Court for the District of Oregon
Case No. 3:22-cv-01499-AR**

**Claim ID Number _____**

**If your business suffered business losses when Kaye-Smith Enterprises, Inc. ("Kaye-Smith")
was subjected to a data breach in June 2022 (the "Data Incident"), a proposed class action
settlement may affect your rights.**

A settlement has been reached in a class action lawsuit against Kaye-Smith. The lawsuit, *Smith v.
Kaye-Smith Enterprises, Inc.*, Case No. 3:22-cv-01499, filed in the United States District Court for
the District of Oregon, involves allegations that Kaye-Smith Enterprises, Inc. failed to protect
sensitive personal information it received from Business Associates and failed to timely notify those
Business Associates' customers or patients after learning their information was exposed. Kaye-Smith
denies these allegations.

**Why am I being contacted?** Records indicate that you were a Business Associate of Kaye-Smith at
the time of the Data Incident and may have suffered business losses as a result. Accordingly, you may
be eligible to receive a cash payment from the settlement.

**What does the settlement provide?** The proposed settlement provides for a fund totaling $2,000,000,
which will be used to provide settlement awards to Settlement Class Members. Business Settlement
Class Members will be eligible for reimbursement for business losses fairly traceable to the Data
Incident. The actual amount of the reimbursement under the settlement will depend on the amounts
remaining in the Settlement Fund after paying (1) notice and settlement administration costs; (2) court-
approved attorneys' fees of approximately $500,000.00, costs not to exceed $30,000, and service
awards of up to $7,500 to the Named Plaintiff, and (3) the amount of Business Losses claimed by
Business Class Settlmeent Members. You can learn more about the settlement and your options by
visiting www._____.com.

**Your rights and options: Submit a Claim Form**. To receive a settlement award, you must submit a
Claim Form to the Settlement Administrator. The Claim Form is available on the Settlement Website
at www._____.com, or upon request to the Settlement Administrator, and can be submitted
electronically on the Settlement Website or by mail. **Opt out.** You may exclude yourself from the
Settlement and keep your right to sue Defendant on your own by sending a written request for
exclusion to the Settlement Administrator postmarked by **DATE**. The request must include: 1) The
name and address of the purported Business Class Member, and identify the individual within the
Business Class Member with authority to bind the Business Class Member to a settlement and/or the
authority to withdraw from Settlement Class; 2) Identify all Business Losses and provide copies of all
documents evidencing all losses for which the Business Class Member seeks reimbursement; 3) A
statement of whether, prior to the Opt-Out date, the purported Business Class Member ever asserted

**Ex. B**

a claim to Kaye-Smith, provided notice of a claim and/or was compensated for any claim it may have had against Kaye-Smith arising from the Data Security Incident, and if so identify when such claim(s) were made, how and to whom the claim(s) where communicated and provide copies of all documents evidencing the same; 4) The specific legal and equitable basis for any claims intended to be brought against Kaye-Smith, and the amount of any such claim; 5) Specific efforts taken, with supporting documents, by the Business Class Member to mitigate Business Losses; and 6) Detailed explanation, with supporting documents, for the reason for Opt-Out. If you do not exclude yourself, you will be bound by the settlement and give up your right to sue Defendants regarding the settled claims. Visit the Settlement Website for more details. **Object**. If you do not opt out, you have the right to object to the proposed settlement. Objections must be filed with the court, postmarked by **DATE** and provide the reasons for the objection, among other requirements. Visit the Settlement Website for more details. **Do Nothing.** If you do nothing, you will not receive any payment and will lose the right to sue Defendants about the Released Claims. You will be considered part of the Settlement Class, and you will be bound by the Court's decisions. **Attend the final approval hearing**. The Court is scheduled to hold a hearing on **DATE** at **TIME** to consider whether to approve the settlement, Class Counsel's request for attorneys' fees and costs, and the service awards to the class representatives. You can appear at the hearing, which will be held at the United States District Court for the District of Oregon, 1000 SW 3rd Ave #740, Portland, OR 97204 but you do not have to appear. If you wish, you can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

*For more information, visit* www._____.com *or call 1-800-###-####.* **PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS**

**Claim ID Number: _____**

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

*Smith v. Kaye-Smith Enterprises, Inc.*
United States District Court for the District of Oregon
Case No. 3:22-cv-01499-AR

# If your business suffered ~~business~~ financial losses due to ~~when~~ a data breach to Kaye-Smith Enterprises, Inc. ("Kaye-Smith") ~~was subjected to a data breach~~ in June 2022 (the "Data Incident"), a proposed class action settlement may affect your rights~~.~~

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against Kaye-Smith. The lawsuit involves allegations that Kaye-Smith Enterprises, Inc. failed to protect sensitive personal information it received from Business Associates and failed to timely notify individuals after learning their information was exposed. Kaye-Smith denies these allegations.

- The parties have agreed to a proposed settlement on behalf of those persons ~~whose personal information may have been exposed in~~directly affected by the Data Incident.

- Kaye-Smith has agreed to pay no less than $2,000,000 into a fund that will be used to pay settlement awards to eligible persons and businesses who file claims, settlement administration expenses, any court-awarded service awards, and court-awarded attorneys' fees and costs.

- Court-appointed lawyers for the Settlement Class ("Class Counsel") will ask the Court for a payment of 25% of the fund (approximately $500,000) from the fund as attorneys' fees, which is equal to one-fourth of the settlement fund. In addition, Class Counsel will ask the Court to reimburse them for out-of-pocket expenses they incurred in this case, which currently amount to approximately $30,000. Class Counsel will also request service awards of $7,500 to each of the class representatives.

- Your legal rights are affected whether you act, or don't act. Read this Notice carefully.

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

| Your Legal Rights And Options In This Settlement: | |
|---|---|
| **Submit A Claim Form By DATE** | This is the only way to receive a payment. |
| **Exclude Yourself By DATE** | You will receive no benefits from the Settlement if you exclude yourself. You keep any rights to sue Kaye-Smith or its Business Associates separately about the same or similar legal claims. |
| **Object By DATE** | You may file a written objection with the Court if you disagree with any portion of the Settlement. If you exclude yourself from the Settlement, the Court will not consider an objection from you. |
| **Attend a Hearing on DATE** | You may ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Get no payment. Give up your rights. |

# Basic Information

| **1.    Why did I receive this notice?** |
|---|

Kaye-Smith's records show that you were a Business Associate of Kaye-Smith at the time of the Data Incident and may have suffered business losses as a result. Accordingly, you may be eligible to receive a cash payment from the settlement. The purpose of this Notice is to let you know that the parties have reached a proposed settlement in the class action lawsuit entitled *Smith v. Kaye-Smith Enterprises, Inc.*, Case No. 3:22-cv-01499-AR, pending in the United States District Court for the District of Oregon. You have legal rights and options that you may act on before the Court decides whether to approve the proposed settlement. Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. This Notice summarizes the settlement and your rights under it.

| **2.    What is this lawsuit about?** |
|---|

The Named Plaintiffs alleges that Kaye-Smith violated the Washington Consumer Protection Act, and state common law by failing to protect sensitive personal information Kaye-Smith received from customers or patients of its Business Associates or by failing to timely notify affected patients individuals after learning their data was compromised in the Data Incident.

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

| **3.    What is a class action and who is involved?** |
|---|

In a class action lawsuit, one or more people called plaintiffs or "class representatives" sue on behalf of other people who have similar claims. The people together are a "class" or "class members." The party they sue (in this case Kaye-Smith Enterprises, Inc.) is called the defendant. If the lawsuit proceeds as a class action, it resolves the issues for everyone in the class—except for those people who choose to exclude themselves from the class.

# THE SETTLEMENT

| **4.    Why is there a settlement?** |
|---|

The Court did not decide in favor of the Plaintiff or Kaye-Smith. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The class representatives and their attorneys think the settlement is best for the Settlement Class.

| **5.    How do I know if I am a part of the Settlement?** |
|---|

You are in the "Business Settlement Class" if (1) you had a business relationship with Kaye-Smith, including Kaye-Smith's clients, and whether such relationship was by contract or not, (2) your business was financially affected by the Data Security Incident, and (3) you have not resolved your claims against Kaye-Smith prior to October 19, 2023.

The Settlement Class does not include any persons who validly request exclusion from the Settlement Class, as described under Question 11. A person who does not exclude themselves is a "Settlement Class Member."

If you have questions about whether you are a part of the Settlement Class you may call 1-800-###-#### or visit www._____.com for more information.

# THE SETTLEMENT BENEFITS

| **6.    What does the Settlement Agreement provide?** |
|---|

Kaye-Smith has agreed to pay no less than $2,000,000 to pay Settlement Class Members who submit valid claims, any court-approved attorneys' fees, litigation expenses, service awards, and notice and settlement administration expenses. You will not receive any settlement payment unless you submit a Claim Form as described in Question 8.

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

Business Settlement Class Members may submit a claim for reimbursement for business losses fairly traceable to the Data Breach incident. The actual amount of the reimbursement under the settlement will depend on the amounts remaining in the Settlement Fund after paying (1) notice and settlement administration costs; (2) court-approved attorneys' fees of approximately $500,000.00, costs not to exceed $30,000, and service awards of up to $7,500 to the Named Plaintiff, and (3) the amount of Business Losses claimed by Business Class Settlmeent Members.

| 7.    What are the tax implications of accepting a settlement payment? |
|---|

The tax implications may vary based on your income, the amount you receive and other factors, so you should consult a tax professional to assess the specific tax implications of any payment you may receive. Class Counsel, , and the settlement administrator cannot advise you with respect to your tax obligations.

# HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

| 8.    How do I make a claim? |
|---|

To qualify for a settlement payment, you must submit a Claim Form by DATE. You may submit a Claim Form online by going to the Settlement Website at www._____.com and following the instructions. You may also download a paper Claim Form on the Settlement Website or call the settlement administrator at 1-800-###-#### to request a paper Claim Form, and submit the Claim Form by mail. Claim Forms sent by mail must be postmarked by DATE and mailed to:

SETTLEMENT ADMINISTRATOR
ADDRESS
ADDRESS

If you have questions about the claim submission process you may call the settlement administrator at 1-800-###-#### or visit www._____.com for more information

| 9.    When will I get my payment? |
|---|

The Court will hold a hearing on DATE to decide whether to approve the settlement, as described in Question 19. If no appeals are timely filed after the Court enters the Final Approval Order, then the Order and settlement will become final. Settlement payments will be sent to Settlement Class Members who submitted valid claims approximately 30 days from the Settlement's Effective Date (roughly 65 days after the Settlement is approved). The checks will only be valid for 120 days from the date of issuance, after which you will not be able to cash or deposit them. However, if an appeal is filed, payments will not be sent until after the appeal is finally resolved, which could take more than one year.

| 10.    What am I giving up to stay in the Settlement Class? |
|---|

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

Unless you request to exclude yourself, you are staying in the Settlement Class and you will be a Settlement Class Member. If the Court approves the settlement and becomes final, you and other Settlement Class Members can't sue, continue to sue, or be part of any other lawsuit against the "Released Parties" regarding the Data Incident.

The Settlement Agreement (available at www._____.com) describes the claims you are releasing and against whom you are releasing claims, so read it carefully. To summarize, the release includes claims against Kaye-Smith or the Business Associates through which Kaye-Smith obtained the compromised data (the "Released Parties") that arise out of or relate to the Data Incident.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to receive the benefits of this settlement or if you want to keep the right to sue or continue to sue Kaye-Smith or its Business Associates regarding the Data Incident, then you must take steps to remove yourself from the Settlement Class. This is called excluding yourself – or is sometimes referred to as "opting out" of the Settlement Class.

| **11.    How do I exclude myself from the settlement?** |
| --- |

To "opt out" or exclude yourself from the settlement you must send the request in writing to the settlement administrator using the opt-out form available on the Settlement Website (www._____.com) or from the settlement administrator upon request. The request must include: 1) The name and address of the purported Business Class Member, and identify the individual within the Business Class Member with authority to bind the Business Class Member to a settlement and/or the authority to withdraw from Settlement Class; 2) Identify all Business Losses and provide copies of all documents evidencing all losses for which the Business Class Member seeks reimbursement; 3) A statement of whether, prior to the Opt-Out date, the purported Business Class Member ever asserted a claim to Kaye-Smith, provided notice of a claim and/or was compensated for any claim it may have had against Kaye-Smith arising from the Data Security Incident, and if so identify when such claim(s) were made, how and to whom the claim(s) where communicated and provide copies of all documents evidencing the same; 4) The specific legal and equitable basis for any claims intended to be brought against Kaye-Smith, and the amount of any such claim; 5) Specific efforts taken, with supporting documents, by the Business Class Member to mitigate Business Losses; and 6) Detailed explanation, with supporting documents, for the reason for Opt-Out. You can mail your exclusion request, which must be postmarked no later than DATE, to the following address:

SETTLEMENT ADMINISTRATOR
ADDRESS
ADDRESS

Requests for exclusion mailed after DATE will not be effective and will not result in your being excluded from the Settlement Class.

    1.    If you ask to be excluded, you will not get any payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. In the event you exclude yourself from the Settlement and have validated Business Losses exceeding $250,000, your exclusion could cause this settlement to terminate. In such case, you will need to submit a verified

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

affidavit to the Court by an employee or officer, along with evidentiary proof, explaining how termination of the Settlement is in the best interests of the Settlement Class and how termination of the Agreement does not violate duties, including fiduciary duties, your company owes to its members or customers who are included in the Consumer Settlement Class. The person signing the affidavit, as well as your company's counsel, must appear in-person in Oregon Federal District Court for a hearing to explain how termination of the Agreement is in the best interests of the Settlement Class and how such opt out does not violate your duties to your patients or customers. In the event your request for exclusion is not fully accepted by the Court, you will be responsible for attorney fees and costs incurred by Kaye-Smith and by Class Counsel resulting from your exclusion request.

| 12. | Why would I ask to be excluded? |
|---|---|

If you already have, or want to bring, your own lawsuit against the Released Parties regarding the Data Incident and want to continue with the lawsuit, you need to ask to be excluded from the Settlement Class. If you exclude yourself from the Settlement Class you won't get any money from the Settlement. However, you may be able to sue or continue to sue the Released Parties regarding the Data Incident on your own. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

| 13. | If I exclude myself, can I get anything from this settlement? |
|---|---|

No. You will not receive any payment from the settlement if you exclude yourself.

# THE LAWYERS REPRESENTING YOU

| 14. | Do I have a lawyer in this lawsuit? |
|---|---|

The Court decided that the law firms of Heenan & Cook, Rhodes Legal Group, PLLC and Baxter & Baxter, LLP are qualified to represent you and all Settlement Class Members. These law firms are referred to as "Class Counsel." You will not receive a bill from these lawyers, who have asked the Court to be paid a percentage of the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense. The names and addresses of Class Counsel are:

Ari Brown
RHODES LEGAL GROUP, PLLC
918 South Horton Street, Suite 901
Seattle, Washington 98134

John Heenan
Heenan & Cook, PLLC
1631 Zimmerman Trail, Suite 1
Billings, Montana 59102

Justin Baxter
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

| **15.    Should I get my own lawyer?** |
| --- |

You do not need to hire your own lawyer because Class Counsel are working on your behalf. But, if you want to hire your own lawyer, you will have to pay that lawyer. For example, you can ask a lawyer to appear in Court for you if you want someone other than Class Counsel to speak for you.

| **16.    How will the lawyers be paid?** |
| --- |

Class Counsel will ask the Court to approve payment of attorneys' fees in the amount of one-quarter of the $2,000,000 Settlement Fund (which may be increased due to unspent litigation or administration costs) plus litigation costs of approximately $30,000. This payment compensates Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also request $7,500 service awards for the named plaintiff, Richard Smith, to compensate for time and effort time and effort during the litigation. Class Counsel's complete request for fees, costs, and the service award to the Class Representative will be posted on the settlement website, www._____.com. The Court may award less than these amounts.

## OBJECTING TO THE SETTLEMENT

| **17.    How do I object to the settlement?** |
| --- |

If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue.

Any objection to the proposed settlement must be in writing and include your name, address, telephone number, the name of the case, and the reason(s) for your objection, and meet the criteria described in the Settlement Agreement, which is posted on the settlement website, www._____.com. You must mail a copy of the objection to the following addresses postmarked no later than DATE and file it with the Court:

| **SETTLEMENT ADMINISTRATOR** | **CLASS COUNSEL** | **DEFENSE COUNSEL** |
| --- | --- | --- |
| SETTLEMENT ADMINISTRATOR ADDRESS ADDRESS | John Heenan<br>Heenan & Cook, PLLC<br>1631 Zimmerman Trail, Suite 1<br>Billings, Montana 59102 | Christopher Seusing<br>Tim Shea<br>Wood Smith Henning & Berman, LLP<br>801 Kirkland Avenue, Suite 100<br>Kirkland, WA 98033 |

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

| **18.    What is the difference between objecting and excluding myself from the settlement?** |
| --- |

Objecting simply means telling the Court that you don't like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself from the Settlement Class is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

| **19.    When and where will the Court hold a hearing on the fairness of the settlement?** |
| --- |

The Court will hold the Final Approval Hearing on DATE at TIME, before the Honorable Jeffrey Armistead of the United States District Court for the District of Oregon, 1000 SW 3rd Ave #740, Portland, OR 97204. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the service awards to the Named Plaintiffs. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

The date and time of the Final Approval Hearing are subject to change by Court Order. Any changes will be posted at the settlement website, www._____.com. You can also monitor case activity and for changes to the dates and time of the fairness hearing by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://www.ord.uscourts.gov/, or by visiting the office of the Clerk of the Court for the United States District Court for the District of Oregon, 1000 SW 3rd Ave #740, Portland, OR 97204, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

| **20.    Do I have to come the hearing?** |
| --- |

No. Class Counsel will answer any questions the Court may have. You are welcome to come to the hearing at your own expense. If you send an objection you don't have to come to Court to talk about it, as long as your written objection was filed or mailed on time, and meets the other criteria described in the Settlement Agreement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

| **21.    May I speak at the hearing?** |
| --- |

If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement Agreement. If you submit an objection (see Question 18 above) and intend to appear at the hearing, you must state your intention

**EXHIBIT 2A - LONG FORM NOTICE – BUSINESS CLASS**

to do so in your objection. You cannot speak at the hearing if you exclude yourself or if you fail to state your intention to do so in your objection.

# IF YOU DO NOTHING

| 22.    What happens if I do nothing at all? |
|---|

If you do nothing, you will be a member of the Settlement Class and you will not receive payment from the settlement. You will also be bound by the terms of the settlement, including the Release described in Question 10, above.

# GETTING MORE INFORMATION

| 23.    Are there more details about the settlement? |
|---|

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You may review and download or print a copy of the Settlement Agreement via the settlement website at www._____.com. You can also get a copy of the Settlement Agreement by writing to SETTLEMENT ADMINISTRATOR at ADDRESS.

| 24.    How do I get more information? |
|---|

You can call 1-888-######## toll free; write to SETTLEMENT ADMINISTRATOR at ADDRESS; or visit the settlement website at www._____.com where you will find answers to common questions about the settlement, the Settlement Agreement, Plaintiff's Complaint, Class Counsel's motion for an award of attorneys' fees and costs, and other information.

## PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR KAYE-SMITH WITH QUESTIONS ABOUT THE SETTLEMENT.

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

*Smith v. Kaye-Smith Enterprises, Inc.*
United States District Court for the District of Oregon
Case No. 3:22-cv-01499-AR

# If you received a Notice of Data Incident from Kaye-Smith Enterprises, Inc. or if you believe you were affected when Kaye-Smith Enterprises, Inc. ("Kaye-Smith") was subjected to a data breach in June 2022 (the "Data Incident"), a proposed class action settlement may affect your rights.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against Kaye-Smith. The lawsuit involves allegations that involves allegations that Kaye-Smith Enterprises, Inc. failed to protect sensitive personal information it received from Business Associates and failed to timely notify patients after learning their information was exposed. Kaye-Smith denies these allegations.

- The parties have agreed to a proposed settlement on behalf of those persons whose personal information may have been exposed in the Data Incident.

- Kaye-Smith has agreed to pay no less than $2,000,000 into a fund that will be used to pay settlement awards to eligible persons who file claims, settlement administration expenses, any court-awarded service awards, and court-awarded attorneys' fees and costs.

- Court-appointed lawyers for the Settlement Class ("Class Counsel") will ask the Court for a payment of 25% of the fund (approximately $500,000) from the fund as attorneys' fees, which is equal to one-fourth of the settlement fund. In addition, Class Counsel will ask the Court to reimburse them for out-of-pocket expenses they incurred in this case, which currently amount to approximately $30,000**.** Class Counsel will also request service awards of $7,500 to each of the class representatives.

- Your legal rights are affected whether you act, or don't act. Read this Notice carefully.

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM BY DATE** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF BY DATE** | You will receive no benefits from the Settlement if you exclude yourself. You keep any rights to sue Kaye-Smith or its Business Associates separately about the same or similar legal claims. |
| **OBJECT BY DATE** | You may file a written objection with the Court if you disagree with any portion of the Settlement. If you exclude yourself from the Settlement, the Court will not consider an objection from you. |
| **ATTEND A HEARING ON DATE** | You may ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up your rights. |

# BASIC INFORMATION

## 1.    Why did I receive this notice?

Kaye-Smith's records show that  your sensitive personal information may have been compromised when Kaye-Smith was subjected to a cybersecurity hack in June 2022 (the "Data Incident"). You may have received a Notice of Data Incident from Kaye-Smith or one of its Business Associates.The purpose of this Notice is to let you know that the parties have reached a proposed settlement in the class action lawsuit entitled *Smith v. Kaye-Smith Enterprises, Inc*., Case No. 3:22-cv-01499-AR, pending in the United States District Court for the District of Oregon. You have legal rights and options that you may act on before the Court decides whether to approve the proposed settlement. Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. This Notice summarizes the settlement and your rights under it.

## 2.    What is this lawsuit about?

The Named Plaintiffs allege that Kaye-Smith violated the Washington Consumer Protection Act, and state common law by failing to protect sensitive personal information Kaye-Smith received from Business Associates or by failing to timely notify affected patients after learning their data was compromised in the Data Incident.

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

| 3. | What is a class action and who is involved? |
|----|---------------------------------------------|

In a class action lawsuit, one or more people called plaintiffs or "class representatives" sue on behalf of other people who have similar claims. The people together are a "class" or "class members." The party they sue (in this case Kaye-Smith Enterprises, Inc.) is called the defendant. If the lawsuit proceeds as a class action, it resolves the issues for everyone in the class—except for those people who choose to exclude themselves from the class.

# THE SETTLEMENT

| 4. | Why is there a settlement? |
|----|----------------------------|

The Court did not decide in favor of the Plaintiff or Kaye-Smith. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The class representatives and their attorneys think the settlement is best for the Settlement Class.

| 5. | How do I know if I am a part of the Settlement? |
|----|-------------------------------------------------|

You are in the "Settlement Class" if your personal information was included in the Data Incident.

The Settlement Class does not include any persons who validly request exclusion from the Settlement Class, as described under Question 11. A person who does not exclude themselves is a "Settlement Class Member."

If you have questions about whether you are a part of the Settlement Class you may call 1-800-###-#### or visit www._____.com for more information.

# THE SETTLEMENT BENEFITS

| 6. | What does the Settlement Agreement provide? |
|----|---------------------------------------------|

Kaye-Smith has agreed to pay no less than $2,000,000 to pay Settlement Class Members who submit valid claims, any court-approved attorneys' fees, litigation expenses, service awards, and notice and settlement administration expenses. You will not receive any settlement payment unless you submit a Claim Form as described in Question 8.

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

Settlement Class Members may submit a claim for one of two payment options, are eligible for fraud monitoring without the need to file a claim. Kaye-Smith also agreed to change their business and cybersecurity practices.

## Tier 1 Claims

If you spent time on tasks related to the Data Incident or suffered Out-of-Pocket Losses due to the Data incident, you may submit a "Tier 1 Claim" for reimbursement of up to five hours of lost time at $25 per hour and your documented out-of-pocket expenses, up to a total of $2,500. Claims for out-of-pocket losses (other than lost time reimbursement) must include supporting documentation sufficient to verify the loss. Supporting documentation may include, for example, receipts, credit card statements, bank statements, invoices, or any other documentation tending to establish out of pocket loss that is fairly traceable to the Data Incident. You may mark out or redact any transactions that are not relevant to your claim before sending in the documentation.

Out-of-Pocket Losses may include any out-of-pocket expenses incurred as a result of the Data Incident, such as the following: (a) unreimbursed losses relating to fraud, medical or identity theft, (b) professional fees, including attorneys' fees, accountants' fees, and fees for credit repair services, (c) costs associated with freezing or unfreezing credit with any credit reporting agency, (d) credit monitoring costs, and (e)miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

Lost time may include time spent on tasks such as (a) changing passwords on potentially impacted accounts; (b) monitoring for or investigating suspicious activity on potentially impacted medical, financial, or other accounts; (c) contacting a medical provider or financial institution to discuss suspicious activity; (d) signing up for identity theft or fraud monitoring services; or (e) researching information about the Data Incident, its impact, or how to protect yourself from harm due to the Data Incident.

The above lists of reimbursable lost time and documented out-of-pocket losses are not meant to be exhaustive and are provided only as examples. You may make claims for any lost time and out of pocket expenses that you believe are reasonably related to the Data Incident or to mitigating the effects of the Data Incident.

## Tier 2 Claims

In the alternative, if you took any action at all in response to the Data Incident, even if *de minimis*, you may submit a "Tier 2 Claim" for an alternative cash payment of up to $500. The actual amount of the alternative cash payment will depend on the amounts remaining in the Settlement Fund after all Tier 1 Claims have been paid.

## Tier 3 Benefits – Fraud Monitoring

Settlement Class Members are also eligible to access 12 months of credit monitoring services provided by CyEx. If the Settlement is approved and becomes final, the settlement administrator will send an activation code to each Settlement Class Member that can be redeemed on CyEx's website.

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

| 7. | What are the tax implications of accepting a settlement payment? |
|---|---|

The tax implications may vary based on your income, the amount you receive and other factors, so you should consult a tax professional to assess the specific tax implications of any payment you may receive. Class Counsel, , and the settlement administrator cannot advise you with respect to your tax obligations.

# HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

| 8. | How do I make a claim? |
|---|---|

To qualify for a settlement payment, you must submit a Claim Form by DATE. You may submit a Claim Form online by going to the Settlement Website at www._____.com and following the instructions. You may also download a paper Claim Form on the Settlement Website or call the settlement administrator at 1-800-###-#### to request a paper Claim Form, and submit the Claim Form by mail. Claim Forms sent by mail must be postmarked by DATE and mailed to:

SETTLEMENT ADMINISTRATOR
ADDRESS
ADDRESS

If you have questions about the claim submission process you may call the settlement administrator at 1-800-###-#### or visit www._____.com for more information

| 9. | When will I get my payment? |
|---|---|

The Court will hold a hearing on DATE to decide whether to approve the settlement, as described in Question 19. If no appeals are timely filed after the Court enters the Final Approval Order, then the Order and settlement will become final. Settlement payments will be sent to Settlement Class Members who submitted valid claims approximately 30 days from the Settlement's Effective Date (roughly 65 days after the Settlement is approved). The checks will only be valid for 120 days from the date of issuance, after which you will not be able to cash or deposit them. However, if an appeal is filed, payments will not be sent until after the appeal is finally resolved, which could take more than one year.

| 10. | What am I giving up to stay in the Settlement Class? |
|---|---|

Unless you request to exclude yourself, you are staying in the Settlement Class and you will be a Settlement Class Member. If the Court approves the settlement and becomes final, you and other Settlement Class Members can't sue, continue to sue, or be part of any other lawsuit against the "Released Parties" regarding the Data Incident.

The Settlement Agreement (available at www._____.com) describes the claims you are releasing and against whom you are releasing claims, so read it carefully. To summarize, the release

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

includes claims against Kaye-Smith or the Business Associates through which Kaye-Smith obtained the compromised data (the "Released Parties") that arise out of or relate to the Data Incident.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to receive the benefits of this settlement or if you want to keep the right to sue or continue to sue Kaye-Smith or its Business Associates regarding the Data Incident, then you must take steps to remove yourself from the Settlement Class. This is called excluding yourself – or is sometimes referred to as "opting out" of the Settlement Class.

| **11.    How do I exclude myself from the settlement?** |
|---|

To "opt out" or exclude yourself from the settlement you must send the request in writing to the settlement administrator using the opt-out form available on the Settlement Website (www._____.com) or from the settlement administrator upon request. You must include your name and address in the letter. You can mail your exclusion request, which must be postmarked no later than DATE, to the following address:

SETTLEMENT ADMINISTRATOR
ADDRESS
ADDRESS

Requests for exclusion mailed after DATE will not be effective and will not result in your being excluded from the Settlement Class.

If you ask to be excluded, you will not get any payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit.

| **12.    Why would I ask to be excluded?** |
|---|

If you already have, or want to bring, your own lawsuit against the Released Parties regarding the Data Incident and want to continue with the lawsuit, you need to ask to be excluded from the Settlement Class. If you exclude yourself from the Settlement Class you won't get any money from the Settlement. However, you may be able to sue or continue to sue the Released Parties regarding the Data Incident on your own. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

| **13.    If I exclude myself, can I get anything from this settlement?** |
|---|

No. You will not receive any payment from the settlement if you exclude yourself.

# THE LAWYERS REPRESENTING YOU

| **14.    Do I have a lawyer in this lawsuit?** |
|---|

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

The Court decided that the law firms of Terrell Marshall Law Group, Morgan & Morgan, McShane & Brady, Federman & Sherwood, and Heenan & Cook, are qualified to represent you and all Settlement Class Members. These law firms are referred to as "Class Counsel." You will not receive a bill from these lawyers, who have asked the Court to be paid a percentage of the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense. The names and addresses of Class Counsel are:

<table>
<tr><td>Ari Brown</td><td>John Heenan</td></tr>
<tr><td>RHODES LEGAL GROUP, PLLC</td><td>Heenan & Cook, PLLC</td></tr>
<tr><td>918 South Horton Street, Suite 901</td><td>1631 Zimmerman Trail, Suite 1</td></tr>
<tr><td>Seattle, Washington 98134</td><td>Billings, Montana 59102</td></tr>
</table>

Justin Baxter
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225

| **15.** | **Should I get my own lawyer?** |
|---|---|

You do not need to hire your own lawyer because Class Counsel are working on your behalf. But, if you want to hire your own lawyer, you will have to pay that lawyer. For example, you can ask a lawyer to appear in Court for you if you want someone other than Class Counsel to speak for you.

| **16.** | **How will the lawyers be paid?** |
|---|---|

Class Counsel will ask the Court to approve payment of attorneys' fees in the amount of one-quarter of the $2,000,000 Settlement Fund (which may be increased due to unspent litigation or administration costs) plus litigation costs of approximately $30,000. This payment compensates Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also request $7,500 service awards for the named plaintiff, Richard Smith, to compensate for time and effort and effort during the litigation. Class Counsel's complete request for fees, costs, and the service award to the Class Representative will be posted on the settlement website, www._____.com. The Court may award less than these amounts.

## OBJECTING TO THE SETTLEMENT

| **17.** | **How do I object to the settlement?** |
|---|---|

If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue.

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

Any objection to the proposed settlement must be in writing and include your name, address, telephone number, the name of the case, and the reason(s) for your objection, and meet the criteria described in the Settlement Agreement. You must mail a copy of the objection to the following addresses postmarked no later than DATE and file it with the Court:

| SETTLEMENT ADMINISTRATOR | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| SETTLEMENT ADMINISTRATOR ADDRESS ADDRESS | John Heenan Heenan & Cook, PLLC 1631 Zimmerman Trail, Suite 1 Billings, Montana 59102 | Christopher Seusing Tim Shea Wood Smith Henning & Berman, LLP 801 Kirkland Avenue, Suite 100 Kirkland, WA 98033 |

---

**18.    What is the difference between objecting and excluding myself from the settlement?**

Objecting simply means telling the Court that you don't like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself from the Settlement Class is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

**19.    When and where will the Court hold a hearing on the fairness of the settlement?**

The Court will hold the Final Approval Hearing on DATE at TIME, before the Honorable Jeffrey Armistead of the United States District Court for the District of Oregon, 1000 SW 3rd Ave #740, Portland, OR 97204. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the service awards to the Named Plaintiffs. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

The date and time of the Final Approval Hearing are subject to change by Court Order. Any changes will be posted at the settlement website, www._____.com. You can also monitor case activity and for changes to the dates and time of the fairness hearing by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://www.ord.uscourts.gov/, or by visiting the office of the Clerk of the Court for the United States District Court for the District of Oregon, 1000 SW 3rd Ave #740, Portland, OR 97204, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

---

**20.    Do I have to come the hearing?**

**EXHIBIT 2A - LONG FORM NOTICE – CONSUMER CLASS**

No. Class Counsel will answer any questions the Court may have. You are welcome to come to the hearing at your own expense. If you send an objection you don't have to come to Court to talk about it, as long as your written objection was filed or mailed on time, and meets the other criteria described in the Settlement Agreement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

| 21. | May I speak at the hearing? |
|---|---|

If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement Agreement. If you submit an objection (see Question 18 above) and intend to appear at the hearing, you must state your intention to do so in your objection. You cannot speak at the hearing if you exclude yourself or if you fail to state your intention to do so in your objection.

# IF YOU DO NOTHING

| 22. | What happens if I do nothing at all? |
|---|---|

If you do nothing, you will be a member of the Settlement Class and you will not receive payment from the settlement. You will also be bound by the terms of the settlement, including the Release described in Question 10, above.

# GETTING MORE INFORMATION

| 23. | Are there more details about the settlement? |
|---|---|

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You may review and download or print a copy of the Settlement Agreement via the settlement website at www._____.com. You can also get a copy of the Settlement Agreement by writing to SETTLEMENT ADMINISTRATOR at ADDRESS.

| 24. | How do I get more information? |
|---|---|

You can call 1-888-######## toll free; write to SETTLEMENT ADMINISTRATOR at ADDRESS; or visit the settlement website at www._____.com where you will find answers to common questions about the settlement, the Settlement Agreement, Plaintiff's Complaint, Class Counsel's motion for an award of attorneys' fees and costs, and other information.

# PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR KAYE-SMITH WITH QUESTIONS ABOUT THE SETTLEMENT.

**This Notice Was Authorized by the United States District Court for the District of Oregon.
This is not a solicitation from a lawyer.**

**Notice of Proposed Class Action Settlement and Fairness Hearing**

**_Smith v. Kaye-Smith Enterprises, Inc._**
**United States District Court for the District of Oregon
Case No. 3:22-cv-01499-AR**

**Claim ID Number _____**

**If you received a Notice of Data Incident from Kaye-Smith or one of its Business Associates or if you believe you were affected when Kaye-Smith Enterprises, Inc. ("Kaye-Smith") was subjected to a data breach in June 2022 (the "Data Incident"), a proposed class action settlement may affect your rights.**

A settlement has been reached in a class action lawsuit against Kaye-Smith. The lawsuit, _Smith v. Kaye-Smith Enterprises, Inc._, Case No. 3:22-cv-01499, filed in the United States District Court for the District of Oregon, involves allegations that Kaye-Smith Enterprises, Inc. failed to protect sensitive personal information it received from Business Associates and failed to timely notify patients after learning their information was exposed. Kaye-Smith denies these allegations.

**Why am I being contacted?** Records indicate that Kaye-Smith or its Business Associates sent you a Notice of Data Incident and/or that your sensitive personal information may have been exposed in the Data Incident. Accordingly, you may be eligible to receive a cash payment from the settlement.

**What does the settlement provide?** The proposed settlement provides for a fund totaling $2,000,000, which will be used to provide settlement awards to Settlement Class Members. Consumer Settlement Class Members will be eligible for 12 months of credit monitoring services. If you spent time on tasks related to the Data Incident or suffered out-of-pocket losses due to the Data Incident, you may submit a "Tier 1 Claim" for reimbursement of up to five hours of lost time and your documented out-of-pocket expenses. In the alternative, if you took any action at all in response to the Data Incident, even if _de minimis_, you may submit a claim for an alternative cash payment of up to $500 ("Tier 2 Claim"). The actual amount of the alternative cash payment will depend on the amounts remaining in the Settlement Fund after paying (1) the cost of fraud monitoring; (2) reimbursements for valid "Tier 1" claims; (3) notice and settlement administration costs; and (4) court-approved attorneys' fees of approximately $500,000.00, costs not to exceed $30,000, and service awards of up to $7,500 to the Named Plaintiff. You can learn more about the settlement and your options by visiting www._____.com.

**Your rights and options: Submit a Claim Form**. To receive a settlement award, you must submit a Claim Form to the Settlement Administrator. The Claim Form is available on the Settlement Website at www._____.com, or upon request to the Settlement Administrator, and can be submitted electronically on the Settlement Website or by mail. **Opt out.** You may exclude yourself from the Settlement and keep your right to sue Defendants on your own by sending a written request for exclusion to the Settlement Administrator postmarked by **DATE**. If you do not exclude yourself, you will be bound by the settlement and give up your right to sue Defendants regarding the settled claims.

Visit the Settlement Website for more details. **Object**. If you do not opt out, you have the right to object to the proposed settlement. Objections must be filed with the court, postmarked by DATE and provide the reasons for the objection, among other requirements. Visit the Settlement Website for more details. **Do Nothing.** If you do nothing, you will not receive any payment and will lose the right to sue Defendants about the Released Claims. You will be considered part of the Settlement Class, and you will be bound by the Court's decisions. **Attend the final approval hearing**. The Court is scheduled to hold a hearing on DATE at TIME to consider whether to approve the settlement, Class Counsel's request for attorneys' fees and costs, and the service awards to the class representatives. You can appear at the hearing, which will be held at the United States District Court for the District of Oregon, 1000 SW 3rd Ave #740, Portland, OR 97204 but you do not have to appear. If you wish, you can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

*For more information, visit* www._____.com *or call* 1-800-###-####. PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS

**Claim ID Number: _____**