Justin M. Baxter, Oregon State Bar ID Number 992178
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone: (503) 297-9031
Facsimile: (503) 291-9172
justin@baxterlaw.com

Ari Brown *(Pro Hac Vice)*
RHODES LEGAL GROUP
918 South Horton St., Suite 901
Seattle, WA 98134
Telephone: (206) 412-9320
abrownesq@gmail.com

John Heenan *(Pro Hac Vice)*
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@lawmontana.com

*Attorneys for Plaintiff*

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

**RICHARD SMITH**, on behalf of himself
and all others similarly situated,

          Plaintiff,

   v.

**KAYE-SMITH ENTERPRISES, INC.,**

          Defendant.

Case No.: 3:22-CV-01499-AR

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF REVISED
CLASS ACTION SETTLEMENT AND
BRIEF IN SUPPORT

## MOTION

Plaintiff Richard Smith, through the undersigned Interim Class Counsel, moves the Court for the following rulings:

1. Preliminary approval of a proposed class action settlement, the terms of which are set forth in the Settlement Agreement attached hereto as Exhibit A, as fair, reasonable, and adequate;

2. Certification of the proposed settlement classes for settlement purposes pursuant to Rule 23(b) and (e) of the Federal Rules of Civil Procedure;

3. Approval of notice to the classes that informs the members of each class of the proposed settlement;

4. Appointment of John Heenan, Ari Brown and Justin Baxter as Class Counsel;

5. Appointment of Plaintiff Richard Smith, Noel Woodard, and Richard Krefting as Class Representatives; and

6. Setting a Final Approval Hearing and consideration of applications for Service Payments, attorneys' fees, and reimbursement of litigation costs and expenses.

A proposed order is filed contemporaneously with this Motion. Plaintiff's Motion is supported by the below Brief in Support.

## MEMORANDUM IN SUPPORT OF MOTION

### I. INTRODUCTION

On November 9, 2023, following a mediation and extensive negotiations, Plaintiff moved the Court to preliminarily approve a nationwide class settlement with named Defendant Kaye-Smith Enterprises, Inc., (hereinafter referred to as "Defendant" or "Kaye-Smith") that would resolve all class claims against Defendant and its Business Affiliates arising out of the June 2022

data breach at issue in this case. (Dkt. #73.) At the time, there were parallel proceedings advanced by different plaintiffs and different counsel regarding the same data breach incident and pending motions and ancillary issues existed accordingly. On November 9, 2023, the Court conducted a status conference will all counsel for this case and the two other parallel proceedings to discuss these issues. (Dkt. #75.) Subsequent to the November 9, 2023 status conference, counsel for all parties worked diligently to resolve all outstanding issues between them. Plaintiff is pleased to inform the Court that those issues are all now resolved, and the attached Settlement reflects those efforts.

The Settlement should be approved because it is fair, reasonable, and adequate. The Settlement would establish a non-reversionary cash fund of at least $2 million[1] to pay for valid claims by consumers and businesses affected by the data breach, notice and administration costs, and attorneys' fees and costs awarded by the Court. All Class Members may submit claims for benefits. Consumer claimants may elect to receive: (1) one year of Credit Monitoring and Insurance Services ("CMIS"); (2) a payment for reimbursement of Documented Losses of up to $2,500; or (3) a cash payment, calculated in accordance with the terms of the Settlement Agreement.

The Settlement requires Defendant's insurers to pay the remaining limits under Defendant's "defense within limits" insurance policy, which is the only significant asset that Defendant possesses. The settlement is the product of litigation that spanned over a year, included significant motions practice, and was reached after arm's-length negotiations between experienced counsel. The parties ultimately reached a settlement following comprehensive

---

[1] As explained below, the settlement fund is comprised of the remaining amount of insurance available to Kaye-Smith, less amounts to pay its own legal costs through final approval. Any amounts of that reserve that remain unused will revert to the Settlement Fund.

investigation and exchange of information, two mediations, with the second, successful

mediation conducted by Honorable Wayne Anderson (Ret.) of JAMS, and numerous hours of

conferring after the mediation to finalize the settlement details. As reflected above, the current

settlement further reflects the input of class members including BECU as well as Plaintiffs'

counsel in the *Krefting* and *Woodard* cases. The parties have conducted and will continue to

conduct confirmatory discovery.

If approved, the Settlement will resolve all against Kaye-Smith and its business affiliates

by individuals whose personal information was compromised. It will also resolve claims by

business affiliates against Kaye-Smith—a resolution that is necessary for any recovery to

individuals to be feasible given Kaye-Smith's current financial position and remaining insurance

coverage. The Settlement delivers tangible and immediate benefits that address the potential

harms of the data breach Data Breach Class Members suffered without further protracted

litigation and its attendant risks. The Settlement compares favorably to previous settlements and

delivers a fair, adequate, and reasonable resolution for the Class. Fed. R. Civ. P. 23(e)(2). The

Court should preliminarily approve the Settlement.

## II.  BACKGROUND

Kaye-Smith is a vendor that generates monthly account statements for various institutional

clients including Boeing Employees' Credit Union ("BECU"). On or before June 6, 2022, Kaye-

Smith informed BECU and other of its business associates that an unauthorized actor breached

Kaye-Smith's computer network, thereby gaining access to the personally identifiable

information ("PII") of Plaintiff and hundreds of thousands of putative class members.

Plaintiff Richard Smith initially filed a putative class action against BECU in August 2022. A second-filed action styled as *Woodard v. Boeing Employees' Credit Union*, was filed shortly after. BECU provided evidence that the data breach incident exclusively affected data stored by its vendor, Kaye-Smith and that all access had been to Kaye-Smith networks. After determining that Kaye-Smith, rather than BECU, was the at-fault party, counsel for both Plaintiff Smith and Plaintiff Woodard conferred, and both determined to voluntarily dismiss their respective pending actions against BECU without prejudice. See, Declaration of Ari Brown ("Brown Decl.") ¶¶ 4-6.

Richard Smith brought this putative class action on October 6, 2022, against Kaye-Smith relative to the June 6, 2022 data breach. Plaintiff Woodard subsequently filed a duplicative case, this time naming both BECU and Kaye-Smith in Washington state court, which BECU subsequently removed to the Western District of Washington. *Id.*

Through early exchange of discovery, Plaintiff learned that Defendant is insured under a "cannibalizing" insurance policy in which costs of defense reduce dollar for dollar from the available insurance limits. The Court appointed the undersigned as Interim Class Counsel on January 6, 2023. (Dkt. #28.) Approximately six weeks later, and with the attorney's knowledge of this Courts Order appointing Interim Class Counsel, another duplicative class action styled as *Krefting v. BECU* was filed in U.S. District Court for the Western District of Washington. Brown Decl. ¶ 7.

Following further exchanges of information, the parties conducted a mediation with Lou Peterson in March 2023. The parties invited BECU to participate in the mediation in light of presumed indemnification rights it has against Kaye-Smith arising from the Data Breach. BECU did not attend the mediation. While the parties narrowed the issues in dispute through that mediation, they were unable to reach a settlement. Two of the chief obstacles to reaching a

settlement at the time, were (1) the duplicative actions in the Western District of Washington where BECU had pending motions to dismiss some, but not all claims; and (2) the unknown amount of indemnification BECU may claim against Kaye-Smith. *Id.* ¶¶ 8-10**.**

Following the first mediation, the parties continued to litigate—the parties fully briefed a motion to dismiss and motion to bifurcate discovery, and the Court denied a motion to stay discovery. The parties engaging in substantive discovery that required numerous discovery conferences to narrow the issues and eventually a motion to compel on those that remained unresolved. *Id.* ¶12. Interim Class Counsel was also required to first ask the Court to clarify that its order appointing interim class counsel, and then had to move to intervene in each of the duplicative Washington actions to have them transferred to this Court. *Id.* ¶ 11.

With Kaye-Smith's insurance assets continuing to deplete, and the presumed amount BECU would claim against it continuing to rise, the parties agreed to conduct a second mediation with the Honorable Wayne Anderson, a retired United States District Court Judge and current JAMS mediator. On October 17, 2023, with Judge Anderson's assistance, the parties were able to reach a settlement that required Kaye-Smith's insurers to tender all the remaining insurance limits and to create a Consumer Class Fund and a Business Fund. Under this structure, both consumers affected by the data breach, and businesses who have claims against Kaye-Smith arising from the data breach will be able to recover significant portions of their losses under the limited available, and rapidly depleting proceeds. All negotiations were conducted at arm's length, in good faith, free of any collusion, and under the supervision of Judge Anderson. After comprehensive negotiations and diligent efforts, both within the two mediation sessions and continued negotiations outside mediation, the Parties finalized the terms of the Settlement they now ask the Court to preliminarily approve. *Id.* ¶¶ 13-14.

As reflected above, following settlement and Plaintiff's initial Motion for Preliminary Approval, counsel for all parties in this and the *Krefting* and *Woodard* matters negotiated further and revised the initial settlement to have buy-in from all parties. Id. ¶ 15. Plaintiff now asks the Court to preliminarily approve the settlement as it is fair, reasonable and in the best interests of the class.

## III. TERMS OF THE SETTLEMENT

### A. The Class Definitions

The "Consumer Settlement Class" consists of all individuals who had any information released, exposed, or impacted by the data security incident initially disclosed by BECU in July 2022.

The "Business Settlement Class" consists of all businesses or entities that had a business relationship with Kaye-Smith, including Kaye-Smith's clients, and whether such relationship was by contract or not, and that were affected by the Data Security Incident, excluding those who have resolved their claims against Kaye-Smith prior to October 19, 2023.

### B. The Release

In exchange for the benefits provided under the Settlement Agreement, Class Members will release any claims against Kaye-Smith and against its Business Affiliates that are related to or arising out of the June 2022 data breach.

### C. The Settlement Benefits

The Settlement provides for a non-reversionary Settlement Fund that will be used to provide participating Consumer Class members with the following benefits:

#### 1.     Credit Monitoring

Each class member who submits a claim may receive an extra year of credit monitoring, which has a retail value of $240.

**2.      Documented Loss Payment**

In addition to credit monitoring, Consumer Class Members may seek up to $2,500 of documented out of pocket losses, that may include reimbursement of up to five hours of reimbursement for attested time devoted to addressing the risks or effects of the data breach at a rate of $25 per hour. To receive a documented loss payment, a class member must submit a valid claim form with attestation of the loss supported by reasonable documentary proof.

**3.      Cash Fund Payments**

In the alternative to a documented loss payment, Participating Class Members may submit a claim to receive a cash settlement payment. The amount of the cash settlement payment will be calculated in accordance with the terms of the Settlement Agreement on a pro rata share of the net settlement fund remaining after payments based on documented losses.

**4.      Business Loss Payments**

Participating Businesses who suffered traceable business losses are entitled to reimbursement for losses associated with the data breach that have not already been paid. Such business claimants may submit claims for indemnification from Kaye-Smith with documentation as stated in the Settlement Agreement to recover a pro rata share of the Business Settlement Fund.

**5.      Settlement Value to Class Members**

The cash fund value of the Settlement is the full remaining amount of insurance proceeds that remain available to Kaye-Smith, less amounts it needs to pay legal fees through final approval of this settlement. The amount will be not less than $2,000,000. Kaye-Smith is holding $300,000 to pay legal fees through final approval. Any unused amount will be added to the Settlement Fund.

**D.    Plan of Distribution**

Subject to the Court's approval, the Settlement Administrator ("Administrator") will apply the Net Settlement Fund to make all distributions necessary for the credit monitoring claimed, Documented Loss Payments, Cash Fund Payments, and Business Loss Payments. After payment of fees and expenses, the Net Settlement Fund will be apportioned equally between the Consumer Fund used to pay Consumer Class members who submit valid claims, and the Business Fund used to pay Businesses who submit valid claims.

**E.    Notice to Class**

Pursuant to Rule 23(e), the Administrator will provide Class Members with the Summary Notice via email for any Class Member for whom an email address is available, and via U.S. mail in postcard form for all other Class Members for whom a physical mailing address is available. Undeliverable email notices will result in supplemental email attempts and then a postcard Summary Notice being sent.

For recipients of notice via email who have not submitted Claim Forms, the Administrator will periodically transmit reminder emails of the opportunity to submit a Claim Form prior to the Claims Deadline. The Administrator will also create and maintain a Settlement Website that contains all relevant information and documents regarding the Settlement through which Class Members can submit electronic Claims Forms and Requests for Exclusion. The Settlement Website will also contain a toll-free telephone number and mailing address through which Class Members can contact the Administrator. The language of all Notice Forms is easily understandable and accounts for the education level or language needs of the proposed Class Members. Proposed Notice Forms are attached as Exhibit B.

**F.    Proposed Class Representative Service Payments**

Plaintiff has been a dedicated and active participant on behalf of the Class, putting his name and reputation on the line for the sake of the Class and actively providing information at various stages in the litigation. The recovery would not have been possible without his efforts. Brown Decl. ¶¶ 17. In view of these efforts, counsel will separately petition the Court for approval of Service Payments in the amount of up to $5,000 for Plaintiff Smith as well as Plaintiffs Krefting and Woodard. The Settlement is not conditioned upon the Court's award of any Service Payments.

**G.    Attorneys' Fees and Expenses**

Plaintiff's counsel will separately file a motion for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses. There is no "free sailing" clause in the Settlement and any amount sought for payment of attorneys' fees will be consistent with established law. Because of the substantial efforts that Plaintiff's counsel has performed since the initial November 2023 settlement, as well as counsel for *Krefting* and *Woodard* up to this point and the substantial efforts that Plaintiff's counsel will necessarily undertake to get this case through final approval and completion, Plaintiff will be requesting a 33% percentage of the fund for their collective efforts. Any approved Fee Award and Costs will be paid out of the Settlement Fund. The Settlement is not conditioned upon an award of any attorneys' fees or expenses.

**H.    The Settlement Administrator**

The Parties propose that Epiq Class Action Administration serve as Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the Settlement. The costs of the Administrator will be paid out of the Settlement Fund. Epiq was selected

following a competitive bidding process jointly conducted by proposed Class Counsel and

defense counsel to identify the most efficient and lowest cost administration option. Proposed

Class Counsel—who has litigated numerous class actions to settlement —has previously worked

with Epiq on different matters. The estimated cost for settlement administration is competitive

and reasonable. Brown Decl. ¶ 17.

## V.  PRELIMINARY APPROVAL IS APPROPRIATE

### A.    The Rule 23 Requirements for Class Certification Are Met

At the preliminary approval stage, "if a class has not [yet] been certified, the parties must

ensure that the court has a basis for concluding that it likely will be able, after the final hearing,

to certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the

requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule

23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)

### 1.    Rule 23(a) Is Satisfied

#### i.    *The Class Is Sufficiently Numerous*

There are several hundred thousand Settlement Class Members. The Rule 23(a)(1)

numerosity requirement is readily satisfied.

#### ii.    *There Are Common Questions of Law and Fact*

The commonality requirement is satisfied if "there are questions of law or fact common to

the class." Fed. R. Civ. P. 23(a)(2). Here, numerous common issues of law and fact affect the

Class uniformly, including: the nature of Kaye-Smith's data security practices, whether Kaye-

Smith owed duties of care to Class Members to safeguard their PII, and whether Kaye-Smith

breached those duties. These inquiries will turn on common evidence. Commonality is satisfied.

#### iii.    *The Class Representatives' Claims Are Typical*

Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the

Class. "The test of typicality is whether other members have the same or similar injury, whether

the action is based on conduct, which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). Here, the claims of the named Plaintiff are typical of the claims of the Settlement Class. Plaintiff was notified by BECU that his PII was impacted because of Kaye-Smith's data breach incident and the Class Members are also individuals who were notified that their PII was impacted by the breach. Plaintiff's and Class Members' claims arise from the same nucleus of facts relating to the data breach, pertain to a common defendant, and are based on the same legal theories. Plaintiff thus satisfy the Rule 23(a)(3) typicality requirement.

### iv.      *Class Representatives and Proposed Class Counsel Adequately Represent Class Members*

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class," which requires that the named plaintiffs (1) not have conflicts of interest with the proposed Class; and (2) be represented by qualified and competent counsel. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). Plaintiff and proposed Class Counsel are adequate. First, the proposed Class Representatives have demonstrated that they are well-suited to represent the Settlement Class, have actively participated in the litigation, and will continue to do so. Brown Decl. ¶¶ 17. Now that Woodard and Krefting have sought dismissal of their claims against BECU with prejudice, they do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members. *Id.*

Second, proposed Class Counsel are qualified and experienced in class action and complex litigation, with expertise and experience in consumer and data privacy class actions. See Declarations of John Heenan [Dkt. No. 22], Ari Brown [Dkt. No. 23], and Justin Baxter [Dkt. No. 24]. Proposed Class Counsel have been dedicated to the prosecution of this action and will remain so through final approval. Brown Decl. ¶ 3.

### 2.    Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) requires that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class," and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

#### i.    *Common Issues of Law and Fact Predominate Over Any Potential Individual Questions*

The Rule 23(b)(3) predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, Plaintiff's claims depend on whether Kaye-Smith had reasonable data security measures in place to protect Plaintiff's and Class Members' PII, and whether Kaye-Smith could have prevented unauthorized exposure or compromise of Plaintiff's PII or mitigated its effects with more adequate third-party risk management practices. These questions can be resolved using the same evidence for all Class Members, including Kaye-Smith's internal documents, testimony of its employees, and expert analysis. *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied because the overarching common question . . . can be resolved using the same evidence for all class members and is exactly the kind of . . . common issue that makes certification appropriate.").

Indeed, Plaintiff alleges that the data breach affected Class Members similarly—compromising similar types of PII for Plaintiffs and Class Members. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("Plaintiffs' case for liability depends, first and foremost, on whether Anthem used reasonable data security to protect Plaintiffs' personal information . . . . That question can be resolved using the same evidence for all Class Members . . . .").

The issues presented are susceptible to common proof because they focus on Kaye-Smith's class-wide data security policies and practices, and thus are the type of predominant

questions that make a class-wide adjudication worthwhile. *Id.*; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" (citation omitted)). Predominance is satisfied.

ii.    *A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter*

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Where, as here, a court is deciding the certification question in the proposed class action settlement context, it need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Health Net. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution of the predominant issues of fact and law through individual actions is impracticable: the individual amounts in dispute are too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

The class device is the superior method of adjudicating claims against Kaye-Smith that arise from the data breach because it promotes efficiency, and in fact, no realistic alternative exists. Kaye-Smith is a company with limited financial resources. Its primary, and near exclusive resource to resolve both business and consumer claims arising from its breach is its wasting insurance policy. Litigation has already eroded the amount available. Continued litigation will only lessen the amounts available—possibly to the point that no resources will remain to compensate any injured parties or claimants. Courts recognize this in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (N.D. Cal. May 10, 2019).

**B.**     **The Proposed Settlement Is Eminently Fair, an Excellent Result for the Class Members, and Should Be Preliminarily Approved**

The 2018 revisions to Rule 23 confirm the need for the Court's analysis regarding the fairness of a proposed class settlement. "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Accordingly, a district court may approve a settlement agreement "after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).

In making this decision, Rule 23(e)(2) clarifies that district courts must consider whether:

(A)     the class representatives and class counsel have adequately represented the class;
(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Rule 23(e) now reflects the factors that this Circuit already considered for settlement approval: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Anthem,* 327 F.R.D. at 317 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

"Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing approval. *In re Bluetooth Headset*, 654 F.3d at 946.

At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). Ultimately, "[s]trong judicial policy favors settlements." *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)

### 1.    The Strength of Plaintiffs' Case and Possible Monetary Remedies

Plaintiffs believe they have a strong case for liability based on the alleged shortcomings in Kaye-Smith's data security measures. Plaintiffs also believe they would be able to recover damages on behalf of the Class. The range of potential outcomes, however, is considerable. The damages available will depend on the scope of class certification, whether various theories of damages would be accepted by the Court (i.e., benefit of the bargain, and loss of value of PII),

and which causes of action survive. Plaintiff's and the Class Members' claims are subject to numerous risks (*see infra*, Sec. V.B.2.).

**2.      The Risk, Expense, Complexity, and Potential Class Recovery**

This factor overwhelmingly weighs in favor of preliminary approval. As stated above, while Plaintiffs believe their cases are strong, there is substantial risk. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex, and this case is no exception.

There are numerous substantial hurdles that Plaintiffs would have to overcome before the Court might find a trial appropriate. First, given the early stage of the litigation, the legal sufficiency of Plaintiffs' claims has not been tested by a motion to dismiss, including Article III standing. Establishing a cognizable injury tied to Defendant's conduct (as opposed to, for instance, another data breach or some other cause) can present challenges.

Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage and are among the most risky and uncertain of all class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Kaye-Smith would also likely argue that there are no damages because the class members' data was never made available on the dark web or other illegal sites.

Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

Finally, and most importantly, Interim Class Counsel verified through discovery that Kaye-Smith's sole collectable asset is its insurance policies which are cannabilizing/wasting policies that are depleted by costs of defense. Thus, to take this case through class certification and trial would harm the Class Members as there would likely be no way to collect a judgment.

Plainly, the Settlement avoids the risk of non-recovery and is a prudent course in view of these high risks. Given that all Class Members will be eligible for CMIS and to receive cash payments, the Settlement provides benefits that address all potential harms of a data breach without the substantial risk of continued litigation, which includes the risk of dismissal or judgment against Plaintiffs.

### 3.    The Risk of Maintaining Class Status Through Trial

Plaintiffs' case is still in the pleadings stage, and the Parties have not briefed class certification. Class certification proceedings are far off in the distance in this litigation, and prior to those proceedings there is risk of dismissal. Class certification, if and when it arrives, will present substantial risk, particularly given that different types of information were affected for different Class Members, and in light of the fact that class-wide data breach damage models remain largely untested at litigation. Data breach law is developing, so even if Plaintiffs obtained class certification, there is no guarantee that the class action status would be maintained. Health Net would likely seek a Rule 23(f) appeal of any decision by the Court granting class certification, resulting in additional delay to Class Members. The significant risk of obtaining and maintaining class certification in this case supports preliminary approval.

### 4.    The Amount Offered in Settlement Is Fair

The $2 million non-reversionary Settlement Fund is an excellent result for the Class. With this fund, all Class Members will be eligible for a Settlement Payment in the form of distribution for credit monitoring, a Documented Loss Payment, a Cash Fund Payment, and/or a Business Loss Payment. The Settlement Fund will be applied to pay all Administrative Expenses, Notice Expenses, the taxes to the Settlement Fund, any Service Payments, and any payment of a Fee Award and Costs. Any funds remaining in the Net Settlement Fund after distribution(s) to Class Members will be distributed in a subsequent Settlement Payment to Class Members.

The Settlement presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements on a per capita basis. The Settlement is in the upper range of settlements on a per-capita basis.

### 5.    The Proposed Method of Distribution Is Effective

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory Comm. Note to 2018 amendment.

To file a claim, Class Members need only complete a straightforward Claim Form and, if necessary, submit it along with any documents supporting claimed losses, either through the Settlement Website or by mail. Ex. A (claim form). Epiq, the settlement administrator, will process all Claims. The methods of distributing relief to Class Members include both digital and physical check avenues.

### 6.    The Extent of Discovery Completed and the Stage of the Proceedings

Plaintiffs' counsel have diligently developed the facts and legal claims in this case. Plaintiffs conducted significant discovery during the litigation regarding Kaye-Smth's data security systems. Plaintiffs' counsel engaged, and continues to conduct, confirmatory discovery to establish, *inter alia*, facts relevant to the breach and Kaye-Smith's liability and its reaction to and actions after the breach, class size, and Kaye-Smith's financial condition. Sec. III.C, *supra*.

The Parties engaged in informal discovery to confirm the Settlement as fair, reasonable, and adequate. As part of the negotiations and Settlement, the Parties engaged in confirmatory discovery to not only verify the relevant facts, but also the fairness of the Settlement. Brown Decl. ¶¶ 8, 9, 12, 14, 16. Proposed Class Counsel's knowledge of facts of this case and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses of the case, the

decision to twice go to mediation with Kaye-Smith, and the decision to recommend that the Court grant preliminary approval to the Settlement.

### 7.    The Experience and Views of Counsel

Interim Class Counsel include attorneys who have substantial experience in complex class action litigation, including in data breach and data privacy cases. Summaries of their relevant experience and qualifications were previously submitted to the Court. See Dkt. Nos. 22-24. Interim Class Counsel fully endorse the Settlement as fair, reasonable, and adequate to the Class, and do so without reservation, especially in view of the "wasting" insurance policies at issue.

### 8.    The Presence of a Governmental Participant

No governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State have been or will be notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections.

### 9.    The Reaction of Class Members to the Proposed Settlement

The Class has yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. Prior to final approval, the Court will be able to review all objections or other comments received from Class Members, along with a full accounting of all opt-out requests.

### 10.    The Settlement Is the Product of Arm's-Length Negotiations That Were Free of Collusion

The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d at 946-47 (internal quotation marks, ellipses and citation omitted). Plaintiffs achieved the Settlement in contested litigation and through arm's-length negotiations that involved two mediation sessions before two highly respected mediators. Plaintiffs undertook substantial investigation of the underlying facts, causes of action, and potential defenses. Brown Decl. ¶¶ 6, 8, 9, 12, 15. The Parties engaged in extensive arm's

length negotiations, including two mediation sessions before mutually agreed upon mediators, Lou Peterson and the Hon. Wayne Anderson (Ret.).

Both Mr. Peterson and Judge Anderson, are highly respected and experienced mediators who have extensive experience in class action litigation, including multiple data breach cases where a settlement was reached and subsequently approved. See, Brown Decl. ¶¶ 9, 13 (with links to their biographies). Their respective involvement here further confirms the absence of collusion. *G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

*In re Bluetooth* identified three "signs" of possible collusion: (1) "'when counsel receive[s] a disproportionate distribution of the settlement'"; (2) "when the parties negotiate a 'clear sailing' arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *In re Bluetooth,* 654 F.3d at 947 (internal citations omitted).

None of the *In re Bluetooth* signs are present here. There is no "clear sailing provision" and Class Counsel will not seek fees that exceed the 25% of the Fund benchmark set by *In re Bluetooth. Id.* at 942; SA § 11.3; *see, supra,* Sec. IV.H. There is no reversion of the Settlement Fund (SA § 4.11), but rather the Settlement makes every effort to distribute any Residual to the Class (*see id*. §§ 4.9, 4.11). Proposed Class Counsel will apply for fees from this non-reversionary Settlement Fund, so that there was every incentive to secure the largest fund possible. There is no indication or existence of collusion or fraud in the settlement negotiations and the Settlement that is being presented to the Court. Interim Class Counsel in *In re Accellion* reached the same conclusion. *Id*, ECF No. 158, at 5:11-12 ("the proposed settlement . . . does not bear any of the 'red flags' described in *Bluetooth*").

**11.     The Proposed Notice Plan Is Appropriate**

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005). The best notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The notice should provide sufficient information to allow Class Members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251-52. "[N]otice is adequate if it may be understood by the average class member." *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171, 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:53, at p. 167 (4th ed. 2013)). The Long Form Notices (Ex. B) here are clear, precise, informative, and meets all the necessary standards, allowing Class Members to make informed decisions with respect to whether to remain in, opt out of, or object to the Settlement.

The Notice Plan includes direct notice by emailing or mailing the Summary Notice to all Class Members, and reminder emails to those for whom email addresses are available. The Administrator will also establish a Settlement Website. The proposed Notice Plan represents the best notice practicable. Copies of all the notice documents are attached as exhibits to the Settlement Agreement; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan is consistent with and exceeds the requirements of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines for adequate notice.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the proposed Notice plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

### 12.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, proposed Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data breach and data privacy cases. See, Dkt Nos. 22-24. As described above and in Class Counsel's Motion for Interim Class Counsel Appointment, Proposed Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint John Heenan, Ari Brown, and Justin Baxter as Class Counsel.

### C.    Settlement Deadlines and Schedule for Final Approval

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the following schedule, which the parties believe will provide ample opportunity for Class Members to decide whether to request exclusion or object:

| EVENT | DATE |
|---|---|
| Notice Date (U.S. Mail and email) | Within **30 Days** from Preliminary Approval Order |
| Deadline to Submit Claim Forms | **75 Days** from Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Payments | **35 Days** Before Objection Deadline |

| EVENT | DATE |
|---|---|
| Deadline to Object and/or Comment on the Settlement | **75 Days** from Notice Date |
| Deadline to Submit Request for Exclusion | **50 Days** from Notice Date |
| Final Approval Hearing | To be Determined |

## VI.    CONCLUSION

Plaintiff Smith respectfully requests that this motion be granted and that the Court enter an order: (1) certifying the proposed class for settlement; (2) preliminarily approving the proposed class action Settlement; (3) appointing Plaintiff as Class Representatives and John Heenan, Ari Brown and Justin Baxter as Class Counsel; (4) appointing Epiq as the Settlement Administrator; (5) approving the proposed Class Notice Plan; and (6) approving the proposed class settlement administrative deadlines and procedures, including setting a Final Approval Hearing date.

Dated this 22nd day of March, 2024.

BAXTER & BAXTER, LLP
RHODES LEGAL GROUP
HEENAN & COOK, PLLC

*/s/ John Heenan*
John Heenan (Pro Hac Vice)
Attorneys for Plaintiff and Interim Class Counsel