Justin M. Baxter, Oregon State Bar ID Number 992178
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone: (503) 297-9031
Facsimile: (503) 291-9172
justin@baxterlaw.com

Ari Brown *(Pro Hac Vice)*
RHODES LEGAL GROUP
918 South Horton St., Suite 901
Seattle, WA 98134
Telephone: (206) 412-9320
abrownesq@gmail.com

John Heenan *(Pro Hac Vice)*
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@lawmontana.com

*Attorneys for Plaintiff*

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

**RICHARD SMITH**, et. al.,

                    Plaintiffs,

            v.

**KAYE-SMITH ENTERPRISES, INC.,**

                    Defendant.

Case No.: 3:22-CV-01499-AR

PLAINTIFFS' *AMENDED* MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND BRIEF IN SUPPORT

## MOTION

Plaintiffs, through the undersigned Interim Class Counsel, move the Court for the following rulings:

1.   Preliminary approval of a proposed class action settlement, the terms of which are set forth in the Settlement Agreement attached hereto as Exhibit A, as fair, reasonable, and adequate;

2.   Certification of the proposed settlement classes for settlement purposes pursuant to Rule 23(b) and (e) of the Federal Rules of Civil Procedure;

3.   Approval of notice to the classes that informs the members of each class of the proposed settlement;

4.   Appointment of John Heenan, Ari Brown and Justin Baxter as Class Counsel;

5.   Appointment of Plaintiff Richard Smith, Noel Woodard, Richard Krefting and WaFD as Class Representatives; and

6.   Setting a Final Approval Hearing and consideration of applications for Service Payments, attorneys' fees, and reimbursement of litigation costs and expenses.

A proposed order is filed contemporaneously with this Motion. Plaintiff's Motion is supported by the below Brief in Support.

### BRIEF IN SUPPORT OF MOTION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On November 9, 2023, following a mediation and extensive negotiations, Plaintiff moved the Court to preliminarily approve a nationwide class settlement with named Defendant Kaye-Smith Enterprises, Inc., (hereinafter referred to as "Defendant" or "Kaye-Smith") that would resolve all class claims against Defendant and its Business Affiliates arising out of the June 2022 data breach at issue in this case. (Dkt. #73.) At the time, there were parallel proceedings advanced by different plaintiffs and different counsel regarding the same data breach incident and pending

motions and ancillary issues existed. On November 9, 2023, the Court conducted a status conference will all counsel for this case and the two other parallel proceedings to discuss these issues. (Dkt. #75.) Subsequent to the November 9, 2023, status conference, counsel for all parties worked diligently to resolve all outstanding issues between them.

On March 22, 2024, the parties presented a revised settlement that resolved all issues pertaining to the parallel cases. On May 14, 2024, the Court expressed concerns stemming from the adequacy of class representatives Smith, Krefting, and Woodard representing both the Consumer Class and the Business Class. To address these concerns, Plaintiff Smith was granted leave and filed an Amended Complaint (Dkt. #89) that adds claims by WaFd on behalf of itself and the members of the Business Class.

The Court held a preliminary approval hearing on July 8, 2024. The Court raised issues that stemmed from inconsistencies borne of relying on the previous motion for Preliminary Approval that did not include WaFd as the Business Class Representative. This amended motion seeks to address those concerns.

The Settlement should be approved because it is fair, reasonable, and adequate. The Settlement would establish a non-reversionary fund of at least $2 million[1] to pay for valid claims by consumers and businesses affected by the data breach, notice and administration costs, and attorneys' fees and costs awarded by the Court. All Class Members may submit claims for benefits. Consumer claimants may elect to receive: (1) payment for reimbursement of Documented Losses of up to $2,500; or (2) a cash payment, calculated in accordance with the terms of the Settlement Agreement. In addition, all claimants may elect to receive one year of Credit Monitoring and

---

[1] As explained below, the settlement fund is comprised of the remaining amount of insurance available to Kaye-Smith, less amounts to pay its own legal costs through final approval. Any amounts of that reserve that remain unused will revert to the Settlement Fund.

Insurance Services ("CMIS").

The Settlement requires Defendant's insurers to pay the remaining limits under Defendant's "defense within limits" insurance policy, which is the only significant asset Defendant possesses. The settlement is the product of litigation that spanned over a year, included significant motions practice, and was reached after arm's-length negotiations between experienced counsel. The parties ultimately reached a settlement following comprehensive investigation and exchange of information, two mediations, and numerous hours conferring after the mediation to finalize the settlement details. The current settlement further reflects the input of class members including BECU as well as Plaintiffs' counsel in the *Krefting* and *Woodard* cases. The parties have conducted and will continue to conduct confirmatory discovery.

If approved, the Settlement will resolve all claims against Kaye-Smith and its business affiliates by individuals whose personal information was compromised. It will also resolve claims by business affiliates against Kaye-Smith—a resolution that is necessary for ***any*** recovery to individuals to be feasible given Kaye-Smith's current financial position and remaining insurance coverage. The Settlement delivers tangible and immediate benefits that address the harms of the data breach without further protracted litigation and its attendant risks. The Settlement compares favorably with previous settlements and delivers a fair, adequate, and reasonable resolution for the Class. The Court should preliminarily approve the Settlement.

## II. BACKGROUND

Kaye-Smith is a vendor that generates monthly account statements for various institutional clients including Boeing Employees' Credit Union ("BECU"). On or before June 6, 2022, Kaye-Smith informed its business associates that an unauthorized actor breached Kaye-Smith's computer network and gained access to the personally identifiable information ("PII") of Plaintiff and hundreds of thousands of Kaye-Smith's clients' customers.

Plaintiff Richard Smith initially filed a putative class action against BECU in August 2022. A second-filed action styled as *Woodard v. Boeing Employees' Credit Union*, was filed shortly after. BECU provided evidence that the data breach incident exclusively affected data stored by Kaye-Smith and that all access had been to Kaye-Smith networks. After determining that Kaye-Smith was the at-fault party, counsel for both Plaintiff Smith and Plaintiff Woodard conferred, and determined to voluntarily dismiss their respective pending actions against BECU without prejudice. See, Declaration of Ari Brown ("Brown Decl.") attached as Exhibit C at ¶¶ 4-6. Richard Smith brought this putative class action against Kaye-Smith on October 6, 2022.

Through early exchange of discovery, Plaintiff learned that Defendant is insured under a "cannibalizing" insurance policy in which costs of defense reduce the available insurance limits dollar for dollar. The Court appointed the undersigned as Interim Class Counsel on January 6, 2023 (Dkt. #28).

Following further exchanges of information, the parties conducted a mediation with Lou Peterson in March 2023. While the parties narrowed the issues in dispute through that mediation, they were unable to reach a settlement. The parties continued to litigate—they fully briefed a motion to dismiss and motion to bifurcate discovery, and the Court denied a motion to stay discovery. The parties engaging in substantive discovery required numerous discovery conferences to narrow the issues and eventually required a motion to compel on those that remained unresolved. *Id*. ¶ 12. Interim Class Counsel moved to intervene in each of the duplicative Washington actions to have them transferred to this Court. *Id*. ¶ 11.

With Kaye-Smith's insurance assets continuing to deplete, and the presumed amounts that Kaye-Smith's clients, including WaFd and BECU would claim against it continuing to rise, the parties conducted a second mediation with the Honorable Wayne Anderson, a retired United States

District Court Judge and current JAMS mediator. On October 17, 2023, the parties reached a settlement that required Kaye-Smith's insurers to tender all remaining insurance limits and to create a Consumer Class Fund and a Business Class Fund. Under this structure, both consumers affected by the data breach, and businesses with contractual claims against Kaye-Smith arising from the data breach will be able to recover significant portions of their losses under the limited, and rapidly depleting insurance proceeds. All negotiations were conducted at arm's length, in good faith, free of any collusion, and under the supervision of a mediator. After comprehensive negotiations and diligent efforts, the Parties finalized the terms of the Settlement they now ask the Court to preliminarily approve. *Id*. ¶¶ 13-14.

Following settlement and Plaintiff's initial Motion for Preliminary Approval, counsel for all parties in this and the *Krefting* and *Woodard* matters negotiated and revised the initial settlement to have buy-in from all parties. *Id*. ¶ 15. WaFd was further incorporated to resolve claims on behalf of the Business Class. Plaintiffs now asks the Court to preliminarily approve the settlement as it is fair, reasonable and in the best interests of the classes.

### III.  TERMS OF THE SETTLEMENT

#### A. The Class Definitions

The "Consumer Settlement Class" consists of all individuals who had any information released, exposed, or impacted by the data security incident initially disclosed by BECU in July 2022.

The "Business Settlement Class" consists of all businesses or entities that had a business relationship with Kaye-Smith, including Kaye-Smith's clients, and whether such relationship was by contract or not, and that were affected by the Data Security Incident, excluding those who have resolved their claims against Kaye-Smith prior to October 19, 2023.

#### B. The Release

In exchange for the benefits provided under the Settlement Agreement, Class Members will

release any claims against Kaye-Smith and against its Business Affiliates that are related to or arising out of the June 2022 data breach.

## C. The Settlement Benefits

The Settlement provides for a non-reversionary Settlement Fund that will be used to provide participating Consumer Class members with the following benefits:

### 1.    Credit Monitoring

Each class member who submits a claim may receive an extra year of credit monitoring, which has a retail value of $240.

### 2.    Documented Loss Payment

In addition to credit monitoring, Consumer Class Members may seek up to $2,500 of documented out of pocket losses, that may include reimbursement of up to five hours of reimbursement for attested time devoted to addressing the risks or effects of the data breach at a rate of $25 per hour. To receive a documented loss payment, a class member must submit a valid claim form with attestation of the loss supported by reasonable documentary proof.

### 3.    Cash Fund Payments

In the alternative to a documented loss payment, Participating Class Members may submit a claim to receive a cash settlement payment. The amount of the cash settlement payment will be calculated in accordance with the terms of the Settlement Agreement on a pro rata share of the net settlement fund remaining after payments based on documented losses.

### 4.    Business Loss Payments

Participating Businesses who suffered traceable business losses are entitled to reimbursement for losses associated with the data breach that have not already been paid. Such business claimants may submit claims for indemnification from Kaye-Smith with documentation

as stated in the Settlement Agreement to recover a pro rata share of the Business Settlement Fund.

### 5.    Settlement Value to Class Members

The cash fund value of the Settlement is the full remaining amount of insurance proceeds that remain available to Kaye-Smith, less amounts it needs to pay legal fees through final approval of this settlement. The amount will be not less than $2,000,000. Kaye-Smith is holding $300,000 to pay legal fees through final approval. Any unused amount will be added to the Settlement Fund.

### D.    Plan of Distribution

Subject to the Court's approval, the Settlement Administrator ("Administrator") will apply the Net Settlement Fund to make all distributions necessary for the credit monitoring claimed, Documented Loss Payments, Cash Fund Payments, and Business Loss Payments. After payment of fees and expenses, the Net Settlement Fund will be apportioned equally between the Consumer Fund used to pay Consumer Class members who submit valid claims, and the Business Fund used to pay Businesses who submit valid claims.

In the event approved claims on either the Consumer Settlement Fund or the Business Settlement Fund constitute less than 50% of the Net Settlement Fund while the approved claims on the corresponding fund exceed 50% of the Net Settlement Fund, then any remaining funds in the Net Settlement Fund shall be distributed on a pro rata basis to satisfy all claims in the Settlement Fund in which approved claims exceeded 50% of the Net Settlement Fund.  See Settlement Agreement ¶¶ 75 (c) and (d).

This distribution and apportionment is fair and equitable as it provides for a pro-rata distribution to all similarly situated claimants in each respective class. Given the size of the Consumer Class and the anticipated size of claims from the Business Class, it is unlikely that claims on either class will constitute less than 50% of the Net Settlement Fund. But in such event,

the amounts remaining will be distributed pro-rata to class members with approved claims in the corresponding fund and no amount will revert to the Defendant. In short, all available settlement proceeds will be distributed to the Class Members in an equitable fashion.

**E.    Notice to Class**

Pursuant to Rule 23(e), the Administrator will provide Class Members with the Summary Notice via email for any Class Member for whom an email address is available, and via U.S. mail in postcard form for all other Class Members for whom a physical mailing address is available. Undeliverable email notices will result in supplemental email attempts and then a postcard Summary Notice being sent.

For recipients of notice via email who have not submitted Claim Forms, the Administrator will periodically transmit reminder emails of the opportunity to submit a Claim Form prior to the Claims Deadline. The Administrator will also create and maintain a Settlement Website that contains all relevant information and documents regarding the Settlement through which Class Members can submit electronic Claims Forms and Requests for Exclusion. The Settlement Website will also contain a toll-free telephone number and mailing address through which Class Members can contact the Administrator. The language of all Notice Forms is easily understandable and accounts for the education level or language needs of the proposed Class Members. Revised Proposed Notice Forms are attached as Exhibit B.

**F.    Proposed Class Representative Service Payments**

The Consumer Class Representatives have been dedicated and active participants on behalf of the Class, putting their name and reputation on the line for the sake of the Class and providing information at various stages in the litigation. The recovery would not have been possible without

their efforts. Brown Decl. ¶ 18. In view of these efforts, counsel will separately petition the Court for approval of Service Payments in the amount of up to $5,000 for Plaintiff Smith as well as Plaintiffs Krefting and Woodard. Plaintiff WaFd has similarly placed its name and reputation in public view for the sake of the Business Class. Because WaFd entered the litigation later than the Consumer Class Representatives, counsel intends to petition the Court for approval of a Service Payment in an amount up to $2,500. The Settlement is not conditioned upon the Court's award of any Service Payments.

## G.    Attorneys' Fees and Expenses

Plaintiff's counsel will separately file a motion for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses. There is no "free sailing" clause in the Settlement and any amount sought for payment of attorneys' fees will be consistent with established law. Because of the substantial efforts that Plaintiff's counsel has performed since the initial November 2023 settlement, as well as counsel for *Krefting* and *Woodard* up to this point and the substantial efforts that Plaintiff's counsel will necessarily undertake to get this case through final approval and completion, Plaintiff will be requesting a 33% percentage of the fund for their collective efforts. Any approved Fee Award and Costs will be paid out of the Settlement Fund. The Settlement is not conditioned upon an award of any attorneys' fees or expenses.

## H.    The Settlement Administrator

The Parties propose that Epiq Class Action Administration serve as Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the Settlement. The costs of the Administrator will be paid out of the Settlement Fund. Epiq was selected following a competitive bidding process jointly conducted by proposed Class Counsel and defense counsel to

identify the most efficient and lowest cost administration option. Proposed Class Counsel—who has litigated numerous class actions to settlement —has previously worked with Epiq on different matters. The estimated cost for settlement administration is competitive and reasonable. Brown Decl. ¶ 17.

## V.  PRELIMINARY APPROVAL IS APPROPRIATE

### A.     The Rule 23 Requirements for Class Certification Are Met

At the preliminary approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). When deciding whether to allow a claim to proceed as a class action, the court does not examine the merits of the case, but, rather, takes the plaintiff's allegations in support of the class action as true. *Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 55 (N.D. Ill. 1996), citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

#### 1.     Rule 23(a) Is Satisfied

##### i.     *The Class Is Sufficiently Numerous*

The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); quoted in *Bublitz v. E.I. du Pont de Nemours & Co*., 202 F.R.D. 251, 255 (S.D. Iowa 2001).

To be certified under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Courts therefore focus on the practicability of class members bringing individual

actions. In addition to numbers, courts may consider factors such as geographical dispersion, the nature of the action, the size of each plaintiff's claim, judicial economy, and the ability of members to bring individual suits. See, *Gaspar*, 167 F.R.D. at 56 (finding a class of 18 individuals sufficient to satisfy numerosity); see also *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D.Ill.1983) (class of 20 held sufficient); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (noting that "[t]his Court may certify a class even if it is composed of as few as 14 members."). In *Bublitz*, the court certified a class composed of 17 employee-class members, noting that the employer had subsequently changed its policies would make individual actions more difficult and that there was a natural reticence to sue one's employer. *Bublitz*, 202 F.R.D. at 255.

There are several hundred thousand Settlement Consumer Class Members. And there are approximately 47 Business class members that are spread across several states. See Declaration of Alex Smith ("Smith Decl.") attached as Exhibit D at ¶¶ 4-5. The practical considerations make certification of the Business Class appropriate. The class members are geographically diverse. Most important, Kaye-Smith's financial position renders individual actions impractical. The liabilities Kaye-Smith has incurred because of this data breach far exceed its assets. Consequently, the insurance available offers the only practical path to recovery for any claimant. This settlement apportions the amounts available. If members of either class pursued individual actions, the amounts available would be so reduced by attorneys' fees and litigation costs that most, and perhaps all claimants would recover nothing.

### ii.    *There Are Common Questions of Law and Fact*

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, numerous common issues of law and fact affect each Class uniformly within that class. For both classes, common questions include: the nature of Kaye-

Smith's data security practices, whether it has adequately addressed the security vulnerabilities to ensure that the PII it stores is safe going forward. Common questions as to each class separately include the scope and nature of the duties Kaye-Smith owed to the members of the each class to safeguard the PII with which it had been entrusted, and whether Kaye-Smith breached its duties of care to protect the PII. These inquiries will turn on common evidence. Commonality is satisfied.

### iii.    *The Class Representatives' Claims Are Typical*

Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the Class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).

Here, the claims of the Plaintiff Smith are typical of the claims of the Settlement Consumer Class. Plaintiff Smith was notified by BECU that his PII was impacted because of Kaye-Smith's data breach incident and the Class Members are also individuals who were notified that their PII was impacted by the breach. Plaintiff's and Class Members' claims arise from the same nucleus of facts relating to the data breach, pertain to a common defendant, and are based on the same legal theories.

Similarly, WaFd's claims are typical of the claims of the Settlement Business Class. Its contract with Kaye-Smith was a standard form contract that Kaye-Smith prepared and that is substantively the same as the contract it uses to provide vendor services to its clients. Smith Decl. at ¶ 3. WaFd, like all members of the Business Class, collected PII from its clients and then entrusted Kaye-Smith with that PII. When that PII was compromised in the data breach, WaFd suffered the same types of injuries as the other Business Class Members and has the same claims

arising from the same contractual terms. Its claims are thus coextensive with the members of the

Business Class. Plaintiff thus satisfy the Rule 23(a)(3) typicality requirement for both the Business

Class and the Consumer Class.

### iv. *Class Representatives and Proposed Class Counsel Adequately Represent Class Members*

The Plaintiffs are adequate class representatives under Rule 23(a)(4). Rule 23(a)(4)

requires that the named plaintiffs be adequate representatives of the class, by (1) prosecuting the

action vigorously through qualified counsel, and (2) having no interests antagonistic to or

conflicting with the unnamed class members. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d

507, 512 (9th Cir. 1978). *See also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998);

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *In re Volkswagen "Clean Diesel" Mktg.,*

*Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). "The adequacy-of-

representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule

23(a),"*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626, nt. 20 (1997) (internal citations

omitted).

The focus under the second prong is on whether there is an actual or potential conflict

between the claims of the representatives and the claims of the Class. *Hanlon*, 150 F.3d at 1020.

"Not every conflict will prevent class certification – the conflict must be fundamental to violate

Rule 23(a)(4)." *D.C. ex rel. Garter v. Cty. of San Diego*, No. 15CV1868-MMA (NLS), 2017 WL

5177028, at *12 (S.D. Cal. Nov. 7, 2017); see also *Burnham v. Ruan Transportation*, No.

SACV120688AGANX, 2014 WL 12558846, at *5 (C.D. Cal. Feb. 13, 2014); *Brown v. Am.*

*Airlines, Inc.*, 285 F.R.D. 546, 558 (C.D. Cal. 2011)). A conflict is fundamental if it goes to the

"specific issues in controversy" or "where some party members claim to have been harmed by the

same conduct that benefitted other members of the class." *AdTrader, Inc. v. Google LLC*, No. 17-

CV-07082-BLF, 2020 WL 1922579, at *6 (N.D. Cal. Mar. 24, 2020). A conflict may also be

found "if the proposed representatives may seek to limit the class's recovery to advance their own

interests." *Id*. (Internal citations omitted).

The proposed Consumer Class Representatives have demonstrated that they are well-suited to represent the Settlement Consumer Class. They have actively participated in the litigation, and will continue to do so. Brown Decl. ¶ 18. Now that Woodard and Krefting have dismissed their claims against BECU with prejudice, they do not have any conflicts of interest with any members of the Business Class. *Id.*

Although arguably unnecessary,[2] WaFd was subsequently added to this case as a named representative of the business class. WaFd suffered the same injury as the rest of the members of the Business Class. Its claims are co-extensive with those of the Class, and it seeks no recovery in addition to that sought on behalf of each Class member. While WaFd, like every Business Class Member, would prefer to recover all its losses from Kaye-Smith, without this class settlement it is likely that it, along with other Business Class Members, will recover **none** of its losses. Consequently, the interests of the Business Class Representative are aligned with the rest of the Business Class.

Nor is there any conflict between the Business Class and the Consumer Class. All class members of both classes were harmed by this data breach, and none benefited. WaFd and all business class members will be subject to the same allocation plan and no party has advanced, or can advance, its own interests to limit the recovery of either class. There is no actual or potential conflict between the Class and Plaintiffs.  All Plaintiffs satisfy both aspects of Rule 23(a)(4).

The proposed Class Counsel are qualified and experienced in class action and complex litigation, with expertise and experience in consumer and data privacy class actions. And none of these attorneys have any conflicts with WaFd or the members of either the consumer class or business class. Brown Decl. ¶ 19. Proposed Class Counsel have been dedicated to the prosecution of this action and will remain so through final approval. Brown Decl. ¶ 3. And because the central

---

[2] *See, e.g., Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg. Litig.),* 895 F.3d 597 (9th Cir. 2018) (no irreparable conflict of interest preventing class representatives from adequately representing vehicle sellers, or prohibiting comingling of vehicle owners and vehicle sellers in the same class action; proposed settlement's allocation of benefits to sellers did not show unfair treatment.")

issues in this case – the data breach and the harm it caused—are common to the claims of both Classes, Proposed Class Counsel also do not have any interests that are antagonistic to those of the absent Class members of either Class.

      **v.**    ***The Class Representatives have Standing***

As the Court noted, Plaintiffs have Article III standing to approve a class settlement. To satisfy Article III's standing, a plaintiff must (1) have suffered an injury in fact; (2) that is traceable to the challenged action; and (3) is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S.167, 180-81 (2000).*

The facts and allegations show that Plaintiffs do have standing. The injuries to both Plaintiffs were caused by the data breach and will be redressed by this settlement. Defendant's challenge during this litigation has been limited to disputing that Plaintiff Smith suffered an injury in fact. This challenge should be overcome. Plaintiff Smith has adequately alleged an injury-in-fact in the form of increased risks of future identity theft—both imminent and continuing (Complaint ¶¶ 8, 22, 35, 52, 54), the lost or diminished value of his PII (Complaint ¶¶ 2, 8, 63, 118), the money spent on identity theft protection, and time spent monitoring accounts following the data breach. (Complaint ¶ 61, see also Declaration of Richard Smith, Dkt. No. 43-1).  This more than suffices to establish injury-in-fact.

The Ninth Circuit recognizes that an increased risk of future identity theft establishes injury-in-fact for purposes of standing. See, *In re Zappos.com, Inc*., 888 F.3d 1020, 1023 (9th Cir. 2018); *Krottner v. Starbucks Corp*., 628 F.3d 1139, 1142-43 (9th Cir. 2010). Finding that such injury confers standing has continued following the Supreme Court's decision in  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). See, e.g., *Riordan v. W. Digit. Corp*., 2022 WL 2046829, at *4, *10 (N.D. Cal. June 7, 2022); *Leonard v. McMenamins, Inc*., 2022 WL 4017674, at *5 (W.D. Wash. Sept. 2, 2022).

Courts have similarly recognized that the lost or diminished value of PII is sufficient to confer standing. See, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*., 440 F. Supp. 3d

447, 460-61 (D. Md. 2020) (recognizing "the growing trend across courts that have considered this issue is to recognize the lost property value of [personally-identifying] information") (collecting cases).

Finally, courts routinely recognize that time or money spent addressing the fallout of a data breach suffice as injury and harm. See, e.g., *Ortiz v. Perkins & Co.*, 2022 WL 16637993, at *4 (N.D. Cal. Nov. 2, 2022) citing *Clemens v. ExecuPharm Inc.*, 48 F. 4th 146, 155-56 (3d Cir. 2022); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 80736, at *12 (S.D. Cal. May 7, 2020) (collecting cases).

As to Plaintiff WaFd, standing is apparent. Plaintiff WaFd alleges that it suffered monetary damages due to a breach of the terms of its contract with the defendant, and these damages would be redressed by a favorable ruling.

### 2.    Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) requires that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class," and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

### i.    *Common Issues of Law and Fact Predominate Over Any Potential Individual Questions*

The Rule 23(b)(3) predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, Plaintiff's claims depend on whether Kaye-Smith had reasonable data security measures in place to protect Plaintiff's and Class Members' PII, and whether Kaye-Smith could have prevented unauthorized exposure or compromise of Plaintiff's PII or mitigated its effects with more adequate third-party risk management practices. These questions can be resolved using the same evidence for all Class Members, including Kaye-Smith's internal documents, testimony of its employees, and expert analysis. *Abante Rooter & Plumbing, Inc. v. Pivotal*

*Payments Inc.*, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied because the overarching common question . . . can be resolved using the same evidence for all class members and is exactly the kind of . . . common issue that makes certification appropriate.").

Indeed, Plaintiff alleges that the data breach affected Class Members similarly—compromising similar types of PII for Plaintiffs and Class Members. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("Plaintiffs' case for liability depends, first and foremost, on whether Anthem used reasonable data security to protect Plaintiffs' personal information . . . . That question can be resolved using the same evidence for all Class Members . . . .").

The issues presented are susceptible to common proof because they focus on Kaye-Smith's class-wide data security policies and practices, and thus are the type of predominant questions that make a class-wide adjudication worthwhile. *Id.*; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" (citation omitted)). Predominance is satisfied.

### ii.    *A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter*

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Where, as here, a court is deciding the certification question in the proposed class action settlement context, it need not consider manageability issues because "the proposal is that there be

no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims here. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution of the predominant issues of fact and law through individual actions is impracticable: the individual amounts in dispute are too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

The class device is the superior method of adjudicating claims against Kaye-Smith that arise from the data breach because it promotes efficiency, and in fact, no realistic alternative exists. Kaye-Smith is a company with limited financial resources. Its primary, and near exclusive resource to resolve both business and consumer claims arising from its breach is its wasting insurance policy. Litigation has already eroded the amount available. Continued litigation will only lessen the amounts available—possibly to the point that no resources will remain to compensate any injured parties or claimants. Courts recognize this in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (N.D. Cal. May 10, 2019).

**B.    The Proposed Settlement Is Eminently Fair, an Excellent Result for the Class Members, and Should Be Preliminarily Approved**

The 2018 revisions to Rule 23 confirm the need for the Court's analysis regarding the fairness of a proposed class settlement. "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Accordingly, a district court may approve a settlement agreement "after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).

In making this decision, Rule 23(e)(2) clarifies that district courts must consider

whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Rule 23(e) now reflects the factors that this Circuit already considered for settlement approval: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Anthem,* 327 F.R.D. at 317 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Agreements reached prior to formal class certification, must withstand a higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing approval. *In re Bluetooth Headset*, 654 F.3d at 946.

At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). Ultimately, "[s]trong judicial policy favors settlements." *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)

### 1.    The Strength of Plaintiffs' Case and Possible Monetary Remedies

Plaintiffs believe they have a strong case for liability based on the alleged shortcomings in Kaye-Smith's data security measures. Plaintiffs also believe they would be able to recover

damages on behalf of the Class. The range of potential outcomes, however, is considerable. The damages available will depend on the scope of class certification, whether various theories of damages would be accepted by the Court (i.e., benefit of the bargain, and loss of value of PII), and which causes of action survive. Plaintiff's and the Class Members' claims are subject to numerous risks (*see infra*, Sec. V.B.2.).

### 2.    The Risk, Expense, Complexity, and Potential Class Recovery

This factor weighs in favor of preliminary approval. While Plaintiffs believe their cases are strong, there is substantial risk. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex, and this case is no exception. Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage and are among the most risky and uncertain of all class action litigation. See, e.g., Hammond v. The Bank of N.Y. Mellon Corp., No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

Most importantly, Kaye-Smith's sole collectable asset is its insurance policies which are cannibalizing/wasting policies that are depleted by costs of defense. Thus, to take this case through class certification and trial would harm the Class Members as there would likely be no way to collect a judgment. The Settlement avoids the risk of non-recovery and is a prudent course in view of these risks. Given that all Consumer Class Members will be eligible for CMIS and to receive cash payments, the Settlement provides benefits that address all potential harms of a data breach without the risk of continued litigation, dismissal, or judgment against Plaintiffs.

### 3.    The Risk of Maintaining Class Status Through Trial

Plaintiffs' case is still in the pleadings stage, and the Parties have not briefed class certification. Class certification proceedings are far off in the distance in this litigation, and prior to those proceedings there is risk of dismissal. Class certification, if and when it arrives, will present

substantial risk, particularly given that different types of information were affected for different Class Members, and in light of the fact that class-wide data breach damage models remain largely untested at litigation. Data breach law is developing, so even if Plaintiffs obtained class certification, there is no guarantee that the class action status would be maintained. Kaye-Smith would likely seek a Rule 23(f) appeal of any decision by the Court granting class certification, resulting in additional delay to Class Members. The significant risk of obtaining and maintaining class certification in this case supports preliminary approval.

### 4. The Amount Offered in Settlement Is Fair

The $2 million non-reversionary Settlement Fund is an excellent result for the Class. With this fund, all Class Members will be eligible for a Settlement Payment in the form of distribution for credit monitoring, a Documented Loss Payment, a Cash Fund Payment, and/or a Business Loss Payment. The Settlement Fund will be applied to pay all Administrative Expenses, Notice Expenses, the taxes to the Settlement Fund, any Service Payments, and any payment of a Fee Award and Costs. Any funds remaining in the Net Settlement Fund after distribution(s) to Class Members will be distributed in a subsequent Settlement Payment to Class Members.

The Settlement presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements on a per capita basis. The Settlement is in the upper range of settlements on a per-capita basis.

### 5. The Proposed Method of Distribution Is Effective

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory Comm. Note to 2018 amendment.

To file a claim, Class Members need only complete a straightforward Claim Form and, if necessary, submit it along with any documents supporting claimed losses, either through the Settlement Website or by mail. Ex. A (claim form). Epiq, the settlement administrator, will process all Claims. The methods of distributing relief to Class Members include both digital and physical check avenues.

### 6. The Extent of Discovery Completed and the Stage of the Proceedings

Plaintiffs' counsel have diligently developed the facts and legal claims in this case. Plaintiffs conducted significant discovery during the litigation regarding Kaye-Smth's data security systems. Plaintiffs' counsel engaged, and continues to conduct, confirmatory discovery to establish, *inter alia*, facts relevant to the breach and Kaye-Smith's liability and its reaction to and actions after the breach, class size, and Kaye-Smith's financial condition. Sec. III.C, *supra*.

The Parties engaged in informal discovery to confirm the Settlement as fair, reasonable, and adequate. As part of the negotiations and Settlement, the Parties engaged in confirmatory discovery to not only verify the relevant facts, but also the fairness of the Settlement. Brown Decl. ¶¶ 8, 9, 12, 14, 16. Proposed Class Counsel's knowledge of facts of this case and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses of the case, the decision to twice go to mediation with Kaye-Smith, and the decision to recommend that the Court grant preliminary approval to the Settlement.

### 7. The Experience and Views of Counsel

Interim Class Counsel include attorneys who have substantial experience in complex class action litigation, including in data breach and data privacy cases. Summaries of their relevant experience and qualifications were previously submitted to the Court. See Dkt. Nos. 22-24. Interim Class Counsel fully endorse the Settlement as fair, reasonable, and adequate to the Class, and do so without reservation, especially in view of the "wasting" insurance policies at issue.

### 8. The Presence of a Governmental Participant

No governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State have been or will be notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections.

### 9.     The Reaction of Class Members to the Proposed Settlement

The Class has yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. Prior to final approval, the Court will be able to review all objections or other comments received from Class Members, along with a full accounting of all opt-out requests.

### 10.    The Settlement Is the Product of Arm's-Length Negotiations That Were Free of Collusion

The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d at 946-47 (internal quotation marks, ellipses and citation omitted). Plaintiffs achieved the Settlement in contested litigation and through arm's-length negotiations that involved two mediation sessions before two highly respected mediators. Plaintiffs undertook substantial investigation of the underlying facts, causes of action, and potential defenses. Brown Decl. ¶¶ 6, 8, 9, 12, 15. The Parties engaged in extensive arm's length negotiations, including two mediation sessions before mutually agreed upon mediators, Lou Peterson and the Hon. Wayne Anderson (Ret.).

Both Mr. Peterson and Judge Anderson, are highly respected and experienced mediators who have extensive experience in class action litigation, including multiple data breach cases where a settlement was reached and subsequently approved. Brown Decl. ¶¶ 9, 13 (with links to their biographies). Their respective involvement here further confirms the absence of collusion. *G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

*In re Bluetooth* identified three "signs" of possible collusion: (1) "'when counsel receive[s] a disproportionate distribution of the settlement'"; (2) "when the parties negotiate a 'clear sailing' arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *In re Bluetooth,* 654 F.3d at 947 (internal citations omitted).

None of the *In re Bluetooth* signs are present here. There is no "clear sailing provision" and Class Counsel will not seek fees that exceed the 25% of the Fund benchmark set by *In re Bluetooth. Id.* at 942; SA § 11.3; *see, supra,* Sec. IV.H. There is no reversion of the Settlement Fund (SA § 4.11), but rather the Settlement makes every effort to distribute any Residual to the Class (*see id*. §§ 4.9, 4.11). Proposed Class Counsel will apply for fees from this non-reversionary Settlement Fund, so that there was every incentive to secure the largest fund possible. There is no indication or existence of collusion or fraud in the settlement negotiations and the Settlement that is being presented to the Court. Interim Class Counsel in *In re Accellion* reached the same conclusion. *Id*, ECF No. 158, at 5:11-12 ("the proposed settlement . . . does not bear any of the 'red flags' described in *Bluetooth*").

### 11. The Proposed Notice Plan Is Appropriate

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005). The best notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The notice should provide sufficient information to allow Class Members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or

object to its terms. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251-52. "[N]otice is adequate if it may be understood by the average class member." *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171, 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:53, at p. 167 (4th ed. 2013)). The Long Form Notices (Ex. B) here are clear, precise, informative, and meets all the necessary standards, allowing Class Members to make informed decisions with respect to whether to remain in, opt out of, or object to the Settlement.

The Notice Plan includes direct notice by emailing or mailing the Summary Notice to all Class Members, and reminder emails to those for whom email addresses are available. The Administrator will also establish a Settlement Website. The proposed Notice Plan represents the best notice practicable. Copies of all the notice documents are attached hereto as Exhibit B; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan is consistent with and exceeds the requirements of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines for adequate notice.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the proposed Notice plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

### 12.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, proposed Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data breach and data privacy cases. See, Dkt Nos. 22-24. As

described above and in Class Counsel's Motion for Interim Class Counsel Appointment, Proposed Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint John Heenan, Ari Brown, and Justin Baxter as Class Counsel.

### C.    Settlement Deadlines and Schedule for Final Approval

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the following schedule, which the parties believe will provide ample opportunity for Class Members to decide whether to request exclusion or object:

| EVENT | DATE |
|---|---|
| Notice Date (U.S. Mail and email) | Within **30 Days** from Preliminary Approval Order |
| Deadline to Submit Claim Forms | **75 Days** from Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Payments | **35 Days** Before Objection Deadline |
| Deadline to Object and/or Comment on the Settlement | **75 Days** from Notice Date |
| Deadline to Submit Request for Exclusion | **50 Days** from Notice Date |
| Final Approval Hearing | To be Determined |

## VI.    CONCLUSION

Plaintiff Smith respectfully requests that this motion be granted and that the Court enter an order: (1) certifying the proposed class for settlement; (2) preliminarily approving the proposed class action Settlement; (3) appointing Plaintiffs as Class Representatives and John Heenan, Ari Brown and Justin Baxter as Class Counsel; (4) appointing Epiq as the Settlement Administrator; (5) approving the proposed Class Notice Plan; and (6) approving the proposed class settlement administrative deadlines and procedures, including setting a Final Approval Hearing date.

Dated this 29th day of July 2024.

BAXTER & BAXTER, LLP
RHODES LEGAL GROUP
HEENAN & COOK, PLLC

*/s/ John Heenan*
John Heenan (Pro Hac Vice)
Attorneys for Plaintiff and Interim Class Counsel