UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| RICHARD SMITH *and* WASHINGTON FEDERAL BANK, *on behalf of themselves and others similarly situated*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>KAYE-SMITH ENTERPRISES, INC.,<br><br>　　　　　　　Defendant.<br>_____ | Case No. 3:22-cv-01499-AR<br><br>**OPINION AND ORDER GRANTING PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** |

**ARMISTEAD, Magistrate Judge**

　　　Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Plaintiffs seek an order that (1) certifies the Settlement Classes (as defined below) for settlement purposes and appoints the Named Plaintiffs as Settlement Class Representatives and their counsel as Class Counsel; (2) appoints Epic Class Action Administration as Settlement Administrator; (3) preliminarily approves the settlement as fair, reasonable, and adequate; (4) approves the form, content, and manner of notices and the procedures for objecting to and

Page 1 – OPINION AND ORDER

opting out of the proposed Settlement Agreement; (5) directs notice to Settlement Class Members in accordance with the terms of the Settlement Agreement; and (6) sets a date for hearing to finally approve the Settlement Agreement ("Final Approval Hearing"). Defendant Kaye-Smith does not oppose plaintiffs' Motion.[1]

As discussed below, the court concludes that it has jurisdiction over this action, and finds that the circumstances of this case and the Rule 23(e) factors favor preliminary approval of the proposed settlement and certification of a settlement class. Plaintiffs' motion is therefore GRANTED.[2]

## BACKGROUND

**A.**   *Data Breach*

This action arises out of a data breach of Kaye-Smith's networks in early 2022. Kaye-Smith is a marketing execution and supply chain company organized under Oregon law. (Am. Compl. ¶ 12, ECF No. 89.) It generates monthly statements on behalf of its clients, such as Boeing Employees' Credit Union (BECU) and Washington Federal Bank (WaFd). (*Id.* ¶ 2.) To facilitate Kaye-Smith's provision of that service, Kaye-Smith's clients supplied Kaye-Smith with information about their banking customers, including those customers' names, addresses, account numbers, credit scores, and Social Security numbers. (*Id.* ¶¶ 2, 4.)

Sometime before June 6, 2022, Kaye-Smith discovered that a cyberattack had infiltrated its systems. As a result of the breach, unauthorized actors gained access to the personally

---

[1]   Although it is not indicated in their motion, plaintiffs' counsel represented by email that the motion is unopposed.

[2]   The parties have consented to jurisdiction by magistrate judge as permitted by 28 U.S.C. § 636(c)(1). (Full Consent, ECF No. 91.)

identifiable information of approximately 800,000 individuals, who were customers of 47 different institutional clients of Kaye-Smith. (*Id.* ¶ 2; Smith Decl. ¶ 4, ECF No. 93-4.)

**B.**     *Procedural History*

Three putative class actions were filed on behalf of individuals impacted by the Kaye-Smith data breach. The first was this action (*Smith*), filed in this court on October 6, 2022. Later, two other putative class actions, *Krefting v. Kaye-Smith, et al.* and *Woodard v. Boeing Employees Credit Union et al.* (Case No. 3:23-cv-01165-AR) were filed in Washington by putative class representatives Richard Krefting and Noel Woodard. After this court had appointed counsel in *Smith* as interim class counsel, the *Krefting* and *Woodard* cases were transferred here. Around the same time, plaintiff Smith and defendant Kaye-Smith reached a tentative class settlement. (*Smith*, ECF No. 73). Plaintiffs Woodard and Krefting eventually dismissed their separate actions, indicating that they had joined the settlement agreement in this case.

The parties then submitted a revised proposed class settlement (ECF No. 82-1) which would settle all claims arising from the Kaye-Smith data breach, including both the claims of Kaye-Smith's business clients and the claims of individuals who were customers of those businesses and whose data was compromised in the breach. The parties asked the court to approve the proposed settlement, certify a consumer class and a business class for settlement purposes, and appoint Smith, Krefting, and Woodard as class representatives.

The court pointed out that plaintiffs did not have a named representative for the business class and scheduled a preliminary approval hearing to discuss that and other issues. In the hearing, the court also asked questions about (1) whether class counsel can adequately represent both the consumer class and business class, given that the settlement fund is limited and divided

between the two classes, (2) whether the allocation of the settlement fund treated class members equitably relative to one another, and (3) problematic language in the proposed business long-form notice.

In response to the court's inquiries, plaintiffs filed an amended complaint that named WaFd as a putative representative of the business class. (ECF No. 89.) Plaintiffs also filed an amended motion for preliminary approval that addressed the court's concerns related to adequacy and fairness, and filed amended proposed notices that eliminated the problematic language. (ECF No. 93.) As to adequacy, plaintiffs asserted during the hearing that the business class's interests were sufficiently represented during the settlement negotiations, as evidenced by the settlement's allocation of 50 percent of the net settlement fund to business class claims. They also argue in their motion that there is no irreparable conflict between the two classes, relying on *In re Volkswagen "Clean Diesel" Mktg. Litig.*, 895 F.3d 597 (9th Cir. 2018). (*Id.* at 14-15.) As to the allocation of funds between the two classes, plaintiffs contend that it is appropriate considering the high value of the expected business claims and the high quantity, but lower value, of expected consumer claims. (*Id.* at 8.)

In further support of their motion, plaintiffs point out key facts learned in discovery that counsel in favor of settlement. Most important is that "the liabilities Kaye-Smith has incurred because of the data breach far exceed its assets. Consequently, the insurance available offers the only practical path to recovery[.]" (Pl.'s Mot. at 12.) And Kaye-Smith's insurance is "cannibalizing," meaning that "costs of defense reduce the available limits dollar for dollar." (*Id.* at 5.) That is, further discovery and litigation will reduce the available insurance funds, which will in turn reduce the funds available to compensate class members' claims. Accordingly, plaintiffs contend that the proposed settlement, which uses all remaining insurance funds (after

Page 4 – OPINION AND ORDER

Kaye-Smith's defense costs) to settle class members' claims, is in the best interests of the class.

## JURISDICTION

Before determining whether the proposed settlement agreement warrants preliminary approval, the court must assure itself that Article III standing exists. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006). "A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 1041, 1046 (2019). Standing exists if at least one named plaintiff meets the requirements of Article III. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011).

The requirements of Article III standing are (1) injury in fact, that is (2) traceable to the challenged actions, and (3) likely to be redressed by a favorable decision. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The only standing element in question here is injury in fact. (*See* Def.'s Mot. to Dismiss, ECF No. 36.) To meet that element, a plaintiff's injury must "be 'concrete'—that is, 'real, and not abstract.'" *Id.* at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "Traditional tangible harms, such as physical harms and monetary harms," are the most obvious concrete injuries under Article III. *TransUnion*, 594 U.S. at 425. But "[v]arious intangible harms can also be concrete . . . . includ[ing], for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* Risk of future harm, however, does not qualify as concrete harm "unless the exposure to the risk of future harm itself causes a separate concrete harm." *Id.* at 436. "For example, a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own emotional or psychological harm." *Id.* at 436 n.7.

Here, Smith has sufficiently pled a "separate concrete harm" in the form of time and money spent investigating and mitigating the impact of the data breach, as well as anxiety and emotional distress because of the loss of his privacy and concerns about identity theft. (Am. Compl. ¶ 63); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022) ("[I]f the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress of spend money on mitigation measures like credit monitoring services, the plaintiff has alleged a concrete injury."); *Woodard v. Boeing Employees Credit Union, et al.*, Case No. 2:23-cv-00033, 2023 WL 4847126, at *3 (Plaintiff Woodard alleged concrete injury in the form of time spent mitigating harm from data breach and emotional distress about privacy loss and risk of data theft.); *Whittum v. Univ. Med. Ctr. of S. Nev.*, Case No. 2:21-cv-01777-MMD-EJY (Apr. 17, 2023) ("Because Plaintiffs undertook substantial mitigation and remedial measures to prevent fraud, the Court finds that Plaintiffs have alleged concrete, separate injuries for standing from the risk of future harm."). Likewise, WaFd has alleged a concrete injury of time and money spent notifying customers of the data breach and mitigating harm to its customers. (Am. Compl. ¶ 72.)

Assured of plaintiffs' standing and the court's subject matter jurisdiction over this case, the court proceeds to plaintiffs' motion for preliminary approval of class settlement and certification.

**PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION**

The court has reviewed plaintiffs' motion, the attached declarations, the Settlement Agreement, and the proposed notices. Based on preliminary examination, and in light of the issues presented in this case, the stage and complexity of the proceedings, the expense of further litigation, the range of possible recovery, the absence of any evidence of collusion between the

Page 6 – OPINION AND ORDER

Parties, and the experience of Class Counsel, it appears to the court that the Rule 23(e) factors will likely weigh in favor of granting final approval. Because the court will likely find the Agreement to be fair, reasonable, and adequate at the final approval stage, preliminary approval of the settlement and notice to class members is warranted. FED. R. CIV. P. 23(e)(1)(B).

The Court is also satisfied that the plan for sending notice of the Settlement to the Settlement Class is adequate. As to the substance of the Notices, the court finds that the Notices are generally sufficient to notify class members of the Settlement's terms. However, plaintiffs' counsel is ordered to modify the notices as necessary to conform to this order regarding deadlines and management of this action.[3] *See* FED. R. CIV. P. 23(d)(1) (giving district courts broad discretion to manage class actions and require "appropriate notice" to the class); FED. R. CIV. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement] . . ."); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (approving settlement notice where "district court ordered that [specific] information be included in the notice"). So modified, the proposed notices sufficiently inform Settlement Class members of the Settlement's terms and of the certification of the Settlement Class, and satisfy due process and the requirements of Rule 23.

**THEREFORE, IT IS ORDERED THAT:**

1.     This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used in this Order will have the same meanings as set forth in the Settlement Agreement, unless otherwise defined in this Order.

2.     The Court preliminarily certifies the following "Settlement Classes" for purposes of

---

[3]     Plaintiffs' counsel should refer to items 7, 13, 15, 19, 20, and 21, below.

Page 7 – OPINION AND ORDER

settlement only:

> The "Consumer Settlement Class" consisting of all individuals who had any information released, exposed, or impacted by the Data Security Incident, or were notified in writing by BECU, by Kaye-Smith, or by a Kaye-Smith client that their personal information was or may have been released, exposed, or impacted in the Data Security Incident.

> The "Business Settlement Class" consisting of all businesses or entities that had a business relationship with Kaye-Smith, including their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing, including Kaye-Smith's clients, and whether such relationship was by contract or not, and that were affected by the Data Security Incident, excluding those who have resolved their claims against Kaye-Smith prior to October 19, 2023.

3.     Excluded from the classes are (1) the Court and all members of the Court's staff; (2) the officers and directors of Defendant and its Business Associates; (3) persons who have been separately represented by an attorney and entered into a separate settlement agreement in connection with the Data Incident; and (4) persons who timely and validly request exclusion from the Settlement Class.

4.     Based on the Court's review of the Settlement Agreement, Plaintiffs' Motion and supporting documents, the Court finds that conditional certification of the Settlement Classes for settlement purposes is appropriate under Federal Rule of Civil Procedure 23 because the Settlement Classes are ascertainable and so numerous that joinder would be impracticable, the action presents common issues of law and fact that predominate over any individual questions, Plaintiffs' claims are typical of Settlement Class members' claims, Plaintiffs and their counsel

are adequate representatives of the Settlement Class, and a class action would be superior to thousands of individual lawsuits.

5. The Court appoints Richard Smith, Noel Woodard, Richard Krefting and Washington Federal Bank as Settlement Class Representatives, and John Heenan of Heenan & Cook, Ari Brown of Rhodes Legal Group, PLLC and Justin Baxter of Baxter & Baxter, LLP as Settlement Class Counsel.

6. The Court appoints Epiq Class Action Administration as Settlement Administrator, which will fulfill the functions, duties, and responsibilities of the Settlement Administrator as set forth in the Settlement Agreement and this Order. By accepting this appointment, the Settlement Administrator has agreed to the Court's jurisdiction solely for purposes of enforcement of the Settlement Administrator's obligations under the Settlement Agreement.

7. Plaintiffs' Counsel is ordered to ensure that the dates and other information about management of this action in the Notices conform to this Order. The Court otherwise approves, as to form and content, the Postcard Notice and Long Form Notice attached as Exhibit B to Plaintiffs' Motion for Preliminary Approval and approves the Parties' plan for disseminating notice. The Court finds that the method of providing notice to Settlement Class members and the procedure for class members to file exclusion requests and objections to the Settlement specified in Section IX of the Settlement Agreement are reasonable and appropriate, and satisfy the requirements of due process and the Federal Rules of Civil Procedure.

8. Within five (5) business days of the date of this Order, the Settlement Administrator will provide wiring instructions and a completed and executed IRS Form W-9 to Kaye-Smith.

9.      Within ten (10) business days of the date of this Order, Kaye-Smith and its Business Associates (including BECU) will provide the Settlement Administrator with a list of the names and all known contact information including email addresses of all Settlement Class Members.

10.     Within twenty-one (21) calendar days after the date of this Order, Defendant will wire or otherwise transfer the estimated costs of notice and settlement administration through the date of final approval to the Settlement Administrator.

12.     The Settlement Administrator will commence the Notice Program set forth in the Settlement Agreement within thirty (30) calendar days after the date of this Order (the "Notice Deadline").

13.     Class Counsel will file their motion for attorneys' fees and costs and service awards to the Settlement Class Representatives within forty (40) days of the Notice Deadline.[4]

14.     Any Settlement Class Member may exclude himself or herself from the Settlement by submitting a written request to the Settlement Administrator no later than fifty (50) calendar days after the Notice Deadline. Following final approval of the Settlement and the occurrence of the Effective date, each Settlement Class Member who did not submit a timely, valid request for exclusion will be bound by the releases in the Settlement Agreement.

15.     Any Settlement Class Member may object to the settlement by submitting a written objection to the Settlement Administrator within seventy-five (75) calendar days after the Notice

---

[4] Plaintiffs' proposed order suggested that the deadline for motions for attorney fees, costs, and service awards be 90 days from the date of this Order. However, their motion asked that the deadline be set for 35 days before the objection deadline, which they in turn asked be set for 75 days after the Notice Deadline. (Pl.'s Mot. at 27.) The court approves the schedule as laid out in plaintiffs' motion.

Deadline.[5] An objector who submits a timely, written objection, or their attorney, may appear at the Final Approval Hearing only if the objection includes a statement that either the objector or his counsel intends to appear.

16.     Any Settlement Class Member may file a claim by submitting a valid claim form no later than seventy-five (75) calendar days after the Notice Deadline.

17.     Class Counsel will file a motion for final approval of the settlement within ninety (90) calendar days after the Notice Deadline.

18.     The parties will file any responses to objections and/or replies to the motion for final approval and motion for attorneys' fees, costs, and service awards, no later than fourteen (14) calendar days prior to the Final Approval Hearing.

19.     The Court will hold a Final Approval Hearing on January 7, 2025 at 2:00 p.m., in Courtroom 9B at the United States District Court for the District of Oregon Courthouse, located at 1000 S.W. Third Ave., Portland, OR 97204. At that time, the court will address any timely objections filed by a settlement class member; whether the prerequisites for class certification and treatment under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met; whether the Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court; whether the Final Approval Order and Judgment should be entered; whether to approve any application for attorneys' fees and expenses of Class Counsel; whether to approve any application for Service Awards to the Class Representatives; and any other matters that the Court may deem appropriate. At the Final Approval Hearing, the Court may enter the Final Approval

---

[5]     Plaintiffs' proposed order suggested that the deadline for objections to the settlement be 50 days from the Notice Deadline. Their motion, however, asked that objection deadline be set for 75 days from the Notice Deadline. (Pl.'s Mot. at 27.) The court approves the schedule as laid out in plaintiffs' motion.

Page  11  –  OPINION AND ORDER

Order and Judgment in accordance with the Settlement Agreement that will adjudicate the rights of Settlement Class Members. Class counsel must give notice to any objecting party of any continuance of the Final Approval Hearing.

20.     Any interested person who has not opted out of the Settlement Class may appear at the Final Approval Hearing to argue that the proposed Settlement Agreement should or should not be approved as fair, reasonable, and adequate; provided, however, that no person will be heard or entitled to contest the approval of the Settlement unless that person has filed with the Court a written objection by the Objection Deadline stating their intention to appear and any supporting papers or briefs by the Objection Deadline. Written objections must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (iv) the signature of the Settlement Class Member objecting to the settlement; and (v) the reason(s) for the objection. The objection must also state whether it applies only to the objector, to a specific subset of the class, or to the entire class.[6] Class counsel is ordered to modify the proposed notices to include the above information about the requirements for objections.

21.     The Court retains jurisdiction over the Action and all matters arising out of or connected with the proposed Settlement Agreement. The Court reserves the right to adjourn or continue the date of the Final Approval Hearing without further notice to Settlement Class Members, although class counsel must provide notice of any continuance of the hearing to objecting class members. The court retains jurisdiction to consider all further applications arising out of or connected with

---

[6]     FED. R. CIV. P. 23(e)(5)(A).

the Settlement Agreement. After the Final Approval Hearing, the Court may approve the Settlement without further notice to Settlement Class Members.

22.     If the Court does not enter the Final Approval Order, or if the Effective Date does not occur for any reason, the Parties will return to the status quo ex ante, for all litigation purposes, as if no settlement had been negotiated or entered into and thus this Order and all other findings or stipulations regarding the Settlement, including but not limited to certification of the Settlement Class, will be automatically void, vacated, and treated as if never filed.

DATED: August 7, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge