Justin M. Baxter, Oregon State Bar ID Number 992178
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone: (503) 297-9031
Facsimile: (503) 291-9172
justin@baxterlaw.com

Ari Brown *(Pro Hac Vice)*
RHODES LEGAL GROUP
918 South Horton St., Suite 901
Seattle, WA 98134
Telephone: (206) 412-9320
abrownesq@gmail.com

John Heenan *(Pro Hac Vice)*
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@lawmontana.com

*Attorneys for Plaintiffs*

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| RICHARD SMITH, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> KAYE-SMITH ENTERPRISES, INC., <br><br> Defendant. | Case No.: 3:22-CV-01499-AR <br><br> PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND BRIEF IN SUPPORT |

## **INTRODUCTION**

Class Counsel move for final approval of a class action settlement with Defendant Kaye-Smith that provides a non-reversionary fund of $2,000,000 for the benefit of two classes that

comprise all individuals and businesses that were affected by the subject data breach. The settlement also institutes important changes to Kaye-Smith's practices that will improve its data security going forward. Consumer claimants may elect to receive three years of Credit Monitoring and Insurance Services ("CMIS"), a payment for reimbursement of a pro-rata share of Documented Losses of up to $10,000 or a fixed cash payment, calculated in accordance with the terms of the Settlement Agreement. Business claimants are entitled to a pro rata share of out-of-pocket costs associated with the data breach.

The Court should grant final approval to this Settlement because it is fair, reasonable, and adequate, as the Court found at the preliminary approval stage and because the reaction of the class is overwhelmingly positive following robust notice. A proposed order is attached hereto for the Court's consideration.

## ISSUE TO BE DECIDED

Whether the Court should grant final approval of the Settlement under Rule 23?

## STATEMENT OF FACTS

The Court accurately and succinctly summarized the claims in this case and the procedural history of this litigation in its Order Granting Preliminary Approval (DKT. No. 95). The following therefore summarizes the notice campaign and response from class members that has occurred since the Court issued its Preliminary Approval Order:

Between August 10 and September 3, 2025, Kaye-Smith provided the Settlement Administrator, Epiq Class Actions and Claims Solutions ("Epiq"), with records by which to determine mailing addresses for both the Business and the Consumer Classes. Declaration of Cameron Azari ("Azari Decl.") ¶¶ 23-25. Following a laborious process of consolidating and de-duplicating more than 2 million records, Epiq identified 899,318 Consumer Class members and 48 Business Class members. *Id*. ¶ 25. Epiq mailed postcard notices to all Business Class members on September 6 and completed mailing to all Consumer Class members by October 11, 2024. Id. ¶ 26.

As of December 3, 2024, postcard notices were successfully delivered to 46 Business Class members. As of the same date, 847,694 postcard notices were successfully delivered to the consumer class. Id. ¶¶ 30-31. In all, notices were successfully provided to 95.8% of the Business Class members and 94.7% of the Consumer Class members. Id.

Epiq also set up a settlement website at www.KayeSmithSettlement.com that included answers to frequently asked questions, copies of both the postcard and longform notices, and links to relevant documents that would inform a class member of the nature of the lawsuit and the settlement—including the complaint, the settlement agreement, and the Court's Order granting preliminary approval. Class members were able to submit claim forms through the settlement website. As of November 18, 2024, there were 14,438 unique visitor sessions to the website. Id. ¶ 33.  Finally, Epiq set up a toll-free telephone number for class members to obtain more information regarding the settlement and how to submit a claim. *Id*. ¶ 34.

The deadline to exclude oneself from the class was on December 2, 2024. There have been a total of 12 requests for exclusion—all from the Consumer Class. *Id*. ¶ 36. The deadline for Class members to submit a claim is December 26, 2024. As of December 3, 2024, Epiq received two claims from Business Class members, and 11,863 claims from Consumer Class members. *Id*. ¶ 36.

As of the date of this filing, there has been one objection to the settlement that was submitted by Mr. Terry Jones on behalf of himself and his wife, Lisa Jones ("the Jones' objection"). Mr. and Mrs. Jones state that their names, social security numbers, driver's license numbers, and bank balance information were stolen by cyber criminals. They object that two years of free credit monitoring services are insufficient. Declaration of John Heenan at Ex. 1. Terry Jones is not a class member. Azari Decl. ¶ 36. The objection is unsigned by either Mr. or Ms. Jones and does not include a telephone number. Id. Kaye-Smith's records indicate that Lisa Jones is a member of the consumer class as she was a customer of BECU. The information stored in files that were compromised in the data breach included her name, address, BECU member number, and account number. Her social security number, driver's license number, and bank balance information were not compromised. Heenan Decl. ¶ 3.

## **LEGAL STANDARD**

Final approval is a multi-step inquiry: first, the Court must certify the proposed settlement class; second, it must determine that the settlement proposal is "fair, reasonable, and adequate;" and third, it must assess whether notice has been provided in a manner consistent with Rule 23 and due process. Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). These procedures safeguard class members' due process rights and enable the Court to fulfill its role as the guardian of class interests.

## **LEGAL ARGUMENT**

### A.    The Court should Certify the Class

Class certification under Rule 23 is a two-step process. First, the plaintiff must demonstrate that numerosity, commonality, typicality, and adequacy are met. Fed. R. Civ P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). A plaintiff must then establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiffs must demonstrate that "questions of law or fact common to Class Members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

On August 7, 2024, the Court preliminarily approved the following Class definition:

> The "Consumer Settlement Class" consisting of all individuals who had any information released, exposed, or impacted by the Data Security Incident, or were notified in writing by BECU, by Kaye-Smith, or by a Kaye-Smith client that their personal information was or may have been released, exposed, or impacted in the Data Security Incident.
>
> The "Business Settlement Class" consisting of all businesses or entities that had a business relationship with Kaye-Smith, including their past, present, and future officers, directors, employees, stockholders, partners, servants, agents,

> successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing, including Kaye-Smith's clients, and whether such relationship was by contract or not, and that were affected by the Data Security Incident, excluding those who have resolved their claims against Kaye-Smith prior to October 19, 2023.

Prelim. App. Order p. 8.

Nothing has occurred that would change the Court's previous determination that Plaintiffs have satisfied the Rule 23 requirements. First, pursuant to Rule 23(a)(1), numerosity is satisfied as the Class consists of over 821,000 Consumer Class Members and 48 Business Class Members. Azari Decl. ¶¶ 23, 25, See also Smith Decl. ¶ 4 ECF No. 93-4. Pursuant to Rule 23(a)(2), there are questions of law or fact common to the Class, including: the nature of Kaye-Smith's data security practices, whether Kaye-Smith owed duties of care to Class Members to safeguard their PII, and whether Kaye-Smith breached those duties, among others. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Here, the claims of the named Plaintiffs are typical of the claims of the Settlement Class. Plaintiffs are either individuals or businesses who were notified by Kaye-Smith that their PII was impacted because of the breach. Plaintiffs' and Class Members' claims arise from the same nucleus of facts relating to the data breach, pertain to a common defendant, and are based on the same legal theories. Finally, under Rule 23(a)(4), Plaintiffs and their counsel do not have any conflicts of interest with other Class Members and have demonstrated their commitment to prosecute the action vigorously on behalf of the Class.

The requirements under Rule 23(b) are also satisfied. Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. *Noll v. eBay*, 309 F.R.D. 593, 604 (N.D. Cal. 2015). Here, Plaintiffs' claims depend on whether Kaye-Smith Net had reasonable data security measures in place to protect Plaintiffs' and Class Members' PII, and whether Kaye-Smith could have prevented unauthorized exposure or compromise of Plaintiffs' PII or mitigated its effects with more adequate third-party

risk management practices. These questions can be resolved using the same evidence for all Class Members, including Kaye-Smith's internal documents, testimony of its employees, and expert analysis. In addition, the class action mechanism is superior for resolving this matter given the very large size of the proposed Class weighed against the expense and burden of individual actions. Because Plaintiffs satisfy the Rule 23 requirements, the Court should grant final certification of the Class.

### B. The Court Should Overrule the Lone Objection

As set forth above, out of nearly a million claimants, there has been a single objection by Mr. and Mrs. Jones. The Jones Objection should be overruled on either/both procedural and substantive grounds. Procedurally, the letter does not meet the requirements for an objection as it is unsigned and does not contain a phone number. Substantively, the complaints they raise relative to the compromise of their personal information, while unfortunate, is not the result of this subject data breach. Mr. Jones is not a class member. And Mrs. Jones' social security number, driver's license number, and bank balance information were not compromised in this subject breach. Thus, there is no greater remedy that they would be entitled to in this case that would make this settlement somehow inadequate.

### C. The Court Should Grant Final Approval of the Settlement

Rule 23(e) requires the district court to determine whether a proposed settlement is "fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). To assess the fairness of a class settlement, Ninth Circuit courts consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of class members to the proposed settlement. *Id*. at 944 (citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

### 1. The Proposed Settlement Provides a Substantial Recovery, Considering the Costs and Benefits of Continued Litigation

While Plaintiffs believe they would succeed in litigation, the risks presented by continued ligation were apparent. Indeed, given Defendant's financial position, risks were formidable even if Plaintiffs fully prevailed throughout litigation and at trial. Defendant has steadfastly denied Plaintiffs' allegations of wrongdoing, and in continued litigation (and but for the Settlement), Kaye-Smith would have vigorously defended against Plaintiffs' claims. Critically, Kaye-Smith's sole collectable asset is a "cannibalizing" insurance policy. (Prelim. Approval Order at p. 4.) Consequently, there is a significant likelihood that Kaye-Smith would not have been able to pay a judgment in the event Plaintiffs prevailed at the end of a protracted litigation.

These considerations, and others, made continued litigation risky. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions). This case is no exception. It involves approximately 800,000 Class Members, complicated and technical facts, and numerous contested issues on class certification and substantive defenses. There are numerous substantial hurdles that Plaintiffs would have had to overcome before the Court might find a trial appropriate.

Data breach cases, particularly, face substantial hurdles in surviving past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data

breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

The $2 million non-reversionary Settlement Fund is an excellent result that avoids the uncertainty and the risk of nonpayment presented by continued litigation. With the Settlement Fund, all Class Members will be eligible for a Settlement Payment, a Documented Loss Payment, or a Cash Fund Payment. SA ¶ 4.2. Based on the size of the breach and per-capita figures, the Settlement presents a robust relief package and valuable outcome for the Class that is comparable to or better than other recent data breach class action settlements. *See, e.g., In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1-2 (D. Minn. May 17, 2017) ($10 million dollar settlement for nearly 100 million class members); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for claims related to approximately 6.4 million LinkedIn users' stolen account passwords).

The Settlement is a prudent course in view of these high risks. Given that all Class Members will be eligible to elect credit monitoring or cash payments, the Settlement provides benefits that address all potential harms of a data breach without the substantial risk of continued litigation, which includes the risk of dismissal or judgement against Plaintiffs. Further, the overwhelmingly positive response from the Class, discussed *supra*, confirms that the Settlements is fair, reasonable, and adequate.

2. **The Extent of Discovery Completed and the Stage of the Proceedings**

Plaintiffs vigorously developed the facts and legal claims in this case. Plaintiffs and Class

Counsel have stayed abreast of all material developments involving the data breach, and its impact on businesses and consumers. The Parties engaged in informal discovery to confirm the Settlement as fair, reasonable, and adequate. As part of the negotiations and Settlement, the Parties engaged in confirmatory discovery to not only verify the relevant facts, but also the fairness of the Settlement. Plaintiffs received and analyzed data from Kaye-Smith relating to the impact of the data breach, including the nature of the PII at issue and the number of Class Members impacted.

Class Counsel's knowledge of facts of this case and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses of the case, the decision to twice go to mediation, and the decision to recommend that the Court grant approval to the Settlement. Brown Decl., ECF No. 93-3.

### 3. The Proposed Settlement is the Product of Arm's-Length Negotiations and is Supported by Experienced Counsel

The Court must also be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d 935, 946-47 (9th Cir. 2011).

Plaintiffs undertook substantial investigation of the underlying facts, causes of action, and potential defenses prior to settlement. Brown Decl. ¶ 4. Ultimately, Plaintiffs achieved the Settlement in contested litigation and through arm's-length negotiations that involved two mediation sessions before two highly respected mediators—the first at the early stages of the litigation, and the second followed extensive document discovery. *Id.*

The second mediation was conducted with the help of the Honorable Wayne Anderson. Judge Anderson, a highly respected and experienced mediator, has extensive experience in class action litigation, including multiple data breach cases where a settlement was reached and subsequently approved. His involvement here further confirms the absence of collusion. *G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

*Bluetooth* identified three "signs" of possible collusion: (1) "when counsel receive[s] a

disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *Bluetooth,* 654 F.3d at 947.

None of the *Bluetooth* signs are present here. There is no "clear sailing provision." There is no reversion of the Settlement Fund, but rather the Settlement makes every effort to distribute any Residual to the Class. Any Fee Award and Costs awarded will be paid from this non-reversionary Settlement Fund, such that there was every incentive to secure the largest Settlement Fund possible. There is no indication of collusion or fraud in the settlement negotiations and the Settlement that is being presented to the Court and none exists.

Class Counsel are experienced litigators who have successfully prosecuted and resolved numerous large consumer class actions and other complex matters, including other data breach cases. *See* previously filed Declarations of John Heenan (ECF No. 22), Justin Baxter (ECF No. 24), and Ari Brown (ECF No. 23). Class Counsel fully endorse the Settlement as fair, reasonable, and adequate to the Settlement Class, and do so without reservation.

**4.     The Proposed Method of Distribution Is Effective**

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory Comm. Note to 2018 amendment.

To file a claim, Class Members needed only complete a Claim Form and select a form of relief. For Class Members electing a Documented Loss Payment they must submit the Claim Form along with documents supporting their claimed losses. Claim Forms may be submitted electronically or in hard copy. All Claim Forms are being processed by Epiq, an experienced and nationally recognized class action administration firm. See, Aziri Decl. ¶¶ 5-8. The methods of distributing

relief to Class Members – both through digital and physical check avenues – are reasonable and have yielded robust claims.

### 5. The Proposed Attorney Fee Award is Reasonable

The terms of any proposed attorneys' fees award, including the timing of payment, is a factor requiring analysis under Fed. R. Civ. P. 23(e)(2)(C). As set forth in Plaintiffs' Motion for Attorney Fees, Expenses, and Service Payments filed on October 31, 2023 (ECF No. 57) ("Fee Motion"), Class Counsel is seeking attorneys' fees in the total amount of $666,666.00, which is equal to the 33.3% of the Settlement Fund, plus reimbursement of reasonable costs and expenses. Plaintiffs incorporate by reference all arguments in the Fee Motion.

### 6. The Presence of a Governmental Participant

No governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State have been notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections. Aziri Decl. ¶ 20.

### 7. The Reaction of Class Members to the Proposed Settlement

The Court should consider the reaction of Class Members to the proposed settlement when determining the Settlement's fairness. *Churchill Vill.*, 361 F.3d at 575. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

Following an extensive notice campaign that successfully reached roughly 95% of the Class, nearly 12,000 Class members have already submitted claims. With several more weeks to go, it is anticipated that even more Class members will submit claims. Azari Decl. ¶ 38. The volume of submitted claims- both on their own and in contrast to the lone objection demonstrates that the reaction from the classes has been overwhelmingly positive and militates toward approving the settlement.

8. **The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Class Members**

Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule provides, "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Epiq has carried out a thorough individual notice campaign. As of December 3, 2024, a Postcard Notice was successfully delivered to 850,159 of the 899,366 unique, Settlement Class Members—including all Business Class Members. Aziri Decl. ¶ 32. Class Members were given the option to have a Claim Package (Long Form Notice and Claim Form) mailed to them by requesting them via the toll-free telephone number or through the settlement website. *Id*. ¶¶ 33-34. The complete Claim Package, along with key documents involving the litigation and the settlement was available through the settlement website. Id. As of December 3, 2024 there were 16,995 visitor sessions to the settlement website and 2,024 calls to the toll free number. Id. For Postcard Notices that were returned undeliverable, Epiq re-mails the Postcard Notices to any new address available through USPS information and to addresses Epiq obtains from a third-party address lookup service. *Id*. ¶¶ 30-31.

The proposed Notice Plan represents the best notice practicable. It was reviewed and analyzed to ensure it meets the requisite due process requirements. Azari Decl. ¶ 10. Copies of all the notice documents are attached as exhibits to the Azari Declaration; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the Notice Plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Motion be granted and that the Court certify the two settlement classes; approve the requested fees, reimbursements of costs, and incentive payments; and grant its final approval to the settlement in this matter.

Dated this 5th day of December 2024.

> BAXTER & BAXTER, LLP
> RHODES LEGAL GROUP
> HEENAN & COOK, PLLC
>
> */s/ John Heenan*
> John Heenan (Pro Hac Vice)
> Attorneys for Plaintiff and Interim Class Counsel